Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
Craig C. Marchiando (SBN 283829)
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX  77010
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906

Leonard A. Bennett (*pro hac vice*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1A
Newport News VA 23606
Telephone:  (757) 930-3660
Facsimile:  (757) 930-3662

James A. Francis (*pro hac vice*)
 jfrancis@consumerlawfirm.com
John Soumilas (*pro hac vice*)
David A. Searles (*pro hac vice*)
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia PA 19110
Telephone:  (215) 735-8600
Facsimile:  (215) 940-8000

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| SUSAN E. MORELAND, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> CORELOGIC SAFERENT LLC, <br><br> Defendant. | No.  SACV13-00470 AG (ANx) <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** <br><br> Date:          Oct. 21, 2013 <br> Time:          10:00 a.m. <br> Courtroom:  10D <br><br> SAC filed:    Aug. 20, 2013 |

i

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND CASE BACKGROUND.............................................1

II.   ARGUMENT AND AUTHORITIES .................................................................3

    A.    The Standards Governing a Rule 12(b)(6) Motion to Dismiss................3

    B.    The FCRA and CCRAA Generally...........................................................4

    C.    The FCRA and CCRAA Clearly Cover the Lease Decision
         Reports, Providing SafeRent With No Valid Grounds to Dismiss
         the Complaint .........................................................................................4

         1.    The plain text of the FCRA as well as court and
               regulatory guidance establish that the Lease Decision
               report is a consumer report .........................................................4

         2.    Plaintiff Has Properly Pleaded a Violation of FCRA
               Section 1681e(a) .........................................................................7

          3.    Plaintiff Has Properly Pleaded Her CCRAA Claims ....................9

    D.    Plaintiff Has Properly Stated a Claim for Relief for SafeRent's
         Failure to Provide Her with Her File Free of Charge ...........................10

         1.    SafeRent cannot rely on its onerous identification procedures
               as a means to skirt its obligation to provide consumers with
               their files upon request.............................................................11

         2.    Because it requires consumers to incur expenses in
               requesting their files, SafeRent's procedure violates the
               FCRA requirement that it provide those files
               "free-of-charge" .......................................................................19

         3.    SafeRent's arguments related to the Claim I and III
               class definitions provide no grounds for dismissal of those
               claims ........................................................................................21

4.   Plaintiff's CCRAA file-request claims also survive SafeRent's Motion ......................................................................... 22

III.   CONCLUSION ...................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................3

*Bolton v. Bank of Am., N.A.*,
    No. CV-10-204-JLQ, 2011 WL 1044485, at *1
    (E.D. Wash. Mar. 18, 2011) ...............................................18

*Bradshaw v. BAC Home Loans Servicing, LP*,
    816 F. Supp. 2d 1066 (D. Or. 2011) .................................18

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010) ...............................................9

*Cisneros v. U.S. Registry, Inc.*,
    39 Cal. App. 4th 548 (1995) ................................................9

*Cruz v. Sky Chefs, Inc.*,
    No. C-12-02705 DMR, 2013 WL 1892337, at *1
    (N.D. Cal. May 6, 2013) ....................................................22

*Garrison v. Equifax Information Services, LLC*,
    No. 10-13990, 2012 WL 1278044, at *1
    (E.D. Mich. Apr. 16, 2012)................................................16

*Gauci v. Citi Mortgage*,
    No. 2:11-CV-01387-ODW(JEMx), 2012 WL 1535654, at *1
    (C.D. Cal. Apr. 30, 2012) ..................................................18

*Gomon v. TRW, Inc.*,
    28 Cal. App. 4th 1161 (1994) ..............................................9

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009)................................................................4

*Guimond v. Trans Union Credit Info. Co.*,
    45 F.3d 1329 (9th Cir. 1995) ...................................................................4, 18

*Guzman v. Bridgeport Educ., Inc.*,
    No. 11CV69 WQH (WVG), 2013 WL 593431, at *1
    (S.D. Cal. Feb. 13, 2013) ...........................................................................22

*Hoke v. Retail Credit Corp.*,
    521 F.2d 1079 (4th Cir. 1979) .....................................................................5

*Holman v. Experian Info. Solutions, Inc.*,
    No. C11-0180CW, 2012 WL 1496203, at*1
    (N.D. Cal. Apr. 27, 2012) .............................................................................8

*Lopez v. Nat'l Credit Reporting, Inc.*,
    No. C12-05166 HRL, 2013 WL 1999624, at *1
    (N.D. Cal. May 13, 2013) ...........................................................................10

*Menton v. Experian Corp.*,
    No. 02 Civ. 4687 (NRB), 2003 WL 941388, at *1
    (S.D.N.Y. Mar. 6, 2003) .............................................................................14

*Olson v. Six Rivers Nat'l Bank*,
    111 Cal. App. 4th 1 (2003) ...........................................................................9

*Pintos v. Pacific Creditors Ass'n*,
    605 F.3d 665 (9th Cir. 2009) .........................................................................8

*Rex v. Chase Home Fin. LLC*,
    905 F. Supp. 2d 1111 (C.D. Cal. 2012) ........................................................3

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007)........................................................................................4

*Singletary v. Equifax Information Services, LLC*,
    No.2:09-CV-489-TMP, 2011 WL 9133115, at *1
    (N.D. Ala. Sept. 22, 2011) ..........................................................................16

*St. Paul Guardian Ins. Co. v. Johnson*,
    884 F.2d 881 (5th Cir. 1989) ................................................................6

*Sutcliffe v. Wells Fargo Bank, N.A.*,
    No. C-11-06595 JCS, 2012 WL 4835325, at \*1
    (N.D. Cal. Oct. 9, 2012) ................................................................22

*Trans Union Corp. v. Fed. Trade Comm'n*,
    245 F.3d 809 (D.C. Cir. 2001) ................................................................5

*United States ex rel. Jones & Wert Constr. Specialties, Inc. v. Straub Constr., Inc.*,
    No. 10CV1415 JLS (RBB), 2013 WL 4883152, at \*1
    (S.D. Cal. Sept. 12, 2013) ................................................................3

## RULES

FED. R. CIV. P. 8(a)(2) ................................................................3

FED. R. CIV. P. 12(b), 12(f) ................................................................22

## STATUTES

CAL. CIV. CODE § 1785 ................................................................ *passim*

12 C.F.R. § 1022.123 ................................................................12

12 C.F.R. § 1022.137 ................................................................16

15 U.S.C. § 1681 ................................................................ *passim*

Plaintiff Susan E. Moreland, on behalf of herself and all others similarly situated, opposes Defendant Corelogic SafeRent, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint. (Dkt. No. 46.) In support of her Opposition, Plaintiff shows the Court as follows.

