1  NANCY R. THOMAS (CA SBN 236185)
   NThomas@mofo.com
2  MORRISON & FOERSTER
   555 West Fifth Street, Suite 3500
3  Los Angeles, CA  90013
   Phone:  (213) 892-5561
4  Fax:  (213) 892-5454

5  JAMES F. MCCABE (CA SBN 104686)
   JMcCabe@mofo.com
6  MORRISON & FOERSTER
   425 Market Street
7  San Francisco, CA  94105-2482
   Phone:  (415) 268-7011
8  Fax:  (415) 268-7522

9  RONALD I. RAETHER (admitted *pro hac vice*)
   rraether@ficlaw.com
10 DONALD E. BURTON (admitted *pro hac vice*)
   dburton@ficlaw.com
11 FARUKI IRELAND & COX P.L.L.
   500 Courthouse Plaza, S.W.
12 10 North Ludlow Street
   Dayton, OH 45402-1818
13 Phone:  (937) 227-3733
   Fax:  (937) 227-3717
14
   Attorneys for Defendant
15 CORELOGIC SAFERENT, LLC

16              UNITED STATES DISTRICT COURT

17             CENTRAL DISTRICT OF CALIFORNIA

18

19 SUSAN E. MORELAND, on behalf        Case No. SACV 13-00470 AG (ANx)
   of herself and all others similarly
20 situated,                           **REPLY MEMORANDUM OF
                                        DEFENDANT CORELOGIC
21                Plaintiff,            SAFERENT, LLC TO PLAINTIFF'S
                                        OPPOSITION TO DEFENDANT'S
22       v.                            MOTION TO DISMISS
                                        PLAINTIFF'S SECOND
23 CORELOGIC SAFERENT, LLC,            AMENDED COMPLAINT**

24                Defendant.           Hon. Andrew J. Guilford
                                       Date:       October 21, 2013
25                                     Time:       10:00 a.m.
                                       Courtroom:  10D
26                                     Action filed: March 25, 2013
                                       FAC filed:  June 6, 2013
27                                     SAC Filed:  August 20, 2013

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY ........................................................... 1

II.   CLAIMS IV-VII FAIL BECAUSE THE IDENTIFICATION
      INFORMATION OF WHICH PLAINTIFF COMPLAINS DOES
      NOT "BEAR ON" ONE OF THE SEVEN CHARACTERISTICS ............... 3

III.  CLAIMS VI AND VII FAIL FOR THE ADDITIONAL REASON
      THAT PLAINTIFF HAS NOT ALLEGED USE FOR AN
      "IMPERMISSIBLE PURPOSE" .................................................................. 7

IV.   PLAINTIFF HAS NOT ALLEGED A CLAIM FOR A VIOLATION
      OF FCRA AND CCRAA PROVISIONS REGARDING
      CONSUMERS' REQUESTS FOR THEIR FILES (CLAIMS 1
      THROUGH III) .......................................................................................... 9

V.    CONCLUSION ........................................................................................... 13

1

## TABLE OF AUTHORITIES

**CASES**                                                                 Page(s)

*Carvalho v. Equifax Info. Servs., LLC,*
    629 F.3d 876 (9th Cir. 2010) ............................................................... 8

*Dotzler v. Perot,*
    914 F. Supp. 328 (E.D. Mo. 1996), *aff'd*, Nos. 96-2676EM,
    96-2677EM, 1997 U.S. App. LEXIS 22586 (8th Cir. Aug. 26, 1997)
    (*per curiam*) ........................................................................................ 3

*Garrison v. Equifax Info., Servs., LLC,*
    No. 10-13990, 2012 U.S. Dist. Lexis 52942
    (E.D. Mich. Apr. 16, 2012) ............................................................ 9, 10

*Hoke v. Retail Credit Corp.,*
    521 F.2d 1079 (4th Cir. 1975), *cert. denied*, 423 U.S. 1087,
    96 S. Ct. 878(1976) .............................................................................. 7

*Holman v. Experian Info. Solutions, Inc.,*
    No. C 11-0180 CW, 2012 U.S. Dist. LEXIS 59401
    (N.D. Cal. Apr. 27, 2012) ..................................................................... 8

