UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING; COURTROOM 10D

---

**CERTIFIED TRANSCRIPT**

| | |
|---|---|
| Susan E Moreland, et al., | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| vs. | ) No. SACV 13-0470-AG(ANx) |
| | ) |
| CoreLogic, Inc., | ) |
| | ) |
| Defendant(s). | ) |

REPORTER'S DAILY TRANSCRIPT OF PRETRIAL PROCEEDINGS
SANTA ANA, CALIFORNIA
MONDAY, OCTOBER 21, 2013

DENISE PADDOCK
COURT REPORTER

## A P P E A R A N C E S

102113 DCCD GUILFORD 10 MORELAND
SACV 13-0470-AG(ANx)


**IN BEHALF OF THE PLAINTIFF:**

    **Michael A Caddell**
    Caddell and Chapman
    1331 Lamar, Suite 1070
    Houston, TX 77010-3027
    713-751-0400
    Fax: 713-751-0906
    Email(s): mac@caddellchapman.com

**IN BEHALF OF THE DEFENDANT:**

    **Ronald I Raether, Jr.**
    Faruki Ireland and Cox, PLL
    500 Courthouse Plaza
    SW 10 North Ludlow Street
    Dayton, OH 45402
    937-227-3733
    Fax: 937-227-3717
    Email(s): rraether@ficlaw.com

```
 1              SANTA ANA, CALIFORNIA; MONDAY, OCTOBER 21, 2013
 2              THE CLERK:  Item 16, SACV 13-0470-AG(ANx):
 3     SUSAN E MORELAND, ET AL. v. CORELOGIC, INC.
 4              MR. RAETHER:  Good morning, Your Honor.
 5              Ron Raether for Defendant Corelogic SafeRent.
 6              THE COURT:  Wait a minute.
 7              Ron Raether?
 8              MR. RAETHER:  Yes, Your Honor.
 9              THE COURT:  What happened to Nancy Thomas?
10              MR. RAETHER:  Nancy's not here today.
11              She, unfortunately, had personal commitments that
12     required her to be somewhere else.
13              THE COURT:  All right.
14              And for the plaintiff.
15              MR. CADDELL:  Mike Caddell, Your Honor, for
16     Susan Moreland and the class.
17              THE COURT:  All right.
18              Hello, Mr. Caddell.
19              You know, I usually have the losing party speak
20     first.
21              So you've read the tentative.
22              Let me ask you, who wants to volunteer to be the
23     biggest loser under the tentative by being the first to
24     speak?
25              (Laughter.)
```

```
 1              THE COURT:  Actually, it was a very close call, to
 2     be honest.
 3              I could say, well, this was a real important claim
 4     and Defendant lost.
 5              I have Defendant losing 1 through 4 and Plaintiff
 6     losing 5 and 6.
 7              I guess we'll just count them up.
 8              And on that basis --
 9              MR. RAETHER:  I'll go first.
10              THE COURT:  -- 4-2, without commenting on which
11     claims are most important, you can go first, and you're not
12     acknowledging that you're the overall loser.
13              Go ahead.
14              MR. RAETHER:  Thank you, Your Honor.
15              If I just may get a glass of water real fast?
16              THE COURT:  Sure.  That's what it's there for.
17              I hope we filled it up this morning.
18              THE CLERK:  Always.
19              THE COURT:  "Always."
20              Thank you, Ms. Bredahl.
21              THE CLERK:  Externs.
22              THE COURT:  Yes.
23         (Pause in the proceedings.)
24              MR. RAETHER:  Thank you, Your Honor.
25              In terms of the tentative ruling, Your Honor, I
```

1   really do want to focus on, as you mentioned, the claims
2   that -- where you ruled against my client; and I would say,
3   Your Honor, that oftentimes Mike and I, Mr. Caddell and his
4   team, and Nancy -- Ms. Thomas and Mr. McCabe and our team, we
5   face off against each other quite frequently under the
6   Fair Credit Reporting Act; and sometimes we're accused of
7   doing too much "inside baseball" in terms of how we explain
8   the law and deal with some of the legal issues that arise,
9   and, frankly, Your Honor, a statute that is not very clear
10  and oftentimes is ambiguous and difficult to deal with.
11         And, Your Honor, I want to commend you for being
12  able to discern the different elements, in terms of the
13  "consumer report" definition.
14         So I'm going to start talking about Claims 4 and 6;
15  and, specifically, the three elements that deal with the
16  definition of "consumer report."
17         And as Your Honor recognized, our motion only deals
18  with one of those three, and that's the "bear on" element.
19         I will say also, Your Honor, as I mentioned at the
20  outset, it is difficult to read this statute and fully
21  appreciate the meaning of all the terms and -- and how
22  they're used in the context of the overall breadth of the
23  statute --
24         THE COURT: Bears on.
25         MR. RAETHER: Bear on.

