Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
Craig C. Marchiando (SBN 283829)
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX  77010
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906

Leonard A. Bennett (*pro hac vice*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1A
Newport News VA 23606
Telephone:  (757) 930-3660
Facsimile:  (757) 930-3662

James A. Francis (*pro hac vice*)
 jfrancis@consumerlawfirm.com
John Soumilas (*pro hac vice*)
David A. Searles (*pro hac vice*)
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia PA 19110
Telephone:  (215) 735-8600
Facsimile:  (215) 940-8000

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| SUSAN E. MORELAND, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CORELOGIC SAFERENT LLC,<br><br>**Defendant.** | No.: SACV13-00470 AG (ANx)<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CLAIMS V AND VI OF PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Hon. Andrew J. Guilford<br><br>Date:  April 28, 2014<br>Time:  10:00 a.m.<br>Courtroom: 10D |

# EXHIBIT 1

Confidential Testimony/Attorneys' Eyes Only
Moreland, Susan E. v. Corelogic Saferent, LLC                                    Raul Ramos

Page 1

UNITED STATES DISTRICT COURT

FOR THE

CENTRAL DISTRICT OF CALIFORNIA

SUSAN E. MORELAND,            )
                              )
        Plaintiff,            )
                              )
    vs.                       ) No. SACV 13-00470
                              )
CORELOGIC SAFERENT, LLC       )
                              )
        Defendant.            )
_____)

VIDEOTAPED DEPOSITION OF RAUL RAMOS

December 6, 2013

Reported by: Nichole R. Miller, CSR No. 11712, RPR

Confidential Testimony/Attorneys' Eyes Only
Moreland, Susan E. v. Corelogic Saferent, LLC                                    Raul Ramos

Page 71

```
 1     A.   That's correct.
 2     Q.   And then below, it says, "If yes to any of
 3  the above, please indicate the date of occurrence &
 4  briefly explain."  Do you see that?
 5     A.   Correct.
 6     Q.   And Ms. Moreland, did she do that?
 7     A.   I believe I had a conversation with her, and
 8  she may have explained her situation to me in more
 9  detail, but I don't recall the contents of that.
10     Q.   So you don't remember what she told you were
11  the circumstances that caused her to file bankruptcy?
12     A.   That's correct.
13     Q.   You can't recall?
14     A.   No.
15     Q.   The fact that she indicated "yes" to having
16  filed a petition for bankruptcy, would that require
17  you to do any further investigation other than
18  talking with Ms. Moreland?
19     A.   I checked with her credit report and
20  background just to cross-reference the information.
21  That was about it.
22     Q.   Were there any issues raised by
23  cross-referencing the credit report that caused you
24  to believe you shouldn't rent to Ms. Moreland?
25     A.   It just confirmed what she stated here.  It
```

Page 88

1   about what they said in terms of her financial
2   history?
3       A.   Just making sure that my -- what I do
4   remember is it's kind of telling me that -- just to
5   know that, you know, we put this in the application,
6   that she had had the prior bankruptcy, and that we
7   might -- that I might see this information when I run
8   her report, and that they want to just be up front
9   about it.  And I believe I responded with, you know,
10  I appreciate you sharing that, and I will consider,
11  you know -- and that I will consider that in my
12  evaluation of their application.
13      Q.   And nothing -- no discussion that you can
14  remember as to what caused her to go into bankruptcy?
15      A.   I don't recall all the details that we
16  talked about in terms of that.
17      Q.   Do you remember generally what you talked
18  about?
19      A.   I don't.  It's been such a long time ago.
20      Q.   Was there anything else in Exhibit 4 that
21  you can recall, you know, rising to your attention
22  when you reviewed it in terms of considering
23  Ms. Moreland's application?
24      A.   I remember looking at her employment
25  information that was listed here.