## I.    INTRODUCTION AND CASE BACKGROUND

This case arises from SafeRent's preparation of reports that it markets to landlords for their evaluation of applicants to rent housing. (Dkt. No. 41 ¶¶ 12–13.) SafeRent takes the position that these Lease Decision reports are not governed by the Fair Credit Reporting Act ("FCRA") and its California analogue, the Consumer Credit Reporting Agencies Act ("CCRAA") (Dkt. No. 46 at 1–2), so it fails to follow any FCRA and CCRAA mandates relating to those reports. (Dkt. No. 41 ¶¶ 1, 16, 27–28, 32, 38–39, 57–60.) Without obtaining the required statutory certification, SafeRent prepared a Lease Decision report about Plaintiff for her prospective California landlord on April 4, 2012. (*Id.* ¶¶ 14, 25, 27.) Because SafeRent does not follow the FCRA requirement that it employ reasonable procedures to assure maximum possible accuracy of the information that goes into Lease Decision reports, Plaintiff's report was riddled with errors, including:

- Showing 18 supposed former addresses where Plaintiff has never lived;
- Providing aliases which Plaintiff has never used; and
- Identifying Plaintiff as a man when she is a woman.

(Dkt. No. 41 ¶¶ 29–32.) Confused about Plaintiff's true identity because of the number of previous addresses and aliases in the Lease Decision report, the landlord declined to rent an apartment solely to Plaintiff. (*Id.* ¶34.)

Surprised by the inaccuracies in her Lease Decision report, Plaintiff twice wrote to SafeRent to request, as is her FCRA and CCRAA right, a disclosure of her consumer file. (*Id.* ¶¶ 36–37, 55.) SafeRent did not respond to either request. (*Id.* ¶¶ 39, 57.) Further, while the FCRA requires SafeRent to provide consumers with

1

their files free-of-charge once every twelve months and Plaintiff had not requested that disclosure within the twelve months prior to her request, SafeRent has created a system that robs consumers of this entitlement because it requires consumers to print a form from SafeRent's Internet site, copy identification documents, drive to a post office, and purchase postage, thus incurring expenses in obtaining their supposedly "free" file disclosure. (*Id.* ¶¶ 55–61.) After failing to obtain her file disclosure from SafeRent, Plaintiff filed this lawsuit.

Plaintiff alleges claims for violations of the FCRA and CCRAA, based on SafeRent's (1) failure, upon Plaintiff's request, to provide her with all the information in her consumer file (Claims I and II); (2) failure to provide consumers with these file disclosures free-of-charge (Claim III); (3) failure to follow reasonable procedures to assure maximum possible accuracy of the information it reports about consumers (Claims IV and V); and (4) sale of Lease Decision reports for FCRA purposes without obtaining the statutory certification of the purpose for which those reports will be used (Claims VI and VII). (Dkt. No. 41 ¶¶ 76–102.)

SafeRent asks that the Court dismiss Plaintiff's Complaint based on little more than novel, unsupported interpretations of the FCRA and CCRAA. SafeRent asks that the Court carve the Lease Decision report into smaller pieces such that, according to SafeRent, the FCRA and CCRAA will not apply to the report and eliminate Plaintiff's claims. (Dkt. No. 46 at 4–9.) SafeRent further urges the Court to adopt a "no-harm, no foul" approach to SafeRent's failure to obtain the statutory certifications for the use of Lease Decision reports, essentially throwing away an important and recognized requirement for the use of consumer reports under the FCRA and CCRAA. (*Id.* at 9–11.) Finally, with regard to its failure to provide consumers with their files and to do so free of charge, SafeRent asks the Court to pass upon the reasonableness of procedures it has established—without any discovery having taken place—for supposedly verifying the identities of consumers

who request their file disclosures from SafeRent. (*Id.* at 13–22.) None of these grounds is sufficient for dismissal under Rule 12(b)(6), and the Court should therefore deny SafeRent's Motion.

## II.   ARGUMENT AND AUTHORITIES

### A.   The Standards Governing a Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), the Court should dismiss Plaintiff's Complaint if her allegations "fail to set forth a set of facts which, if true, would entitle the complainant to relief." *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1123 (C.D. Cal. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Plaintiff's Complaint must "raise the right to relief beyond the speculative level," that is, the allegations cannot simply rest upon "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* A claim is facially plausible, and survives a Rule 12(b)(6) motion to dismiss, if Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In conducting its Rule 12(b)(6) analysis, the Court must take all of Plaintiff's well-pleaded factual allegations as true and construe all factual inferences in Plaintiff's favor. *Id.*

The Court's analysis under Rule 12(b)(6) is tempered by the requirement of Rule 8 that the Complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The 12(b)(6) determination is inherently context specific, permitting the Court to "draw upon 'judicial experience and common sense'" in arriving at its decision. *United States ex rel. Jones & Wert Constr. Specialties, Inc. v. Straub Constr., Inc.*, No. 10CV1415 JLS (RBB), 2013 WL 4883152, at *2 (S.D. Cal. Sept. 12, 2013) (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

## B.      The FCRA and CCRAA Generally

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The Act imposes multiple duties upon "consumer reporting agencies" ("CRAs").15 U.S.C. § 1681a(f). As will be discussed below, whether the FCRA applies to a particular communication depends on whether it came from a CRA and fits within the parameters of a "consumer report." *See* 15 U.S.C. § 1681a(d). Because of its "consumer oriented objectives," the Ninth Circuit has long embraced "a liberal construction of the FCRA." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).[1]

## C.      The FCRA and CCRAA Clearly Cover the Lease Decision Reports, Providing SafeRent With No Valid Grounds to Dismiss the Complaint

### 1.      The plain text of the FCRA as well as court and regulatory guidance establish that the Lease Decision report is a consumer report

The best authority for a statute's applicability and meaning is the face of the statute itself. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009). The plain language of the FCRA makes it clear that "consumer report" is a broad category of data including almost any information that is used or could be used to make decisions about extending credit to a consumer or approving her for an apartment lease. The FCRA defines "consumer report" to include:

> [A]ny communication of ***any information*** by a consumer reporting agency *bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living* which is *used **or** expected to be used **or collected in whole or in part** for the purpose of serving as a factor* in establishing the consumer's eligibility for - -

---

[1]   In the context of SafeRent's Motion, there are no appreciable differences between the application of the FCRA and its California sister statute, the Consumer Credit Reporting Agencies Act to Plaintiff's SafeRent report.