*Menton v. Experian Corp.,*
    No. 02 Civ. 4687 (NRB), 2003 U.S. Dist. LEXIS 3325
    (S.D.N.Y. Mar. 6, 2003) ...................................................................... 10

*Pilgrim v. Universal Health Card, LLC,*
    660 F.3d 943 (6th Cir. 2011) .............................................................. 12

*Pintos v. Pac. Creditors Ass'n,*
    605 F.3d 665 (9th Cir. 2010), *cert. denied,*
    __ U.S. __, 131 S. Ct. 900 (2011) ...................................................... 8

*Route v. Mead Johnson Nutrition Co.,*
    No. CV 12-7350-GW(JEMx), 2013 U.S. Dist. LEXIS 35069
    (C.D. Cal. Feb. 21, 2013) ................................................................... 12

*Singletery v. Equifax Info., Servs.,*
    No. 2:09-cv-489-TMP, 2011 U.S. Dist. Lexis 156215
    (N.D. Ala. Sept. 21, 2011) ............................................................. 10-11

*Smith v. Waverly Partners, LLC,*
  No. 3:10-cv-28, 2011 U.S. Dist. Lexis 90135
  (W.D.N.C. Aug. 12, 2011)................................................................ 3, 6

*St. Paul Guardian Ins. Co. v. Johnson*
  884 F.2d 881 (5th Cir. 1989) ............................................................. 7

*Sutcliffe v. Wells Fargo Bank, N.A.,*
  No. C-11-06595 JCS, 2012 U.S. Dist. LEXIS 145437
  (N.D. Cal. Oct. 9 2012)................................................................ 12-13

*Trans Union Corp. v. FTC,*
  81 F.3d 228 (D.C. Cir. 1996)........................................................... 5, 6

*Trans Union Corp. v. FTC,*
  245 F.3d 809 (D.C. Cir. 2001), *cert. denied,*
  536 U.S. 915, 122 S. Ct. 2386 (2002) ............................................. 6

*TRW Inc. v. Andrews,*
  534 U.S. 19, 122 S. Ct. 441 (2001) ................................................. 7

*Washington v. CSC Credit Servs.,*
  199 F.3d 263 (5th Cir.), *cert. denied,* 530 U.S. 1261,
  120 S. Ct. 2718 (2000) ..................................................................... 8


**STATUTES**

12 C.F.R. § 1022.123 .......................................................................... 2, 9
  § 1022.123(b)(1) ............................................................................. 10
  § 1022.123(b)(2) ......................................................................... 10, 11

15 U.S.C.
  § 1681 ................................................................................................ 1
  § 1681a(d) ...................................................................................... 4-5
  § 1681b .............................................................................................. 8
  § 1681e(a) ................................................................................... 7, 8, 9
  § 1681e(b) .......................................................................................... 8
  § 1681g ............................................................................................... 9
  § 1681g(a) ...................................................................................... 2, 9
  § 1681h(a) ............................................................................. 2, 10, 13
  § 1681h(a)(1) ............................................................................... 9, 11
  § 1681j(a) ........................................................................................... 9
  § 1681(w) ........................................................................................... 8

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>RULES</u>**

Fed. R. Civ. P. 12(b)(6) ........................................................................... 9

# I.    INTRODUCTION AND SUMMARY

Plaintiff concedes that her Claims IV-VII of the Second Amended Complaint ("SAC") fail if the SafeRent Identify report of Defendant CoreLogic SafeRent, LLC ("SafeRent") does not meet all of the elements to be a "consumer report" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. ("FCRA") and its state law analogue, the California Consumer Credit Reporting Agencies Act ("CCRAA").[1]  Plaintiff also concedes (P1. Memo., p. 7) that her claim is based solely on alleged inaccuracies in identifying information (names, address histories).  For a communication to meet the "consumer report" definition, among other elements, the information must first "bear on" at least one of several enumerated characteristics, including credit standing or creditworthiness.  As determined by the FTC and prevailing caselaw, the identifying information upon which the SAC is based does not "bear on" an enumerated characteristic, and so is not "consumer report" information.  40 Years Experience With the Fair Credit Reporting Act -- an FTC Staff Report with Summary of Interpretations (Federal Trade Commission, July 2011), ("FTC Report"), p. 21. (available at www. ftc.gov/os/statutes/fcrajump.shtm).