Case 8:13-cv-00470-AG-AN Document 54 Filed 02/21/14 Page 6 of 18 Page ID #:535
102113 DCCD GUILFORD 10 MORELAND SACV 13-0470-AG(ANx)

Page 4 of 16

```
 1          THE COURT:  Uh-huh.
 2          MR. RAETHER:  -- and then the list of the seven
 3  characteristics and seven factors, and trying to keep that
 4  separate from the eligibility element from the
 5  "consumer report" definition.
 6          What I will say, Your Honor, is that for 20-plus
 7  years, through guidance from the FTC the couple of decisions
 8  that we were able to provide to you, that the industry, as
 9  well as the regulators, have looked at the type of
10  information here and determined that those elements of
11  personal information do not bear on the seven factors, the
12  seven characteristics, in the definition.
13          I have -- I think that we've cited those out to
14  you, Your Honor; but just to summarize those, it -- it
15  started in 1990 when the FTC issued a commentary on Part 600.
16          And, Your Honor, Part 600 would be the regulations
17  issued by the FTC that provide further clarity in terms of
18  what is meant in the Fair Credit Reporting Act.
19          That was, I would say, a position, Your Honor, that
20  name and address, and that a reporter -- a list with name and
21  address does not bear on.  It doesn't have any connotation to
22  credit worthiness or other characters, and so it does not
23  bear on the seven factors.
24          THE COURT:  Address doesn't bear on credit
25  worthiness?
```

Case 8:13-cv-00470-AG-AN Document 54 Filed 02/21/14 Page 7 of 18 Page ID #:536
102113 DCCD GUILFORD 10 MORELAND SACV 13-0470-AG(ANx)

Page 5 of 16

```
 1            MR. RAETHER:  I'm sorry, Your Honor?
 2            THE COURT:  Address doesn't bear on credit
 3    worthiness?
 4            MR. RAETHER:  I don't believe it does, Your Honor.
 5            THE COURT:  And what about all the redlining
 6    controversy?
 7            MR. RAETHER:  The redlining controversy,
 8    Your Honor?  I'm not sure on that.
 9            THE COURT:  Okay.
10            Some lenders like to lend to certain ZIP codes and
11    not others.
12            MR. RAETHER:  I think that it is in certain
13    instances, in terms of marketing lists; but I don't believe
14    that that's the sole factor, Your Honor, that's used in
15    determining whether --
16            THE COURT:  It didn't say "solely bears on."
17            It says "bear on."
18            MR. RAETHER:  Right, Your Honor.
19            But I think that when you look at the FTC, when you
20    look at the 20 years of conduct within the industry, the
21    concept, really, is to focus the attention of the regulatory
22    authorities to give certainty to the businesses, that there
23    are certain elements of information that aren't going to
24    be -- have any import, in terms of making credit worthiness
25    decisions or other like decisions; and, frankly, that's what
```

```
 1    we were arguing in terms of our papers.
 2              It's this reliance on being able to realize that no
 3    one, based on address alone, is going to make an -- an
 4    eligibility determination.
 5              THE COURT:  Is the "bearing on" requirement very
 6    demanding?
 7              MR. RAETHER:  It's not -- it's not demanding,
 8    Your Honor, but it does have to be --
 9              THE COURT:  Do you see circuits that say it's not
10    very demanding?
11              MR. RAETHER:  And I wouldn't disagree with that;
12    but I think that, also, the intent is to have it have --
13    because it is a separate element, Your Honor, it has to have
14    some substance.
15              And so what we -- what's happened in the course of
16    the last 20 years is the substance that's been given to that
17    "bear on" element is to help provide these clearer lines, in
18    terms of when you are providing certain types of information,
19    you'll know that it doesn't fall within the definition of
20    "consumer report," and it's the type of information that is
21    at the heart of the allegations in this case.
22              It's name, address, phone number, Social Security
23    number.  Those elements, in and of themselves, no one is
24    going to make an eligibility decision based on those; and I
25    think that's sort of why some of the courts have blurred the
```