Page 89

```
 1     Q.   So you're on page Ramos 42?
 2     A.   42.  And I remember asking her specifically,
 3  you know, whether or not the identification
 4  information was correct, because I believe I was
 5  cross-referencing the background check where I saw
 6  some inconsistencies.
 7     Q.   And what did she say?
 8     A.   I don't remember all the discussion that
 9  happened.
10     Q.   Do you remember how that discussion was
11  resolved?
12     A.   To my satisfaction, from what I recall, she
13  responded that she was not those people and that she
14  was really alarmed by the fact that somebody might
15  have her identity.  And, you know, I think that she
16  was going to pursue that further to find out why.
17     Q.   So she was concerned about identity theft?
18     A.   Potentially, or, you know, that somebody,
19  you know, might be using her identity in some way.
20  I'm kind of speculating.  I don't know.
21     Q.   But it was resolved to your satisfaction?
22     A.   Yeah, I definitely came to the conclusion
23  that that probably was not her and it's just really
24  unusual.  I have never seen an application that had
25  that problem before, so --
```

Page 120

```
 1      A.    Yes, it appears so.
 2      Q.    And did you give a copy of Exhibit 10 to
 3  Mr. Haining and Ms. Moreland?
 4      A.    I believe so.
 5      Q.    And earlier you testified about the series
 6  of products that you purchased.  I think -- did you
 7  mention RegistryCHECK?
 8      A.    I believe so.  There were four products that
 9  I was referencing.  Yeah, registry, criminal check,
10  and SafeRent, and then it is listed as "AppALERT"
11  here, which is different than what is showing up
12  here.
13      Q.    And which document are you referring to?
14      A.    7, Ramos 44, Basic 2, and it lists the four
15  products.
16      Q.    What did you understand was RegistryCHECK?
17      A.    Honestly, I don't recall all the different
18  services and what exactly they did.  I would have to
19  reevaluate them, but I can just make some assumptions
20  based off of the name.
21      Q.    What I'm really interested in is what your
22  thinking was at the time that you reviewed Exhibit 10
23  in the context of your evaluation of the application?
24      A.    Basically, like, address and identification
25  information, criminal information, past residences.
```

Page 143

1  the information in her report, and I also vaguely
2  just remember her expression, that she was really
3  surprised, and she seemed very concerned about the
4  fact that this had -- this information was showing up
5  about her.
6       Q.   **Was that a face-to-face discussion, or was**
7  **it over the phone?**
8       A.   It was face to face, yeah.
9       Q.   **Was that at the residence, the 808 Loma**
10 **Alta?**
11      A.   Correct.
12      Q.   **But it was all during part of the**
13 **application process?**
14      A.   I don't remember the time frame,
15 unfortunately.  But I remember meeting with her, and
16 potentially John being there as well, but I don't
17 remember exactly if he was there or not.  And I
18 remember providing her with that information.
19      Q.   **Okay.  And when you brought the**
20 **inconsistencies to her attention, what were the**
21 **concerns that you expressed to her, your concerns?**
22      A.   That her information was inconsistent with
23 the information in her application in terms of her
24 name here, that there is basically Susan versus a
25 completely different name.

Confidential Testimony/Attorneys' Eyes Only
Moreland, Susan E. v. Corelogic Saferent, LLC                                    Raul Ramos

Page 144

1     Q.    And why was that a concern of yours?

2     A.    Because I wanted to be able to identify her
3 appropriately to consider her as an applicant for the
4 property.

5     Q.    **Why is identifying her appropriately**
6 **important?**

7     A.    Because the information that she is
8 providing me needs to be factual in order for me to
9 make an appropriate decision as to whether or not she
10 qualifies as a tenant.

11     Q.    **And so if the information is inaccurate or**
12 **not factual, the information she provides you, that**
13 **would disqualify her as an applicant for a tenant,**
14 **right?**

15     A.    Potentially.

16     Q.    **Does that disqualify Ms. Moreland?**

17     A.    No.

18     Q.    **Was that because Ms. Moreland was a**
19 **co-tenant with Mr. Haining?**

20     A.    It didn't disqualify her because of the fact
21 that she was able to provide identification that
22 showed that she was who she said she was on the
23 application.

24     Q.    **What was that identification that she**
25 **provided?**