(A)   credit [or other permissible business purposes] . . .

15 U.S.C. § 1681a(d)(1) (emphasis added); *see also* 15 U.S.C. § 1681b(a). Tenant or residential history is a type of specialty consumer report regulated by the FCRA. *See* 15 U.S.C. § 1681(w).

The FCRA further defines a CRA as "*any person* which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages *in whole or in part* in the practice of *assembling or evaluating consumer credit information* **or other information** *on consumers for the purpose of furnishing consumer reports to third parties,* and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f) (emphasis added).

In construing the FCRA, federal courts have found that the broad statutory definition of "consumer report" embraces a wide variety of information when it is communicated by a CRA. *Hoke v. Retail Credit Corp.*, 521 F.2d 1079, 1081 (4th Cir. 1979) (finding that a consumer report is "virtually any information communicated by a 'consumer reporting agency'"); *see also Trans Union Corp. v. Fed. Trade Comm'n*, 245 F.3d 809, 813 (D.C. Cir. 2001) (finding that the "bears on" element of § 1681a(d)(1) is not demanding, and that "almost any information about consumers arguably bears on their personal characteristics and mode of living.").[2]

Further, the Federal Trade Commission ("FTC") has found that merely a list of consumer names and addresses is a consumer report within the scope of FCRA. *In re Trans Union Corp.*, Opinion of the Commission, slip op. at 2 (Feb. 10, 2001), *available at* http://www.ftc.gov/os/2000/03/transunionopinionofthecommission.pdf.

---

[2]   The cases on which Defendant relies are not to the contrary and do not mandate dismissal of Plaintiff's claims here. Specifically, Defendant's reliance upon *Trans Union Corp. v. Fed. Trade Comm'n*, 81 F.3d 228 (D.C. Cir. 1996) is misplaced. In fact, that court rejected the very distinction between identifying information and consumer credit information that Defendant proposes. *Id.* at 232 (finding an "information-credit divide" to be "without inherent conceptual support," and noting that even a ZIP code may communicate some information on creditworthiness). The same court later upheld the FTC Opinion of the Commission cited above. *Trans Union Corp. v. Fed. Trade Comm'n*, 245 F.3d 809, 811 (D.C. Cir. 2001).

It is not the specific type of the information on a report, but the purpose for which the information is collected, in whole or in part, and for which it is expected to be used, that determines whether such information constitutes a consumer report. *See* 15 U.S.C. § 1681a(d)(1); *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 885 (5th Cir. 1989) ("[T]he purpose for which the information contained in a credit report is collected determines whether the report is a consumer report as defined by the FCRA.") (quoting 15 U.S.C. § 1681a(d)(1), which defines a consumer report as information collected "in whole or in part" by a CRA for FCRA purposes).

Here, Plaintiff's Second Amended Complaint clearly pleads, and the SafeRent's Motion does not contest, that SafeRent is a known CRA, that it collects much detailed information regarding consumers including the Plaintiff from various sources, and that it sells such information to potential creditors and other users such as landlords. (Dkt. No. 41 ¶¶ 6–13). The collection and expected use of these reports is crucial. SafeRent is not simply compiling data to be used for academic reasons, for census reasons, for advertising purposes, or some other non-FCRA purpose. Rather, the express purpose of reports like the one sold by SafeRent for a profit regarding Ms. Moreland is so that landlords can make eligibility decisions about whether consumers such as Ms. Moreland are potentially good tenants, credit-worthy lessees of apartments. (*Id.* ¶¶ 13–17, 25, 32–34.)

Nor is there any doubt from the pleadings that SafeRent knows that the information it compiles in its Lease Decision reports bears on a consumer applicant's credit worthiness and eligibility for an apartment lease and will be used as a factor in connection with a landlord's rental decision. (*Id.* ¶¶ 17–28.) Indeed, that is precisely what happened here: The Lease Decision report caused the landlord to deny Plaintiff's rental application. That is a classic example of a consumer report—information compiled by a known CRA for inclusion in reports and used to determine a consumer's lease eligibility.

Finally, and contrary to SafeRent's bald assertion, Plaintiff's Second Amended Complaint clearly pleads that SafeRent collects a wide variety of information on consumers—including not only names, addresses and Social Security Numbers, but also criminal histories, eviction records, and other information bearing on consumer creditworthiness. (Dkt. No. 41 ¶¶ 6–10.) The Lease Decision report prepared about Plaintiff included information about her potential eviction and criminal history, including whether she was a sex offender. (*Id.* ¶¶ 10–13, 19–21, 33.) The grossly inaccurate personal identifying information in the report was also collected for inclusion in various consumer reports and used in the Lease Decision report to make Plaintiff appear as if she was not credible, which is the very essence of assessing credit worthiness. Therefore, the Lease Decision report is a consumer report within the meaning of the FCRA and SafeRent's Motion to Dismiss should be denied.

## 2. Plaintiff Has Properly Pleaded a Violation of FCRA Section 1681e(a)

As SafeRent must acknowledge, the FCRA requires CRAs such as SafeRent to "maintain reasonable procedures designed . . . to limit the furnishing of consumer reports to the purposes listed under § 1681b of this title." 15 U.S.C. § 1681e(a). The FCRA requires more, however, specifying that before a CRA may sell a consumer report, it must obtain a permissible purpose "certification" in which "prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." *Id.*; *see also* FTC Official Staff Commentary, 16 C.F.R. § 600.2, § 607 item 2.B. (describing the "required certification by user"). The FCRA thus expressly prohibits CRAs from selling consumer reports to users without first obtaining the required certification. That is Plaintiff's claim here, not the one that SafeRent conjures up out of thin air.

7

The Court of Appeals for the Ninth Circuit has found that § 1681e(a) imposes affirmative independent obligations upon a CRA before selling a consumer report. *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 677 (9th Cir. 2009). Not only must the CRA obtain the certification described in the statute, the CRA "must make 'a reasonable effort' to verify the certifications and may not furnish reports if 'reasonable grounds' exist to believe that reports will be used impermissibly." *Id.* at 677 (quoting § 1681e(a)).[3] A CRA's widespread failure to comply with its Section 1681e(a) obligations form a proper basis for class action litigation. *See, e.g.*, *Holman v. Experian Info. Solutions, Inc.*, No. C11-0180CW, 2012 WL 1496203, at*17 (N.D. Cal. Apr. 27, 2012) (certifying class of consumers alleging failure of CRA to obtain proper certification prior to selling consumer report).