This conclusion does not change simply because the identifying information is part of a report which includes information that "bears on" one of the seven characteristics (*e.g.*, criminal record, eviction history).  Plaintiff's "mingling theory" argument has been rejected by other courts and should be rejected here. Whether as a standalone report or whether it is deemed to be part of a larger report, identifying information does not "bear on" one of the seven enumerated characteristics as a matter of law.  Claims IV-VII should be dismissed.

---

[1] Plaintiff concedes (Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("Pl. Memo."), p. 1 p. 4 n.1) that there are no substantive differences between the FCRA and the CCRAA for purposes of deciding SafeRent's motion.

1   Claims VI and VII fail for the additional reason that Plaintiff does not allege

2   that a purchaser of SafeRent's "Lease Decision and Reports" used them for an

3   impermissible purpose.  To state an FCRA claim, it is insufficient merely to allege

4   the absence of a procedure -- for the consumer to recover, she must first show that

5   the absence of procedures led to a result against which the procedures were

6   designed to protect.  The SAC fails to allege that any information provided by

7   SafeRent was used for an impermissible purpose.  (Indeed, Plaintiff concedes that

8   the Identify report was used for a permissible purpose.  SAC, ¶ 13.)  Lacking this

9   allegation, Claims VI and VII fail as a matter of law for this additional reason and

10  should be dismissed.

11          As to Claims I-III, SafeRent's motion established as a matter of law that the

12  alleged verification requirements employed before turning over private, sensitive,

13  financial and criminal records were well within the range of what is advisable and

14  appropriate under the "proper identification" requirement of 15 U.S.C. § 1681h(a).

15  Plaintiff's allegations that SafeRent did not respond to her file requests should not

16  be considered as they are not connected to her Claims I through III and related class

17  allegations.  Claim I under 15 U.S.C. § 1681g(a) and Claim II, the CCRAA

18  equivalent of Claim I, are not based on use of SafeRent's form, while the class

19  alleged under Claim III is not limited to persons who failed to get a response from

20  SafeRent.  Rather, these Claims concern whether SafeRent's alleged procedures

21  were advisable and appropriate under the "proper identification" requirement of 15

22  U.S.C. § 1681h(a).  As these alleged procedures comport with the FTC's

23  "Appropriate Proof of Identity" regulations, 12 C.F.R. § 1022.123, they are

24  appropriate as a matter of law.  This Court should either dismiss Counts I through

25  III or strike the class allegations.

26

27

28

2

## II.   CLAIMS IV-VII FAIL BECAUSE THE IDENTIFICATION INFORMATION OF WHICH PLAINTIFF COMPLAINS DOES NOT "BEAR ON" ONE OF THE SEVEN CHARACTERISTICS_

The dispositive point raised in SafeRent's motion, backed by ample case authority, is as follows: the identifying information at issue here does not "bear on" one of the seven characteristics as a matter of law.

> "There are two basic elements of the [consumer report] definition. First, the information in the report must have a 'bearing on' one or more specified consumer characteristics (e.g., credit standing). Second, the report must be 'used or expected to be used … for the purpose of … establishing the consumer's eligibility' for credit, employment, insurance, or other permissible purposes allowed by the FCRA. Both elements of the definition must be satisfied in order for a report to be a consumer report …."

FTC Report, p. 20 (omission of text in original).

SafeRent's Motion focuses on the "bearing on" element.  Here, the alleged inaccuracies in Plaintiff's report -- among which were listing numerous residences where Plaintiff had never resided (SAC, ¶ 29); identifying multiple names (*id.* ¶ 30); listing possibly masculine names (*e.g.*, Alex) (*id.* ¶ 31) – do not bear on the seven characteristics.  Likewise, as alleged in the SAC and as further shown in the actual Lease Decision and Reports at issue here, the "SafeRent Identify" report includes no more than names, social security number, date of birth, address, and a date corresponding to an address (e.g., "03/2012-").  None of these identifying items, as a matter of law, bears on one of the seven characteristics. *Smith v. Waverly Partners, LLC*, No. 3:10-cv-28, 2011 U.S. Dist. LEXIS 90135, at *13 (W.D.N.C. Aug. 12, 2011); *Dotzler v. Perot*, 914 F. Supp. 328, 330 (E.D. Mo. 1996), *aff'd*, Nos. 96-2676EM, 96-2677EM, 1997 U.S. App. LEXIS 22586 (8th Cir. Aug. 26, 1997) (*per curiam*).