Case 8:13-cv-00470-AG-AN Document 54 Filed 02/21/14 Page 9 of 18 Page ID #:538
102113 DCCD GUILFORD 10 MORELAND SACV 13-0470-AG(ANx)

Page 7 of 16

```
                1   elements between "bear on" and "eligibility," but, frankly,
                2   it's a consequence of wanting to give that element some
                3   value, some substance and, frankly, also to provide some
                4   guidance to the industry and the regulators in terms of the
         11:23  5   last 20 years.
                6           THE COURT:  What's your last case that "bear on"
                7   doesn't go to "address"?
                8           MR. RAETHER:  Well, you know, I think that the
                9   TU/FTC case provides some guidance in that respect,
         11:23 10   Your Honor.
               11           If -- if you're looking at that case, you're
               12   talking about marketing lists; and the marketing lists that
               13   were provided to the end-users were name and address and
               14   identifying information.
         11:24 15           The distinguishing factor there, however,
               16   Your Honor, was that those lists were compiled based on
               17   eligibility criteria -- so, for example, have I opened two
               18   credit cards?  Have I -- do I have a mortgage? -- types of
               19   information that clearly "bear on" the seven factors; and it
         11:24 20   was because that those names and addresses were associated
               21   with a mode of living -- for example, you know, I have opened
               22   up two credit cards -- that was what made, in that instance,
               23   the personal identifiers "bear on" seven characteristics.
               24           We don't have an allegation in this case,
         11:24 25   Your Honor, that the names and addresses that were included
```

```
 1   on the Identify report have any bearing on or any relation to
 2   those credit eligibility type of factors.
 3           THE COURT:  I understand.
 4           Anything further?
 5           MR. RAETHER:  Not on that point, Your Honor.
 6           On the -- like, I guess -- Claims 1 through 3 on
 7   the file request, what I would ask Your Honor to do is, I
 8   guess, two things.
 9           First of all, we cited to 16 CFR 614, which is the
10   regulation put out by the FTC relative to what I think is the
11   FCRA section applicable here -- that's Section 1681(h) -- and
12   what 1681(h) does is imposes on the consumer reporting agency
13   an obligation to verify the identity of the person making the
14   inquiry.
15           If you look at that language, Your Honor, and you
16   compare it against the allegations in the complaint with
17   respect to what CoreLogic SafeRent required, you'll find that
18   that language parallels, almost word or word, in terms of the
19   general process and procedure.
20           The other point I would make, Your Honor -- and I
21   think we did this in our briefing -- is that there is a
22   disconnect, I believe, in the complaint between what
23   Plaintiff is alleging are her individual experiences with my
24   client, in comparison to what she alleged in the substantive
25   part of her complaint that she was actually alleging to be
```

1  the violation and, I think, just as important, the class
2  definitions that the plaintiff was proposing or has proposed
3  in her complaint.
4      If you look at the class definition for the
5  1681(g), which is -- I guess I can request a copy of my
6  file -- what you'll see there, Your Honor, is she doesn't
7  allege that she provided sufficient identifying information
8  in that class allegation.
9      What she alleges is that anyone who submitted
10 information, anybody who made a request for their consumer
11 files which was received by Defendant and who were not
12 provided with their consumer files.
13     So she doesn't allege that they provided any
14 sufficient -- any identifying information, let alone
15 sufficient identifying information, to meet the requirements
16 of 1681(h).
17     With regard to the class definition that
18 parallels -- that goes along with the 1681(j) claim, which is
19 "I want a free copy of my file once a year," the class
20 definition says, again, that the (reading) person made a
21 request using a Defendant's consumer disclosure request form;
22 but the class definition doesn't mention anything about
23 whether or not SafeRent provided them a copy of that, a copy
24 of their file, in response to that request.
25     It's just simply a class allegation that says, if