In the case at bar, Plaintiff has pleaded that SafeRent "does not obtain from landlords a permissible purpose certification for the limited permissible use of Lease decision reports," and sells such reports "to landlords that [SafeRent] at least has reason to suspect will use the reports to determine whether consumers are eligible to rent housing." (Dkt. No. 41 ¶¶14–15.) Further, Plaintiff alleges that SafeRent "never obtained a specific permissible purpose certification from the San Marcos, California, landlord in connection with Plaintiff's application for rent . . . despite twice listing the report's purpose as 'resident screening . . . .'" (*Id.* ¶¶ 27–28). There can be no serious doubt that Plaintiff has properly pleaded an FCRA section 1681e(a) claim.

SafeRent seems to ignore Plaintiff's claim based on Section 1681e(a)—that it lacks proper certifications for Plaintiff and a class of similarly situated consumers— and instead asserts that selling reports to landlords is indeed a permissible purpose under the FCRA. This is a case of a defendant wanting to have its cake and eat it too. SafeRent wants this Court to believe that its Lease Decision reports are not consumer

---

[3]  Defendant cites no authority to the contrary, and its reliance upon *Washington v CSC Credit Services* is not persuasive.

8

reports or regulated by the FCRA (*see supra*, Section II.C.1) but, at the same time, that it had an FCRA permissible purpose for its sales of these reports. That position is contradictory and insincere. Moreover, it fails to address head-on the actual claim here: that SafeRent recklessly never bothers to obtain a permissible purpose certification, as expressly required by the FCRA and Ninth Circuit precedent. Plaintiff has pleaded a straightforward Section 1681e(a) claim, and SafeRent's Motion to Dismiss must be denied.

### 3.     Plaintiff Has Properly Pleaded Her CCRAA Claims

It is well settled that "because the CCRAA 'is substantially based on the Federal Fair Credit Reporting Act, judicial interpretation of the federal provision is persuasive authority and entitled to substantial weight when interpreting the California provisions.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010) (quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 3, 3 Cal. Rptr. 3d 301 (2003)). *See also Cisneros v. U.S. Registry, Inc.*, 39 Cal. App. 4th 548, 559–62, 46 Cal. Rptr. 2d 233 (1995) (construing CCRAA in tandem with FCRA)*; Gomon v. TRW, Inc.*, 28 Cal. App. 4th 1161, 1168, 34 Cal. Rptr. 2d 256 (1994) (noting that analysis under the CCRAA is the same as under the FCRA). Therefore, for all the same reasons Plaintiff has properly plead claims under the FCRA, as discussed above, she has also properly stated claims under the CCRAA.

SafeRent suggest that CCRAA "consumer credit reports" might have a narrower scope than FCRA "consumer reports," but that is of no moment here because SafeRent's Lease Decision reports are clearly a covered CCRAA report. The CCRAA explicitly states that a consumer credit report includes information which is "collected in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for . . . (3) hiring of a dwelling unit." Cal. Civ. Code § 1785.3(c). That is precisely the reason information was collected by SafeRent here and used in its Lease Decision report about Plaintiff.

9

Finally, SafeRent's reliance upon *Gomon v. TRW, Inc.* is misplaced. In *Gomon*, an appeal from a summary judgment decision, the plaintiff provided no evidence that the objectionable information released by the defendant was used to establish his eligibility for credit, the hiring or a dwelling unit, or any other permissible purpose. *Gomon*, 28 Cal. App. 4th at 1168. By contrast, here Plaintiff has specifically pleaded (and would expect to present evidence during discovery to establish) that the inaccurate Lease Decision report sold by SafeRent was, in fact, used by her prospective landlord to determine her eligibility to rent an apartment, and indeed to deny her lease application. (Dkt. No. 41 ¶ 34). The case at bar, therefore is distinguishable from *Goman*.

In sum, Plaintiff has properly pleaded violations of the CCRAA in the same fashion that she has pleaded her analogous claims under the federal FCRA, and SafeRent's Motion to Dismiss should thus be denied.

### D.   Plaintiff Has Properly Stated a Claim for Relief for SafeRent's Failure to Provide Her with Her File Free of Charge

Under both the FCRA and CCRAA, CRAs like SafeRent are required to provide consumers with all of the information in their SafeRent files upon the consumer's request. 15 U.S.C. §§ 1681g(a), 1681j(a); Cal. Civ. Code §§ 1785.10, 15; *Lopez v. Nat'l Credit Reporting, Inc.*, No. C12-05166 HRL, 2013 WL 1999624, at \*4 (N.D. Cal. May 13, 2013) (slip op.). The Federal Trade Commission, which formerly held primary FCRA-enforcement jurisdiction, and the Consumer Financial Protection Bureau, which currently fills that role, have both adopted regulations requiring that CRAs to provide consumers with a "streamlined process" by which to request their files. (Dkt. No. 41 ¶¶ 47–48.) While most CRAs meet this requirement by giving consumers simple systems by which to order their free disclosures, such as by telephone or over the Internet (*id.* ¶¶ 48–51), SafeRent has done the opposite—creating a frustrating, difficult-to-navigate labyrinth that discourages consumers like

Plaintiff from obtaining their files because it is simply too difficult and time consuming to do so. (*Id.* ¶¶ 58–59.) And, even when consumers do follow SafeRent's complex procedure to the letter, as Plaintiff did, SafeRent still fails to provide the requested disclosures. (*Id.* ¶¶ 55–57.) SafeRent's process and its failure to respond to consumers' requests for their files violate both the FCRA and CCRAA, and Plaintiff has stated a proper claim for relief under both statutes.

> ### 1. SafeRent cannot rely on its onerous identification procedures as a means to skirt its obligation to provide consumers with their files upon request

In making its annual disclosure to consumers, as SafeRent points out (Dkt. No. 46 at 14), the CRA is obligated to require "that the consumer furnish proper identification" in support of that request. *Lopez*, 2013 WL 1999624, at *4 (quoting 15 U.S.C. § 1681h(a)). The FCRA does not define what constitutes "proper identification," but regulations enacted pursuant to the statute provide the following guidance:

> (a) Consumer reporting agencies shall develop and implement reasonable requirements for what information consumers shall provide to constitute proof of identity . . . .
>
> (b) Examples of information that might constitute reasonable information requirements for proof of identity are provided for illustrative purposes only, as follows:
>
>> (1) Consumer file match: The identification information of the consumer including his or her full name (first, middle initial, last, suffix), any other or previously used names, current and/or recent full address (street number and name, apt. no., city, state, and zip code), full 9 digits of Social Security number, and/or date of birth.
>>
>> (2) Additional proof of identity: copies of government issued identification documents, utility bills, and/or other methods of authentication of a person's identity which may include, but would not be limited to, answering questions to which only the consumer might be expected to know the answer.