This conclusion is not changed by Plaintiff's attempt to recharacterize the Identify report as a section in the Lease Decision report.  SAC ¶¶ 19 and 26.

3

1    Initially, Plaintiff is clearly aware that the documents at issue are titled Lease

2  Decision and Reports and are formatted as separate reports, yet she failed to even

3  attach a copy to her original Complaint, First Amended Complaint or Second

4  Amended Complaint.  Even after CoreLogic attached a copy of the "Lease Decision

5  and Reports" as Exhibit A to both Motions to Dismiss, Plaintiff failed to even

6  acknowledge the language and structure of the actual documents.[2]  These contrary

7  allegations nonetheless do not change the conclusion that identity information does

8  not "bear on" simply because it is included in a broader report.  Plaintiff's

9  "mingling theory" has been repeatedly rejected and should likewise be rejected

10  here.

11        Consumer reports generally include a section that permits the user to identify

12  the subject of the report by possible name(s) and address(es), regardless of whether

13  the report is a typical credit report, which includes "tradeline" information

14  (consisting of accounts, such as credit card accounts) and public records (liens,

15  bankruptcies), or a background screening report, which can include, at the option of

16  the party requesting the report, criminal records and eviction history (Pl. Memo., p.

17  7).  That identifying section, in this instance, the alleged "SafeRent Identify"

18

19  [2] Even a cursory review of Exhibit A, titled the "Lease Decision & Reports,"
demonstrates that these are separate reports.  The first page is a list of the
20  "Product(s) Ordered," and under the column "Report Type," lists the "Previous
Address History" (i.e., Identify Report) separately from "Eviction History," "Multi-
21  State Criminal," and "Multi-State Sex Offender."  Additionally, each Report starts
on a different page (screen) such that the Multi-State Criminal Search Report is one
22  set of pages, while the SafeRent Identify (TM) is another set of pages.  Indeed, the
separation of these Reports is noted by different Report Disclaimers.  For example,
23  while the Multi-State Criminal Search Report states that "A PERSON MUST
24  HAVE A PERMISSIBLE PURPOSE UNDER THE FAIR CREDIT REPORTING
ACT ("FCRA") TO OBTAIN A CONSUMER REPORT," the Identity Report
25  Disclaimer states "This locator index product may be used exclusively to identify
26  potential previous names and addresses the applicant may have used and to obtain
the applicant's date of birth and verify the applicant's Social Security Number."
27

28

1   section, does not "bear on" one for the seven characteristics and so does not meet

2   the statutory definition of "consumer report."  15 U.S.C. § 1681a(d).

3        Plaintiff's caselaw (cited at pp. 5-6 of Pl. Memo.) is not to the contrary.

4   Plaintiff asserts (Pl. Memo., p. 5 n.2) that *Trans Union Corp. v. Federal Trade*

5   *Commission*, 81 F.3d 228 (D.C. Cir. 1996), "rejected the very distinction between

6   identifying information and consumer credit information that Defendant proposes."

7   There is no basis in the *Trans Union* opinion for this statement.  Instead, as

8   SafeRent pointed out in its motion to dismiss, the *Trans Union* court rejected what

9   it called the "mingling theory," 81 F.3d at 232:  namely, that "any scrap of

10  information transmitted to credit grantors as part of a credit report must necessarily

11  have been collected" for one of the three purposes listed in the definition of

12  "consumer report" (*id*. at 231-32).

13       Plaintiff's position is the "mingling theory" all over again:  that merely

14  because the (allegedly) "grossly inaccurate personal identifying information" (Pl.

15  Memo., p. 7) was "collected for inclusion in various consumer reports" it must bear

16  on creditworthiness (*id*.).  This Court, though, like *TransUnion*, and the other

17  decisions cited in the motion to dismiss, should reject the position that demographic

18  or identifying information in a report "bears on" the seven characteristics simply

19  because it is included with other information that may "bear on" creditworthiness.