Case 8:13-cv-00470-AG-AN   Document 54   Filed 02/21/14   Page 12 of 18   Page ID #:541
102113 DCCD GUILFORD 10 MORELAND SACV 13-0470-AG(ANx)

Page 10 of 16

```
 1      you use Defendant's form, then there must be a violation of
 2      1681(j), which in turn means that SafeRent didn't have the
 3      right to under -- or the obligation under 1681(h) to make
 4      sure that they were dealing with the proper inquire before
 5      they provided a copy of that report.
 6              Your Honor, the -- the only two things that I would
 7      say is that I am, again, impressed by Your Honor's ability to
 8      keep the three elements of consumer reports separate.
 9              On the eligibility issue, it is our intent to file
10      a motion for summary judgment on that issue; and, likewise, I
11      raise the issue of the discrepancy between the plaintiffs'
12      individual allegations and the class definitions.
13              We're prepared to oppose class certification with
14      respect to -- on those grounds as well.
15              THE COURT:  Thank you for that cogent argument.
16              We turn to Mr. Caddell.
17              MR. CADDELL:  Yes, Your Honor.
18              Briefly, Your Honor, I think that submitting a name
19      and an address to simply identify someone may or may not be a
20      "credit report"; but submitting page after page of a name,
21      address, aliases and apartments and length of residency does,
22      in fact, bear on "mode of living."
23              It bears on -- and it certainly -- and in this
24      case -- it did, in fact, influence the decision not to rent,
25      as it would anyway.
```

Case 8:13-cv-00470-AG-AN Document 54 Filed 02/21/14 Page 13 of 18 Page ID #:542
102113 DCCD GUILFORD 10 MORELAND SACV 13-0470-AG(ANx)

Page 11 of 16

```
 1              THE COURT:  Hold on.
 2              I'm just trying to think back.
 3              MR. CADDELL:  Yes, sir.
 4              THE COURT:  I was going to go there.
 5              It did bear on the decision.
 6              MR. CADDELL:  Yes.
 7              THE COURT:  Is that alleged in your complaint or
 8  points and authorities?
 9              MR. CADDELL:  I believe it is alleged in the
10  complaint.
11              THE COURT:  Go ahead.
12              MR. CADDELL:  I do think we are at a motion to
13  dismiss stage.
14              I think this is a -- as pled, I think this is a --
15  we meet the hurdle at this point.
16              We look forward to addressing the summary judgment
17  issue.
18              As to the requirement for the procedures, I would
19  point out to the court that the procedures -- reasonable
20  procedures is an evolving standard, as it would be in any
21  situation where you say "reasonable."
22              It's not a static determination.
23              And so the fact that today many CRAs or most, in
24  fact, allow this to be done by telephone or by e-mail, it
25  can, I think, affect the determination of what is "reasonable."
```

```
 1              And so I think the -- again, at the motion to
 2    dismiss stage, we should prevail on that, as the court noted
 3    in its tentative.
 4              I'd like to turn briefly to the -- and then other
 5    than that we will stand or submit on the tentative, but with
 6    one caveat.  I'd like to address 1681(e)(a), which is the
 7    certification issue.
 8              And I think -- and I understand the appeal of the
 9    argument; and the Washington v. CSC court, in the fifth
10    circuit, bought that argument.
11              That's the fifth circuit's opinion, of course, so
12    it's not binding precedent on this court.
13              I'm aware of no other opinion at that level.
14              The Carvalho opinion that's cited by the defendant,
15    actually, is on the reasonable procedures to assure maximum
16    possible accuracy.
17              It is not dealing with the 1681(e)(a) claim.
18              I think the fault, however -- and I -- I ask the
19    court to consider this -- is that the analogy is not a
20    complete analogy.
21              The difference between the two is this -- and
22    there's several differences, actually -- if you have no
23    inaccuracy, then there can be no harm, now or ever.
24              Unless there's inaccuracy, there can be no harm.
25              So requiring a determination that there be
```