12 C.F.R. § 1022.123. Plaintiff alleges in her Second Amended Complaint that SafeRent takes this regulation's suggestions to the extreme, forcing consumers to

request their files by completing and mailing a specific form created by SafeRent that also requires consumers to sign under "penalty of law" and provide additional documentation verifying the consumers' identities. (Dkt. No. 41 ¶¶ 41–43, 52–53.) Plaintiff alleges that she twice contacted SafeRent in writing—once with a letter and once using SafeRent's "Consumer Disclosure Request Form"—and requested her consumer file, but SafeRent failed to respond to either request. (*Id.* ¶¶ 37–39, 53, 55–57.) SafeRent cannot truthfully state to this Court that it was unable or incapable of identifying the information relating to Ms. Moreland from its files. Indeed, discovery will demonstrate that SafeRent will *sell* reports to its customers when they supply even less identifying information than Ms. Moreland did here. As apparent justification for failing to provide Plaintiff with her report, SafeRent relies on the "proper identification" requirement and although it does not state so, seems to take the position that Plaintiff did not properly identify herself in requesting her file. (Dkt. No. 46 at 14–16; *see also id.* at 13 (characterizing Plaintiff's written request for her file from SafeRent as "incomplete").) Since, by SafeRent's reckoning, Plaintiff did not provide adequate identifying information when making her request, SafeRent abided by the FCRA and CCRAA when it did nothing in response. SafeRent is incorrect, as the "proper identification" requirement is not carte blanche for CRAs to simply ignore consumer requests for their files and, notwithstanding this reality, Plaintiff followed SafeRent's prescribed procedure and SafeRent *still* ignored her request. (Dkt. No. 41 ¶¶ 55–57.) In short, Plaintiff has stated a proper claim for relief for SafeRent's failure to provide her with her file upon request, making denial of SafeRent's Motion proper.

While SafeRent seems to interpret the pronouncements of 12 C.F.R. § 1022.123 as mandates of what it *must* do to verify a consumer's identity before providing the consumer with his or her file, such an position overlooks the clear text of the regulation, which explains that it provides "[e]*xamples* of information that

*might* constitute reasonable information requirements for proof of identity are provided *for illustrative purposes only*." *Id.* (emphasis added). SafeRent cannot therefore cogently argue that following the regulation's suggestions is *per se* reasonable because the regulation mandates nothing. Simply put, the Court should deny SafeRent's request to dismiss Claims I and III because Plaintiff has properly set forth a claim for relief.

The FCRA requires that SafeRent provide consumers with a disclosure of all information in their files once a year free-of-charge, and Plaintiff alleges that because of the process that SafeRent has created for making that simple request, consumers must expend funds to request their files, and SafeRent fails to meet its end of the bargain. Plaintiff's factual allegations include:

> Defendant's standardized "Consumer Disclosure Request Form" and procedure effectively deprives consumers such as Plaintiff from obtaining a copy of their files free of charge. Minimally, consumers such as Plaintiff are required to expend moneys on printing Defendant's paper forms, photocopying one or two forms of identification, and traveling to a post office and mailing to Defendant its required form and related photocopies.

> Defendant's procedure for requesting consumer files is not only contrary to industry practice, but it is also in contravention of regulatory guidance which mandates that both nationwide and specialty CRAs use a streamlined process in permitting consumers to quickly and easily obtain their files, including over the telephone or Internet, without the need for printing any particular forms, photocopying records, purchasing postage, and mailing requests.

> Nevertheless, Plaintiff printed out Defendant's form, made photocopies of her driver's license and social security card, drove for approximately 10 minutes to find a post office, purchased postage, paid for a return receipt for certified mail, and mailed to Defendant her request for her file on Defendant's form on or about January 18, 2013.

> Nevertheless, Defendant again failed to provide to Plaintiff with a copy of her file.

> Defendant's practices are not accidental, but designed to frustrate consumers in their efforts to obtain their files, and thus reduce Defendant's compliance expenses relative to providing consumers with their files and processing their disputes, which will most certainly arise when consumers like Plaintiff find inaccurate information in their files.

13

> Defendant's practices also deprive consumers of a file that is truly *free of charge*, since consumers such as Plaintiff must expend some printing, postage, copying, and travel expenses in order to request their files from Defendant in the burdensome and unlawful manner that Defendant requires.
>
> Other CRAs, on the other hand, permit consumers to obtain their files free of charge by allowing them to do so by calling a toll-free number or requesting the file over the Internet.

(Dkt. No. 41 ¶¶ 44–45, 55, 57–60 (emphasis in original).) Plaintiff also alleges that, even when she wrote to SafeRent without using its disclosure form and provided her name, maiden name, address, complete Social Security Number, and complete date of birth, SafeRent did not provide her with her free, annual file disclosure. (*Id.* ¶¶ 37–39.) Regardless of the method Plaintiff employed—a letter with adequate identifying information or SafeRent's form and documents that it required Plaintiff to supply—SafeRent shirked its FCRA obligation and failed to provide Plaintiff with her consumer file. (*Id.* ¶¶ 37–39, 55–57.) Taking these factual allegations as true, as the Court must at this stage, unquestionably shows that Plaintiff has stated a claim against SafeRent for violation of 15 U.S.C. § 1681g(a) by failing to provide consumers with "all of the information in the consumer's file" upon the consumer's request. 15 U.S.C. § 1681g(a). The Court should therefore deny SafeRent's Motion.

A similar case considering the "proper identification" requirement shows that SafeRent's Motion must be denied. In *Menton v. Experian Corp.*, No. 02 Civ. 4687 (NRB), 2003 WL 941388, at *1 (S.D.N.Y. Mar. 6, 2003), the court found that the proper identification threshold was met where the plaintiff provided *less* information to the CRA than Ms. Moreland provided to SafeRent. In *Menton*, plaintiff sued Experian for its failure to provide him with his credit report after plaintiff sent Experian the required fee and, among other means of identification, a copy of his driver's license, a copy of a bank statement with his name and address, his home telephone number, and the address of his law firm's website where his picture was posted. *Id.* Experian responded that it could not provide Menton his report without his

14

Social Security Number, which Menton did not provide in a second letter repeating the previous identifying information. *Id.* After Experian did not respond to this second request, Menton then sued Experian for its failure to provide his report as required by Section 1681g, and Experian claimed that Menton did not provide it with "proper identification" under Section 1681h. *Id.* at *3. The court rejected this argument, stating:

> [W]e find no reason that Experian could not have verified Mr. Menton's identity and provided him with his credit report soon after receiving the various alternative forms of identification which he did furnish. In short, we are not persuaded by Experian's argument that "proper identification" as defined by the FCRA and the NYFCRA should be narrowly construed to mean that, in all circumstances, a consumer must provide his Social Security number in order to receive his credit report.