20  Rather, as the definition of "consumer report" makes clear, the focus is on the

21  specific **information** at issue rather than looking to the report in its entirety.  For

22  example, had Congress intended the "mingling theory," then it would have used the

23  term "file" instead of "information."  Congress did not and instead used

24  "information."  Here, the specific identifying information at issue -- names, social

25  security number, date of birth, address, and a date corresponding to an addresses --

26  does not "bear on" an enumerated characteristic as a matter of law.

27

28

1    Plaintiff also misinterprets the holding of the FTC order that was upheld in

2    *Trans Union v. Federal Trade Commission*, 245 F.3d 809 (D.C. Cir. 2001), *cert.*

3    *denied*, 536 U.S. 915, 122 S. Ct. 2386 (2002) which Plaintiff characterizes (Pl.

4    Memo., p. 5) as a finding that "merely a list of consumer names and addresses is a

5    consumer report within the scope of FCRA."  In actuality, as later pointed out in

6    *Smith v. Waverly Partners, LLC*, No. 3:10-cv-28, 2011 U.S. Dist. LEXIS 90135, at

7    \*14-15, (W.D.N.C. Aug. 12, 2011), in distinguishing *Trans Union*, the defendant in

8    *Trans Union* "released **much more** than a person's name, addresses, and Social

9    Security Number."  *Trans Union* involved a database of consumers who satisfied

10   certain criteria:  "at least two tradelines with activity during the previous six months

11   [or] one tradeline with activity during the previous six months [and] an address

12   confirmed by an outside source."  *Trans Union*, 245 F.3d at 812.  Trans Union

13   would then sell lists of consumers in that database who satisfied further criteria

14   (*e.g.*, consumers with a mortgage and credit card) for the purpose of targeted

15   marketing.  *Id.*  The "mere" list of names and addresses in that instance was in fact

16   a list of consumers that met many pre-existing credit-related criteria bearing on the

17   seven characteristics.  The list of names was in essence a "yes" answer to all of the

18   criteria the marketer imposed in deciding to whom to offer credit.  The dicta in

19   *Trans Union*, 81 F.3d at 232, quoted by Plaintiff (Pl. Memo., p. 5 n.2), that even a

20   zip code can convey information on creditworthiness, was made in the context of

21   the assemblage of these marketing lists based on trade-line data.  In contrast,

22   "minimal" identifying information that conveys nothing more than names and prior

23   addresses does not "bear on" the seven characteristics.  *Waverly*, 2011 U.S. Dist.

24   LEXIS 90135, at \*13-14 (collecting cases).

25   　　Plaintiff's remaining cases do not address the question of whether the

26   information "bears on" the seven characteristics, but rather address the separate

27

28
                                              6

element of whether the information was used for an FCRA-related purpose.[3] *Hoke v. Retail Credit Corp.*, 521 F.2d 1079 (4th Cir. 1975), *cert. denied*, 423 U.S. 1087, 96 S. Ct. 878 (1976), which appears to involve conventional credit report information, addressed the issue of whether that report was being used for an FCRA employment purpose when it was requested in connection with determining eligibility for a license to practice medicine. *Id.* at 1080-81.  Similarly, *St. Paul Guardian Insurance Co. v. Johnson*, 884 F.2d 881 (5th Cir. 1989), concerned the question of whether the use of conventional credit report information fell under the definition of "consumer report" when an insurance company used it to investigate Plaintiff for insurance fraud. *Id.* at 882.  None of these cases change the conclusion here, namely that identifying information does not "bear on" one of the seven characteristics.

   Claims IV-VII fail as a matter of law.

**III.   CLAIMS VI AND VII FAIL FOR THE ADDITIONAL REASON THAT PLAINTIFF HAS NOT ALLEGED USE FOR AN "IMPERMISSIBLE PURPOSE"**

   Plaintiff must concede that Claims VI and VII fail to allege that the Identify report was used for an impermissible purpose, as such an allegation is mentioned nowhere in the SAC or in her opposition brief.  It is insufficient under § 1681e(a) of the FCRA (see cases collected in SafeRent's motion, p. 10 n.4) merely to prove