1    inaccuracy before you go down the road of looking at the
2    defendant's procedures to determine if they are reasonable to
3    ensure maximum possible accuracy makes sense, because
4    otherwise you are engaging in a speculative enterprise, at
5    best.
6         Second, the fact that there is inaccuracy is some
7    evidence -- not conclusive -- not binding -- but it is, in
8    fact, some evidence that the defendant's procedures may not
9    be reasonable to ensure maximum possible accuracy.
10        Now let's contrast that with 1681(e)(a).
11        "(e)(a)" has a different purpose.
12        "(e)(a)" has both a prophylactic aspect to it and
13   it has the -- a damages or an actual damages purpose.
14        By requiring proof of an impermissible purpose, the
15   prophylactic purpose of 1681(e)(a) is gutted.
16        "1681" requires a certification by the user that
17   the report will be used only for the permissible purpose and
18   for none other.
19        If you -- and there -- there are two aspects to that.
20        One is it puts the -- the user on notice that that
21   is required under the law and that they're limited in their
22   use of that report.
23        Without 1680(e)(a), without this certification, the
24   user is never placed on notice, and the user never makes a
25   commitment to keep that report limited to the

```
 1          permissible purpose.
 2                  In this case CoreLogic requires no such
 3          certification and, indeed, there gets no commitment from a
 4          end-user.
 5                  So I think that -- that the second the distinction,
 6          again, between that situation and the reasonable procedures
 7          to ensure maximum possible accuracy, the -- you don't need to
 8          know if there has been an impermissible purpose to know
 9          whether the statute's been violated or not.
10                  It doesn't play.
11                  It's not part of the analysis.
12                  While the fact that there is an inaccuracy does
13          play a role in your analysis of whether they're using
14          reasonable procedures to ensure maximum possible accuracy,
15          you don't need to know if someone's actually had an
16          impermissible purpose use of a report to know that they've
17          violated the statute, because they violated the statute when
18          they failed to obtain the certification and they failed to
19          get that commitment from the end-user.
20                  And so, one, you can never have future harm,
21          because on the one there's no inaccuracy.
22                  On the other hand, there could be future harm
23          ongoing without our knowing of it yet; because of the fact
24          that the certification was not obtained, the user was not
25          placed on notice and the user didn't make that commitment.
```

```
 1              The pernicious nature of credit reports is that
 2    when they're not used properly or they're not given the
 3    benefits of the Fair Credit Reporting Act people don't even
 4    know that they've been harmed.
 5              They don't know that there has been an
 6    impermissible use.
 7              THE COURT:  I understand the purpose, so you're
 8    wrapping up.  Good.
 9              MR. CADDELL:  Thank you, Your Honor.
10              I appreciate it, Your Honor.
11              THE COURT:  I want to give you two minutes, if you
12    want to say anything to close.
13              MR. RAETHER:  Just two quick points, Your Honor.
14              I think that even in the context of 1681(e)(a),
15    that having the report used for an impermissible purpose,
16    obviously you don't have a context in which to evaluate
17    whether reasonable procedures were in place or not.
18              I think secondly, Your Honor, in terms of the
19    positions that Mr. Caddell was explaining, in terms of how
20    the system works -- and, in fact, what he was explaining to
21    you was not consistent with what was alleged in the
22    complaint.
23              In fact, what was alleged in the complaint is they
24    want -- you know, they want the benefit of saying that
25    SafeRent Identify report is a consumer report, but at the
```

Case 8:13-cv-00470-AG-AN  Document 54  Filed 02/21/14  Page 18 of 18  Page ID #:547
102113 DCCD GUILFORD 10 MORELAND SACV 13-0470-AG(ANx)

Page 16 of 16

```
 1    same time saying that procedures weren't in place.
 2             And I think with respect to this particular issue,
 3    Your Honor, the complaint, the facts alleged, don't really
 4    comport with the facts in the area that Mr. Caddell was
 5    explaining to Your Honor.
 6             THE COURT:  Okay.
 7             I think I have sufficient information.
 8             I'm going to look over the order.
 9             I'm going to take it under submission and issue the
10    order very quickly.
11             Thank you for your good arguments.
12             MR. CADDELL:  Thank you, Your Honor.
13        (End of proceedings.)
14                              ***
15                           Certificate
16             I hereby certify that the foregoing is a true and
17    correct transcript of the stenographically recorded
18    proceedings in the above matter.
19             Fees charged for this transcript, less any circuit
20    fee reduction and/or deposit, are in conformance with the
21    regulations of the judicial conference of the United States.
22
23                         /s/            DENISE PADDOCK
                           CMRS, RMR, CRR, CSR 10199
24
25
```