*Id.* While it is unclear here how Plaintiff fell short of providing SafeRent with "proper identification" for her file disclosure, *Menton* shows that she certainly provided enough information for SafeRent to identify her and make that disclosure.

Moreover, Federal Regulations show that CRAs cannot simply do nothing, as SafeRent did, when they supposedly cannot identify a consumer requesting her file:

> (a) Streamlined process requirements. Any nationwide specialty consumer reporting agency shall have a streamlined process for accepting and processing consumer requests for annual file disclosures. The streamlined process required by this part shall: . . .
>
> (2) Be designed, funded, implemented, maintained, and operated in a manner that: . . .
>
> (iii) Provides clear and easily understandable information and instructions to consumers, including but not necessarily limited to: . . .
>
> (C) In the event that a consumer requesting a file disclosure cannot be properly identified in accordance with the FCRA, section 610(a)(1), 15 U.S.C. 1681h(a)(1), and other applicable laws and regulations, *providing a statement that the consumers identity cannot be verified; and directions on how to complete the request, including what additional information or documentation will be required to complete the request, and how to submit such information.*

12 C.F.R. § 1022.137 (emphasis added). SafeRent did not respond at all to Plaintiff's requests for her file, failing altogether to meet this Regulation's requirement.

SafeRent's cited authority does not provide a valid ground for granting its Motion, as the two cases that supposedly show that SafeRent's onerous procedure is required by the FCRA and federal regulations are readily distinguishable. *Singletary v. Equifax Information Services, LLC*, No.2:09-CV-489-TMP, 2011 WL 9133115, at *1 (N.D. Ala. Sept. 22, 2011), involved a summary-judgment and class-certification proceeding—not, as here, a motion to dismiss—in which plaintiff challenged, among other things, Equifax's failure to provide plaintiff with his free, annual file disclosure after he requested it. *Id.* at *1, *9. Plaintiff and his father both requested the file disclosure from Equifax by phone and by mail, and there was confusion over plaintiff's true address as reflected in Equifax's records. *Id.* at *6–8. In its summary-judgment analysis, the court noted that while plaintiff and his father both contacted Equifax to request the file disclosure, human error on the part of Equifax's representatives caused the failure to provide plaintiff with the disclosure. *Id.* at *12. Part of the difficulty with plaintiff's request, the court further explained, was that the addresses he and his father provided did not match the address Equifax had in its file. *Id.* at *4, *15. When Equifax was unable to verify the addresses provided with the one in its file, rather than give the file disclosure, it instead mailed plaintiff several letters (some the result of Equifax's errors) requesting that he provide additional information to verify his identity. *Id.* at *6, 14–15. Thus, since there was confusion on Equifax's part as to whether the individual requesting Singletary's file disclosure was actually Singletary, it is understandable that Equifax might request additional information before making that disclosure.

Similarly, in *Garrison v. Equifax Information Services, LLC*, No. 10-13990, 2012 WL 1278044, at *1 (E.D. Mich. Apr. 16, 2012), which SafeRent claims provides persuasive authority that its Disclosure Request Form and required documents are "reasonable and necessary" means to obtain "proper identification" under 15 U.S.C. § 1681g, the plaintiff sued Equifax and Transunion over inaccuracies

16

in his credit report as well as its failure to timely provide his credit score after he requested it. *Id.* Like *Singletary*, the *Garrison* court was also considering defendants' motions for summary judgment, not motions to dismiss, and the dispute regarded the need for additional identifying information because defendants were unable to verify Garrison's address when he first requested his file disclosure. *Id.* at *1–2, *5–6. In response to defendants' requests for additional identifying information, plaintiff provided copies of his Michigan drivers license, his tribal drivers license, a cable bill, and his Michigan Voters Registration card. *Id.* at *2, *5. Transunion again contacted plaintiff by mail, communicating its inability to locate his credit report based on the information he provided, and prompting him to sand additional verifying information. *Id.* at *5. Plaintiff did not respond to this request. *Id.* at *6. Plaintiff sued after defendants failed to disclose his file to him, and the court granted summary judgment for Transunion on that claim after concluding that it reasonably requested additional verifying information and Garrison failed to provide it. *Id.* at *5–6.

Leaving aside that *Garrison* and *Singletary* were both decided at the summary judgment stage, they are both further distinguishable by the fact that in each instance the CRA was unable to verify Singletary's and Garrison's addresses, and therefore their identities, when they initially requested their disclosures. It is therefore entirely logical that, given the confusion over the consumers' addresses, the CRAs would ask for additional identifying information after the consumers' initial contact. This circumstance is absent here. As Plaintiff alleges, SafeRent requires the use of its disclosure form and the provision of substantial identifying information *in the original contact with SafeRent*, making the process "onerous and difficult for consumers from the beginning, regardless of whether Defendant has any genuine doubt as to the identity of the person requesting a consumer's file." (Dkt. No. 41 ¶ 46.) Since the defendants there only requested the level of information on par with that SafeRent requires for a file disclosure *after* there was doubt as to the identity of

17

the person requesting the file disclosure, *Garrison* and *Singletary* provide no basis on which to dismiss Claims I and III of Plaintiff's Complaint.[4] The Court should therefore deny SafeRent's Motion.

Finally, SafeRent also argues that *Singletary* and *Garrison* show that SafeRent's procedure for requiring significant effort from consumers before providing file disclosures was "reasonable." (Dkt. No. 46 at 16, 18.) Of course, courts in this Circuit are legion in holding that the reasonableness of procedures under the FCRA is a question of fact for the jury, ill-suited for disposal on summary judgment, let alone a motion to dismiss. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases."); *Lopez*, 2013 WL 1999624, at *3–4 (refusing to dismiss claims challenging reasonableness of procedures); *Gauci v. Citi Mortgage*, No. 2:11-CV-01387-ODW(JEMx), 2012 WL 1535654, at *4 (C.D. Cal. Apr. 30, 2012) (refusing to even consider reasonableness of procedures on defendant's motion for summary judgment because that issue is typically a jury question); *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066, 1071 (D. Or. 2011) ("Generally, a jury should determine whether a CRA's procedures were reasonable and properly followed."); *Bolton v. Bank of Am., N.A.*, No. CV-10-204-JLQ, 2011 WL 1044485, at *7 (E.D. Wash. Mar. 18, 2011) ("Whether Defendants behaved reasonably and took appropriate steps to timely correct the credit reporting information present questions of fact which preclude summary judgment."). The Court should therefore disregard