---

[3] Plaintiff's arguments conflate the elements of what is required for information to meet the FCRA's definition of "consumer report."  For example, Plaintiff asserts that the "[t]he Lease Decision report caused the landlord to deny Plaintiff's rental application."  Pl. Memo., p. 6.  While SafeRent understands that this was not the case, it is irrelevant to the present motion.  Whether the information was used to determine eligibility for credit is a separate and distinct element from whether the information "bears on" an enumerated characteristic.  FTC Report, p. 20. Plaintiff cannot render the "bear on" element superfluous, contrary to mandated tenets of statutory construction, *TRW Inc. v. Andrews*, 534 U.S. 19, 28-29, 122 S. Ct. 441, 447-48 (2001), by simply alleging that identity information was used to determine eligibility.

absence of a procedure -- for the consumer to recover, she must first show that the absence of procedures led to a result against which the procedures were designed to protect. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010); *Washington v. CSC Credit Servs.*, 199 F.3d 263, 266 (5th Cir.), *cert. denied*, 530 U.S. 1261, 120 S. Ct. 2718 (2000).  As such, these Claims fail as a matter of law.

Plaintiff's case citations (Pl. Memo., p. 8) are, once more, off-point.  Both *Pintos v. Pacific Creditors Association*, 605 F.3d 665 (9th Cir. 2010), *cert. denied*, __ U.S. __, 131 S. Ct. 900 (2011), and *Holman v. Experian Information Solutions, Inc.*, No. C 11-0180 CW, 2012 U.S. Dist. LEXIS 59401 (N.D. Cal. Apr. 27, 2012), involve claims of failing to maintain reasonable procedures to prevent use for an impermissible purpose, but in each case, unlike the present case, there was an allegation of use for an impermissible purpose.  An inquiry into whether SafeRent failed to "maintain reasonable procedures designed... to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title" (15 U.S.C. § 1681e(a); quoted at p. 7 of Plaintiff's Memo.) is unnecessary where it is conceded that the Lease Decision report was used for a permissible purpose under the FCRA (residential screening).  Plaintiff's allegations admit that the information was used for a permissible purpose – tenant screening.  SAC, ¶ 25 (Plaintiff specifically alleges that the report at issue was obtained "in connection with [Plaintiff's] application to lease an apartment in San Marcos, California"); Pl. Memo., p. 5 ("Tenant or residential history is a type of specialty consumer report regulated by the FCRA. *See* 15 U.S.C. § 1681(w).").  Claim VI and VII fail as a matter of law.

Finally, Plaintiff contends (Pl. Memo., p. 9) that SafeRent's position is "contradictory" where in fact SafeRent is merely arguing in the alternative. Plaintiff's § 1681e(a) claim fails, as described in the previous section, due to the fact that the alleged inaccuracies merely concern personal identification information which do not "bear on" one of the seven characteristics and not information from a

8

1   "consumer report." SafeRent's position as to this alternative basis to dismiss

2   Claims VI and VII, for purposes of this Court's inquiry under Rule 12(b)(6), is that

3   *even if* SafeRent failed to obtain from the user of that report a certification of

4   permissible purpose (indeed, it affirmatively alleges use for a permissible purpose),

5   under the caselaw there is no claim under § 1681e(a), since Plaintiff fails to allege

6   that her report was actually used for an impermissible purpose and should be

7   dismissed.

8   **IV.   PLAINTIFF HAS NOT ALLEGED A CLAIM FOR A VIOLATION
          OF FCRA AND CCRAA PROVISIONS REGARDING CONSUMERS'**

9   **REQUESTS FOR THEIR FILES (CLAIMS 1 THROUGH III)**

10          The identity verification items that Plaintiff alleges were required by

11   SafeRent were a reasonable and necessary implementation of a "proper

12   identification" requirement applicable to a request for a file under 15 U.S.C.

13   § 1681g (Claim I) and expressly permitted by 12 C.F.R. § 1022.123. *Garrison v.*

14   *Equifax Info. Servs., LLC*, No. 10-13990, 2012 U.S. Dist. LEXIS 52942 (E.D.

15   Mich. Apr. 16, 2012). A consumer reporting agency's obligation to disclose a

16   consumer's file to the consumer upon request is "subject to [§ 1681h(a)(1)]." 15

17   U.S.C. § 1681g(a).[4] Section 1681h provides that "[a] consumer reporting agency

18   shall require, as a condition of making the disclosures required under section

19   [1681g], *that the consumer furnish proper identification*." (Emphasis added). In

20   other words, because of the use of "shall," it would be a violation of the FCRA for

21   the consumer reporting agency *not* to require "proper identification." Thus,

22   Plaintiff's Claims challenging the permissibility of these alleged identification

23   items fail as a matter of law.