---

[4]   Further lost on SafeRent is the fact that the defendants in *Singletary* and *Garrison* took action—they each requested more information from the plaintiffs—when they could not verify that Singletary and Garrison were indeed the ones requesting their files. Here, even assuming that SafeRent had reason to doubt that Plaintiff was indeed the one requesting her file, SafeRent did nothing. (Dkt. No. 41 ¶¶ 39, 57.)

any arguments that the steps SafeRent required of consumers are reasonable, particularly in light of Plaintiff's factual allegations—which the Court must now accept as true—that SafeRent's competitors allow consumers to request their files through much simpler procedures than SafeRent requires. (Dkt. No. 41 ¶¶ 47–52.) In sum, Plaintiff properly requested her file disclosure from SafeRent on two different occasions, and SafeRent ignored each of those requests. Plaintiff has therefore validly stated a claim for violations of the FCRA for this failure, and SafeRent's Motion should therefore be denied.

### 2. Because it requires consumers to incur expenses in requesting their files, SafeRent's procedure violates the FCRA requirement that it provide those files "free-of-charge"

SafeRent's arguments about the propriety of its identification procedures are apparently also its justification for failing to provide Plaintiff with her file free-of-charge. The argument, it seems, is that SafeRent's process is required by the FCRA, so any expense consumers incur related to abiding by these supposed requirements is incidental or unimportant. (*See* Dkt. No. 46 at 14–18.) Since Plaintiff has adequately stated a claim that SafeRent failed to provide her with her file "free-of-charge" as required by the FCRA, Claims I and III survive SafeRent's Motion.

In conjunction with the file-disclosure requirements addressed in the previous section, the FCRA also requires that CRAs provide consumers with their file, again upon request, once every twelve months "without charge to the consumer." 15 U.S.C. § 1681j(a)(1)(A). Plaintiff alleges in her Complaint that she had not obtained her free disclosure from SafeRent during the twelve months before her January 18, 2013 request (her second) for her file from SafeRent. (Dkt. No. 41 ¶ 56.) She was therefore entitled to her free annual disclosure at the time she requested it and SafeRent failed to provide it. 15 U.S.C. § 1681j(a)(1)(A). Because SafeRent did not give Plaintiff the free annual disclosure to which the FCRA entitles her when she requested it, SafeRent violated Section 1681j(a)(1)(A).

19

1   Plaintiff alleges in her Second Amended Complaint that she twice contacted
2   SafeRent, in writing, and requested her file disclosure to no avail. (Dkt. No. 41 ¶¶ 36–
3   37, 55.) The federal agencies that oversee enforcement of the FCRA demand a
4   "streamlined process" by which consumers may request their disclosures, such as by
5   telephone. (*Id.* ¶ 47.) Other CRAs permit consumers to request their file disclosures
6   over the telephone or Internet, but SafeRent has created a difficult system with
7   multiple hurdles for consumers to surmount. (*Id.* ¶¶ 48–54, 58.) In Plaintiff's case,
8   after her first written request for her file went unanswered, she was able to locate
9   SafeRent's Disclosure Form on its website, which required her to:

> (a) complete the paper request form in writing; (b) sign the form under
> "penalty of law;" (c) mail the form to Defendant; and, (d) provide to
> Defendant a photocopy of either one or two forms of identification
> (depending on the type of identification), such as a driver's license,
> government or military government issued photo ID, social security card
> and/or recent utility bill.

14  (*Id.* ¶ 42.) In abiding by these instructions, Plaintiff expended time and money by
15  making photocopies of her driver's license and social security card, driving for
16  approximately ten minutes to find a post office, purchasing postage, paying for a
17  return receipt for certified mail, and mailing to SafeRent her request for her file. (*Id.* ¶
18  55.) As these allegations show, SafeRent's procedure requires consumers to incur, at
19  a minimum, expenses that other CRAs and the FCRA do not require in order to
20  obtain their supposedly "free" annual disclosure.[5] (*Id.* ¶¶ 44, 54.) This process, which
21  Plaintiff alleges is erected to save SafeRent money by so frustrating consumers that
22  they will give up and not request their annual file disclosure, fails to meet the FCRA
23  mandate that SafeRent provide consumers with their files free-of-charge because it
24  requires expenditures by consumers. (*Id.* ¶¶ 44, 46, 52–54, 58.) Put simply, Plaintiff

---

27  [5]  Even when consumers do go to the trouble to abide by SafeRent's system, as
28  Plaintiff did, SafeRent still will not provide the file disclosure. (Dkt. No. 41 ¶ 57.)

alleges that SafeRent's system for requesting their annual file disclosures causes consumers to incur expenses in making that request, which therefore fails to meet the FCRA's mandate that SafeRent provide the disclosures for free. (*Id.* ¶¶ 44, 55, 59–61.)[6] As SafeRent's file disclosures are not made "without charge to the consumer" as the FCRA requires, Plaintiff has adequately stated a claim that SafeRent has violated 15 U.S.C. §§ 1681g(a) and 1681j(a). Since SafeRent fails to even address this aspect of Plaintiff's claims in its briefing, the Court should deny SafeRent's Motion to Dismiss.

### 3.  SafeRent's arguments related to the Claim I and III class definitions provide no grounds for dismissal of those claims

SafeRent also seems to challenge Claims I and III as failing to state a claim because those claims are not based on allegations that SafeRent failed to respond to Plaintiff's request for her file using SafeRent's Disclosure Form. (Dkt. No. 46 at 19–20.) These arguments, however, do not provide a basis for dismissal because they simply point out the factual allegations of Plaintiff's class definitions and compare them to other allegations in the Complaint. (*See id.* at 20 (explaining that the Claim I class definition is not limited to consumers who sought their file disclosures using SafeRent's Disclosure Form), *id.* at 21 (noting that class definition related to Claim III does not allege that SafeRent failed to provide consumers with their files free of charge).) After bringing up these points, however, SafeRent simply returns to its argument that its procedure for identifying consumers is permitted by the FCRA, so Claims I and III should be dismissed. (*Id.* at 21.) Because Plaintiff has amply refuted those arguments, the Court should disregard SafeRent's attempt to raise them in the context of Plaintiff's class allegations.