24          As to the October 18, 2012 request for her file alleged at ¶ 38 of the SAC,

25   Plaintiff merely alleges that, on October 18, 2012, she made a written request that

26   _____

27   [4] Plaintiff's Opposition does not dispute that the "proper identification" requirement
    applies to 15 U.S.C. §1681g(a) (Claim I) and 15 U.S.C. §1681j(a) (Claim III).

28                                        9

1  "*identified* Plaintiff by name, maiden name, address, complete social security

2  number, and complete date of birth." (Emphasis added.)  Plaintiff does *not* allege,

3  though, because she cannot, that she provided *verification* of that information, such

4  as a copy of social security card, a copy of a government-issued photo ID (*e.g.*, a

5  driver's license) or other authentication, rather than just sending a letter purporting

6  to be that person and *listing* the identifying information.

7         As recognized by *Garrison v. Equifax Information, Services,* LLC, No. 10-

8  13990, 2012 U.S. Dist. LEXIS 52942 (E.D. Mich. Apr. 16, 2012), the "proper

9  identification" requirement of 15 U.S.C. § 1681h(a) serves two purposes:

10 1) providing confidence that the consumer reporting agency has enough data points

11 (*e.g.*, name, full address, full social security number) to confirm a match between

12 the requester and one of the agency's files (12 C.F.R. § 1022.123(b)(1) (section

13 entitled "[c]onsumer file match")) and 2) proving that the requester is who he or she

14 claims to be (12 C.F.R. § 1022.123(b)(2) (section entitled "[a]dditional proof of

15 identity").  The deficiency in Plaintiff's October 18, 2012 request (SAC, ¶ 38) was

16 as to the latter aspect of identification.  A written request that "*identified* Plaintiff

17 by name, maiden name, address, complete social security number, and complete

18 date of birth" (SAC, ¶ 38) does not allege that she provided *verification* of that

19 information, such as a copy of social security card, or a copy of a government-

20 issued photo ID (*e.g.*, a driver's license).  Indeed, the case cited at page 14 of

21 Plaintiff's Opposition, *Menton v. Experian Corp.*, No. 02 Civ. 4687 (NRB), 2003

22 U.S. Dist. LEXIS 3325, at *2 (S.D.N.Y. Mar. 6, 2003), confirms this point.  In

23 *Menton*, the plaintiff provided Experian with a copy of his driver's license and a

24 copy of a bank statement, along with other information -- in other words,

25 documentary evidence to verify his identity.

26        In addition, the cases (*Garrison* and *Singletery v. Equifax Information,*

27 *Services, LLC,* No. 2:09-cv-489-TMP, 2011 U.S. Dist. Lexis 156215 (N.D. Ala.

28
                                      10

1   Sept. 21, 2011)) cited by Plaintiff (Pl. Memo., pp. 16-17) do not state that the

2   second purpose of identity verification comes into play only if the consumer

3   reporting agency cannot find a match to the consumer's information or where an

4   imposter initially guessed wrong or was misinformed as to a consumer's personal

5   identifying characteristics, such as addresses or Social Security Number.  Pl.

6   Memo., p. 17 (contrasting "ask[ing] for additional identifying information after the

7   consumers' initial contact" with requiring "substantial identifying information in

8   the original contact with SafeRent") (emphasis omitted).  Not only is there no

9   support for such an interpretation of the "proper identification" requirement in the

10  statute or the regulations, but it also would be contrary to the plain language and

11  intent of § 1681h(a)(1) to prevent disclosing potentially sensitive information about

12  Plaintiff to someone impersonating her.  Only by receiving authenticating

13  information (such as a copy of a driver's license), can the agency establish that the

14  requester is who he or she claims to be. 12 C.F.R. § 1022.123(b)(2).