---

[6] Notably, as Plaintiff also alleges, other CRAs permit consumers to request their annual file disclosures by telephone and over the Internet, methods that meet the FCRA and federal-regulation mandates and the cost consumers minimal, if any, time and money. (Dkt. No. 41 ¶¶ 47–51.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

To the extent that SafeRent's challenge is a request to strike Plaintiff's class allegations,[7] the Court should decline. Not only is that request presented without a formal motion and in the most cursory fashion imaginable, courts within this Circuit generally refuse to strike class allegations in Rule 12 motions because arguments pertaining to class definitions are better addressed in the Rule 23 analysis, after discovery has taken place. *See Cruz v. Sky Chefs, Inc.*, No. C-12-02705 DMR, 2013 WL 1892337, at *4–5 (N.D. Cal. May 6, 2013) (noting "many courts have recognized that the sufficiency of class allegations are better addressed through a class certification motion, after the parties have had an opportunity to conduct some discovery" and collecting multiple cases from the Ninth, Third, and Eighth circuits so holding); *Guzman v. Bridgeport Educ., Inc.*, No. 11CV69 WQH (WVG), 2013 WL 593431, at *6 (S.D. Cal. Feb. 13, 2013) (noting that "the granting of motions to dismiss class allegations before discovery has commenced is rare"); *Sutcliffe v. Wells Fargo Bank, N.A.*, No. C-11-06595 JCS, 2012 WL 4835325, at *4 (N.D. Cal. Oct. 9, 2012) ("[D]istrict courts rarely strike class allegations at the pleading stage."). The Court should conclude as did these others, and decline to strike any class allegations until SafeRent makes a proper challenge at the class-certification stage.

### 4.    Plaintiff's CCRAA file-request claims also survive SafeRent's Motion

Finally, SafeRent challenges Plaintiff's claim under the CCRAA, namely that SafeRent violated that statute by failing to provide consumers with their files upon their request. (Dkt. No. 46 at 22.) This claim must be dismissed, SafeRent argues, for the same reason that Claims I and III should be dismissed—SafeRent's process for requiring "proper identification" before making this disclosure is required by the FCRA, so it did nothing wrong. (*Id.*)

---

[7] Plaintiff disagrees that the mere inclusion of the word "stricken" within a footnote is a proper attack on class allegations under Rule 12. *See* FED. R. CIV. P. 12(b), 12(f).

Like the FCRA, the CCRAA obligates CRAs to provide consumers with certain information in the CRA's files at the time a consumer requests that information. Cal. Civ. Code §§ 1785.10, 1785.15. Specifically, consumers have the right to request and receive the following:

> (1) Either a decoded written version of the file or a written copy of the file, including all information in the file at the time of the request, with an explanation of any code used.

> (2) A credit score for the consumer, the key factors, and the related information, as defined in and required by Section 1785.15.1.

> (3) A record of all inquiries, by recipient, that result in the provision of information concerning the consumer in connection with a credit transaction not initiated by the consumer and that were received by the consumer credit reporting agency in the 12-month period immediately preceding the request for disclosure under this section.

> (4) The recipients, including end users specified in Section 1785.22, of any consumer credit report on the consumer which the consumer credit reporting agency has furnished:

>> (A) For employment purposes within the two-year period preceding the request.

>> (B) For any other purpose within the 12-month period preceding the request.

*Id.* § 1785.15. The CCRAA also demands that CRAs advise consumers of certain CCRAA rights, such as the entitlement to a copy of their files under Section 1785.15. *Id.* § 1785.10(b). SafeRent acknowledges these obligations in its Motion, but claims that "[t]here is no allegation in the Second Amended Complaint that SafeRent failed to make the required disclosures." (Dkt. No. 46 at 22.) The Complaint belies this assertion, as Plaintiff clearly alleges that SafeRent did not make the required disclosures to her.

Plaintiff alleges that while she twice wrote SafeRent and requested her annual file disclosure, SafeRent failed to provide it each time. (Dkt. No. 41 ¶¶ 36–39, 55–57.) More specifically, as to the first request, Plaintiff asserts:

> Given that Defendant did not even respond—not to ask Plaintiff for more information, or to suggest that she use Defendant's form, or anything—to

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Plaintiff's letter request for her file, it obviously seeks to erect onerous barriers to consumers attempting to enforce even the most basic of FCRA rights.

(*Id.* ¶53.) True, this paragraph does not specifically mention the CCRAA, but the plain text clearly implicates the CCRAA because, although Plaintiff wrote and requested her consumer file as both statutes permit, SafeRent "did not even *respond*" to that request. (*Id.* (emphasis added).) If SafeRent did not respond, it certainly could not have provided the mandated disclosures under either statute. *See* 15 U.S.C. §§ 1681g, 1681j; Cal. Civ. Code § 1785.10(b). Accordingly, Plaintiff has properly stated a claim for SafeRent's failure to provide her with the disclosures the CCRAA mandates, making denial of SafeRent's Motion on Claim II appropriate.

## III.   CONCLUSION

Try as it might, SafeRent provides no reasoned basis for dismissing Plaintiff's Second Amended Complaint. The FCRA and CCRAA clearly cover Lease Decision reports, making Plaintiff's claims under both of those statutes eminently proper. As set forth in the Second Amended Complaint, SafeRent sells Lease Decision Reports for FCRA-governed purposes but fails to obtain the proper FCRA certification when doing so, fails to follow statutory mandates to assure the maximum possible accuracy of the information in those reports, refuses to provide consumers with disclosure of their files when requested, and fails to provide those disclosures free-of-charge where appropriate. Plaintiff has pleaded proper claims for relief for SafeRent's serial violations of both the FCRA and CCRAA, and SafeRent gives the Court no cause to conclude otherwise. The Court should therefore deny SafeRent's Motion.

1   Date:  September 25, 2013

2

3

Respectfully submitted,

**CADDELL & CHAPMAN**

/s/ Michael A. Caddell
Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
Craig C. Marchiando (SBN 283829)
1331 Lamar, Suite 1070
Houston TX 77010
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906

Leonard A. Bennett (*pro hac vice*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1A
Newport News VA 23601
Telephone:  (757) 930-3660
Facsimile:  (757) 930-3662

James A. Francis (*pro hac vice*)
jfrancis@consumerlawfirm.com
John Soumilas (*pro hac vice*)
jsoumilas@consumerlawfirm.com
David A. Searles (*pro hac vice*)
dsearles@consumerlawfirm.com
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia PA 19110
Telephone:  (215) 735-8600
Facsimile:  (215) 940-8000

***Attorneys for Plaintiff***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 25, 2013, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Michael A. Caddell
Michael A. Caddell