15      As to Plaintiff's assertion that it is too early to rule on her allegations

16  "without any discovery having taken place" (Pl. Memo., p. 2), Plaintiff's claim is

17  that SafeRent is wedded to a "standardized" disclosure form (SAC, ¶ 44) and

18  rigidly enforces a "prescribed procedure" (Memo., p. 12).  The motion to dismiss

19  takes those allegations as true[5] and applies the law to those assumed facts regarding

20  SafeRent's procedure.  Under the statute, regulations, and caselaw, SafeRent's

21  alleged "prescribed procedure" is proper as a matter of law.[6]

22

23  [5] SafeRent's process, in reality, did not require a consumer to use the form as
    alleged in order to obtain a copy of their file, nor was the submission of all of the
24  information as asserted in the Amended Complaint for purposes of SafeRent's
    required.  Nonetheless, the factual allegations in the amended complaint are
25  assumed to be true for purposes of the motion.

26  [6] Plaintiff notes (Memo., pp. 16-17) that *Singletary* and *Garrison* were decided on
    summary judgment -- a later point than the pleading stage, of course, but the courts
27  in those cases still determined the appropriateness of the consumer reporting

28                                                          (footnote cont'd...)

                                      11

1    Lastly, in opposing the motion to dismiss the claims relating to file requests

2    Plaintiff points to her alleged compliance with the alleged procedure and

3    SafeRent's alleged failure to respond to her request.  None of these allegations

4    make it into the Claims actually pled in the SAC and which form the basis for her

5    putative class claims.  To the extent Plaintiff's individual claim survives only

6    because of allegations that SafeRent failed to respond to her requests, the class

7    allegations should nevertheless be dismissed or stricken.  As SafeRent explained in

8    its motion, there is a disconnect between Plaintiff's individual allegations and those

9    that pertain to the classes she seeks to represent.  The class claims in Claims for

10   Relief I through III challenge SafeRent's system for allegedly "requiring consumers

11   to expend time, effort, and money in order to obtain their files."  (SAC, ¶¶ 78, 84,

12   87).  The claims are premised only on how "complicated" (*id*.) SafeRent's system

13   is.  Neither of the class definitions requires putative class members both to have

14   used SafeRent's form and to have failed to receive a response.  *Id*. ¶¶ 64-65.

15   Plaintiff asserts weakly (Pl. Memo., p. 22) that it is premature to strike class

16   allegations, but there is no such requirement that the Court let wasteful, pointless

17   discovery take place and wait for a class certification motion, when the allegations

18   make clear that a class action has not been adequately pled.  *Pilgrim v. Universal*

19   *Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *Route v. Mead Johnson*

20   *Nutrition Co.*, No. CV 12-7350-GW(JEMx), 2013 U.S. Dist. LEXIS 35069, at *22-

21   23 (C.D. Cal. Feb. 21, 2013) (following *Pilgrim* in noting that class action

22   allegations can be stricken at the motion to dismiss stage before a motion for class

23   certification has been filed).  In fact, one of the cases cited by Plaintiff (Pl. Memo.,

24   p. 22), *Sutcliffe v. Wells Fargo Bank, N.A.*, No. C-11-06595 JCS, 2012 U.S. Dist.

25

26   (…cont'd)

27   agencies' verification requirements as a matter of law, based on the same type of
     facts alleged in the SAC here.

28

12

LEXIS 145437, at *13 (N.D. Cal. Oct. 9, 2012), acknowledges that "where it is apparent from the pleadings that a class cannot be maintained, district courts may strike class allegations prior to discovery."

## V.   CONCLUSION

This Court should dismiss Plaintiff's claims for inaccuracy (Claims IV and V) and for failure to maintain procedures to ensure that a report is used for a permissible purpose (Claims VI and VII) because Plaintiff cannot show that the allegedly inaccurate identifying information provided on her constitutes a "consumer report."  In addition, Claims VI and VII should be dismissed for the separate and independent reason that Plaintiff has not alleged, as the caselaw requires, that her report was actually used for a purpose not permitted by the FCRA.

Claims I through III should be dismissed because the alleged identity verification procedures that SafeRent allegedly required of requesters before SafeRent turned over sensitive information in a consumer's file were well within procedures approved in the caselaw and regulations for meeting the FCRA's "proper identification" requirement (15 U.S.C. § 1681h(a)).

Dated:  October 7, 2013                     FARUKI IRELAND & COX PLL

By: /s/ Ronald I. Raether
          Ronald I. Raether

Attorneys for Defendant
CoreLogic SafeRent, LLC

768055.1

13