# EXHIBIT 10



# Compressed Transcript of the Testimony of
# **RIZWAN ALAM, 4/23/14**

**Case:** Moreland v. Corelogic Saferent, LLC

Summit Court Reporting, Inc.
Phone: 215.985.2400
Fax: 215.985.2420
Email: depo@summitreporting.com
Internet: www.summitreporting.com

Page 1

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SUSAN E. MORELAND,
          Plaintiff,    Case No.:
               SACV13-00470 AG (ANx)
          vs.

CORELOGIC SAFERENT, LLC,
          Defendant.
_____

CONFIDENTIAL TRANSCRIPT
     The deposition of RIZWAN ALAM was held on
Wednesday, April 23, 2014, commencing at 12:15 p.m., at the
Offices of Morrison & Foerster, located at 1650 Tysons
Boulevard, Suite 400, Mclean, Virginia, 22102, before
Veronica M. Mackin, Notary Public.


          - - -


SUMMIT COURT REPORTING, INC.
Certified Court Reporters and Videographers
1500 Walnut Street, Suite 1610
Philadelphia, Pennsylvania 19102
424 Fleming Pike, Hammonton, New jersey 08037
(215) 985-2400*(609)567-3315*(800)447-8648
www.summitreporting.com

---

Page 3

1          I N D E X
2
3   WITNESS
4   RIZWAN ALAM                    PAGE
5     By: Mr. Francis          4
6
7
8          E X H I B I T S
9
10   Number:                Marked
11   Exhibit 1   Amended Notice of Deposition   39
12   Exhibit 2   Document Bates MORELAND 000001   47
13   Exhibit 3   Defendant's Responses   59
14
15
16
17
18
19
20
21
22
23
24
25

---

Page 2

1   APPEARANCES:
2
3       Francis & Mailman, P.C.
4       BY:  JAMES A. FRANCIS, ESQUIRE
5       AND LAUREN BRENNAN, ESQUIRE
6       Land Title Building - 19th Floor
7       100 South Broad Street
8       Philadelphia, PA 19110
9       (215) 735-8600
10      Email: jfrancis@consumerlawfirm.com
11          lbrennan@consumerlawfirm.com
12      REPRESENTING THE PLAINTIFF
13
14      Faruki, Ireland & Cox, PLL
15      BY:  RONALD I. RAETHER, JR., ESQUIRE
16      AND CHRISTOPHER T. HERMAN, ESQUIRE
17      500 COURTHOUSE PLAZA, S.W.
18      10 North Ludlow Street
19      Dayton, Ohio 45402
20      (937)-227-3733
21      Email:  rraether@ficlaw.com
22          cherman@ficlaw.com
23      REPRESENTING THE DEFENDANT
24
25

---

Page 4

1          RIZWAN ALAM, having been duly
2          sworn/affirmed, was examined as follows:
3
4          EXAMINATION
5          - - -
6   EXAMINATION BY MR. FRANCIS:
7          MR. FRANCIS:  Yes.  Just one note for the
8   record that the witness is appearing here today not in his
9   own personal-named capacity, but rather has been produced
10  as a Rule 30(b)(6) witness pursuant to a Notice of
11  Deposition, which the plaintiff's counsel served upon the
12  defendant and he has been produced in that regard, he has
13  not been noticed individually, correct?
14          MR. RAETHER:  With respect to topic 1, that's
15  correct.
16          MR. FRANCIS:  Okay.  So, to be clear, with
17  regard to the Notice of Deposition that was served on
18  April 16, 2014, the witness is being designated to speak
19  regarding topic number 1.
20          So, with that, I'll proceed forward.
21          EXAMINATION BY MR. FRANCIS:
22  Q     Sir, would you please state and spell your
23  full name for the record?
24  A     Rizwan Alam, R-I-Z-W-A-N, A-L-A-M.
25  Q     Mr. Alam, my name is Jim Francis.  We met just

**Moreland v. Corelogic Saferent, LLC**                                    **RIZWAN ALAM, 4/23/14**

Page 5

1  a few moments ago. I'm an attorney and I represent the
2  plaintiff in this case that has been brought against
3  CoreLogic SafeRent. Today, I'm going to be taking your
4  deposition as a representative of the defendant in this
5  case. Okay.
6          Have you ever given a deposition before?
7      A   Yes.
8      Q   Okay. On how many different occasions have
9  you given a deposition?
10     A   One.
11     Q   One.
12         Can you tell me generally what type of a case
13  that was or what context was that deposition given in?
14     A   It was regarding some landlord/tenant data and
15  my role was to explain how we provide that landlord/tenant
16  data to our customers.
17     Q   Okay. Are you saying that you were testifying
18  in that case like you are today on behalf of the company?
19     A   That's true.
20     Q   Okay. And can you just mention what company
21  you were testifying for?
22     A   CoreLogic.
23     Q   CoreLogic, okay.
24         And when was that deposition?
25     A   It was six, seven years ago and I don't

Page 6

1  remember much detail because my deposition was only for
2  half an hour so it's a long time.
3      Q   Okay. Since you have not given a deposition
4  in six or seven years and I don't even know what the
5  lawyer who took your deposition instructed you about
6  regarding the deposition process, I'm going to give you
7  some instructions and guidelines as to how the deposition
8  process goes. Okay.
9          I'm going to be asking you questions today,
10  okay. You are to answer those questions to the best of
11  your ability. If I ask you a question and you don't
12  understand my question, please let me know and I'll be
13  happy to rephrase it in a way that's understandable to
14  you; otherwise, I will assume that you are answering my
15  question to the best of your ability.
16         Do you understand that?
17     A   Yes.
18     Q   Okay. If at any time during the deposition,
19  you believe that you made an error in testimony, you said
20  the wrong thing, what you said wasn't truthful, you think
21  that you need to add something to an answer you gave, you
22  want to supplement an answer that you gave, let me know
23  and we'll stop and you can make that correction.
24         Do you understand that?
25     A   Okay.

Page 7

1      Q   If at any point during the deposition you need
2  to take a break for any reason, to use the restroom or
3  make a phone call, that is fine. Let me know and we can
4  stop it and take a short break as long as a question is
5  not pending. You can answer the question and then take
6  your break, okay?
7      A   Okay.
8      Q   Even though you and I are sitting here and
9  we're going to have a conversation like the way people do
10  in life in the real world, the official transcript of this
11  deposition is what the court reporter is taking down, the
12  verbal transcription. So, it's important that you wait
13  until I'm finished asking my question before you respond;
14  and likewise, I'll try to do the same thing.
15         Do you understand?
16     A   Yes.
17     Q   Okay. So, even though we're not sitting in
18  the courtroom that might hear this case when it goes to
19  trial, if it goes to trial, and we are not in front of the
20  judge and the jury in the case, this is still testimony
21  that is being given pursuant to the penalty of perjury.
22         Do you understand that?
23     A   Yes.
24     Q   Okay. Do you have any reason to believe
25  because of a medication you're taking or some stressful

Page 8

1  event or something like that, any reason that you would
2  not be able to give full, accurate, and truthful testimony
3  today?
4      A   No.
5      Q   Okay. Good. All right. Good.
6          Sir, would you please describe your current
7  state of employment.
8      A   I'm a senior director of software development.
9  I manage the software development for CoreLogic SafeRent.
10     Q   You're a senior director for software
11  development?
12     A   Yes.
13     Q   Is that your title?
14     A   Yes.
15     Q   Okay. And you are employed by the defendant
16  in this action, CoreLogic SafeRent, correct?
17     A   Correct.
18     Q   How long have you been employed in any
19  capacity by CoreLogic SafeRent?
20     A   CoreLogic is 2010.
21     Q   Okay. Go ahead.
22     A   First part of First Advantage, so.
23     Q   Okay. When did you first join any company
24  that's related to CoreLogic, and by that, I mean,
25  CoreLogic SafeRent, First Advantage, the Registry, the

2  (Pages 5 to 8)

Page 25

1    Q    Okay.  So, consumer's name whatever
2  identifying --
3    A    Address.
4    Q    Right.  Okay.  So that transactional database
5  would include the input criteria that is input by the
6  customer, correct?
7    A    Input of customer.
8    Q    Okay.  And does it have any data regarding the
9  output?
10   A    No.
11   Q    Okay.  Where is that data?
12   A    All could generate on the fly and is being
13 delivered to client on -- they could see on the -- on our
14 front-end web server.
15   Q    Okay.  Does CoreLogic retain that record?
16   A    We retain the record for 60 days for customer
17 to view.
18   Q    What happens after 60 days?
19   A    It's -- it goes to our archive database and is
20 removed from our client front-end database.
21   Q    Okay.  So you have an archive database,
22 correct?
23   A    Yes, we do keep the archive database.
24   Q    And to be clear, you're talking about the
25 actual report information that would be returned in

Page 26

1  response to a search, correct?
2    A    Correct.
3    MR. RAETHER:  Objection to form.
4    BY MR. FRANCIS:
5    Q    Okay.  So, when a customer makes a request to
6  CoreLogic for a background check on a consumer, they can
7  see that for 60 days on the Internet, correct?
8    A    Correct.
9    Q    And they can see everything that was returned
10 in response to that search, correct?
11   A    Correct.
12   Q    All right.  Okay.  That will last for 60 days,
13 correct?
14   A    Correct.
15   Q    Thereafter, that information then gets shipped
16 to the archive database, correct?
17   A    Correct.
18   Q    Do you -- are you aware of the search and
19 query capabilities of the archive database?
20   A    Yes.
21   Q    How long -- strike that.
22        Is there a data retention period for the
23 output information in the archive database?
24   A    Five years.
25   Q    Five years.  And after five years, what

Page 27

1  happens, is it purged?
2    A    It gets purged.
3    Q    So is it -- based upon what you've just
4  testified to, is it correct that, if you wanted to go back
5  and see a report that your company sold about a consumer
6  seven years ago, you can't find it?
7    A    I cannot pull it.
8    Q    Okay.  You'd have to get it from the customer?
9    MR. RAETHER:  Objection to form.
10   BY THE WITNESS:  If the customer has it.
11   BY MR. FRANCIS:
12   Q    Okay.  As specifically as you can, would you
13 tell me what it is that you do as senior director of
14 software; what are your job duties and responsibilities?
15   A    I manage all the software development.  So, my
16 responsibility is to have any new software product
17 development or enhancement request, which is coming to my
18 team, to make sure we deliver those products and finish
19 those products on whatever delivery -- what time, and make
20 sure our systems are up and running and available to our
21 clients.
22   Q    Okay.  Anything else?
23   A    That's it.
24   Q    I'm sure it keeps you busy, but I'm just --
25   A    That's the majority.

Page 28

1    Q    So, would it be fair for me to say that the
2  majority of your work pertains to the development of new
3  projects?
4    A    Development of new projects and the
5  enhancement to existing products.
6    Q    Okay.  Does any part of your job involve the
7  production of reports for other departments using for, you
8  know, quantitative information, for example, that's housed
9  within the databases you've mentioned?
10   A    We do receive some of those requests from
11 other departments and if we have access, we can provide
12 that information as part of your production support to our
13 internal departments.
14   Q    Okay.  And is that what you do?
15   A    It's my team.  My team -- we have a process in
16 place we call a ticketing system.  Any ticket could be
17 placed so it's going to be assigned to any of the team
18 member [sic] and they will go and based on approval, they
19 will go and deliver that output.
20   Q    Okay.  Does your company, or more specifically
21 your department, generate any type of regular monthly or
22 weekly reports?
23   MR. RAETHER:  Objection to form.
24   BY THE WITNESS:  We do not generate any
25 continuing or regular report.  If they ask for something

7  (Pages 25 to 28)

Page 45

1       A    Lease decision is just a decision if you --
2  providing in terms of, you know, the applicant eligibility
3  is accepted or declined.
4       Q    Okay.  Correct me if I'm wrong, what you're
5  saying is -- well, let me ask you this, would you agree
6  with me that one of the things that your customers request
7  from you is something called a lease decision?
8            MR. RAETHER:  Objection to form.
9            BY THE WITNESS:  Yes.
10           BY MR. FRANCIS:
11      Q    Okay.  Consumer wants to rent an apartment
12  from a landlord, customer for CoreLogic SafeRent.
13  CoreLogic SafeRent then runs a report or runs a query
14  through CoreLogic SafeRent, correct?
15      A    Yes.
16      Q    The thing that is returned is the lease
17  decision, correct?
18           MR. RAETHER:  Objection to form.
19           BY MR. FRANCIS:
20      Q    You can answer.
21      A    Not necessary.  If the customer is requesting
22  that, our product, we just provide; otherwise, it will
23  not.
24      Q    Okay.  So, is it your testimony that a lease
25  decision is a type of product?

Page 46

1       A    Lease decision is the output of one of our
2  products.
3       Q    Right.  It's the heading, correct, and title
4  any time you submit information back to client, correct?
5            MR. RAETHER:  Objection to form.
6            BY THE WITNESS:  Yes.
7            BY MR. FRANCIS:
8       Q    So whether or not a client just orders a
9  registry check or a multistate criminal search, the thing
10  that comes back will be called a lease decision, correct?
11           MR. RAETHER:  Objection to form.
12           BY MR. FRANCIS:
13      Q    You can answer?
14      A    I don't remember if it would be saying lease
15  decision.
16           (The court reporter asked for clarification.)
17           BY THE WITNESS:  Returned as lease decision
18  title, it would be provided as individual product what
19  they requested.
20           (The court reporter asked for clarification.)
21           BY MR. FRANCIS:
22      Q    Have you ever seen a report issued by the
23  company which is entitled lease decision?
24           MR. RAETHER:  Objection to form.
25           BY THE WITNESS:  There is no report called

Page 47

1  like lease decision.
2            MR. FRANCIS:  Okay.
3            Let's mark this as Alam 2.
4            (ALAM Deposition Exhibit Alam 2 was marked for
5  purposes of identification.)
6            BY MR. FRANCIS:
7       Q    Sir, I'm handing you a document that was
8  previously marked at a deposition a few months ago -- a
9  gentleman by the name of Jason Doyle.
10           First of all, do you know Mr. Doyle?
11      A    Yes, I know him.
12      Q    Okay.  How do you know him?
13      A    He's a product manager.
14      Q    Okay.  So this is one of the documents that he
15  testified about.
16           Can you identify this document?
17      A    Yes, I do [sic].
18      Q    What is it?
19      A    It's a screen for what our landlords see when
20  they request a product.  So, all the products are listed
21  on the right-hand side, what they ask for, and applicant
22  information on this screen.
23      Q    Okay.  Do you see on the upper left-hand
24  corner, there is something that says lease decision?
25      A    Yeah, it's the title of the screen.

Page 48

1       Q    Right.  It's the title of the screen --
2       A    Yeah.
3       Q    -- right?
4       A    Yes.
5       Q    Okay.  Am I correct that regardless in this
6  case of whether or not the person or the landlord asked
7  for a registry check or just a multistate sex offenders,
8  they're going to see lease decision on the upper left-hand
9  corner no matter what?
10      A    Yes.
11      Q    Okay.  So ever query and every search of a
12  perspective tenant that is run through the system will
13  return something which contains lease decision on it,
14  correct?
15      A    That's the title.
16      Q    Okay.  All right.  Now, have you seen this
17  report before today?
18      A    No, not this one.
19      Q    And you see that, on the right, it says view
20  report and letters?
21      A    Yes.
22      Q    And would you agree with me those are various
23  searches that were sold by your company in connection with
24  this particular request?
25           MR. RAETHER:  Objection to form.

12 (Pages 45 to 48)

Page 49

1    BY THE WITNESS:  Correct.
2    BY MR. FRANCIS:
3    Q    And sometimes, some clients order more;
4  sometimes, they will order less than what's here, correct?
5    A    Correct.
6    Q    Do you see something called a SafeRent
7  Identify?
8    A    Yes.
9    Q    Do you know what that is?
10    A    It's a prior address history.
11    (The court reporter asked for clarification.)
12    BY MR. FRANCIS:
13    Q    Okay.  You are familiar with that product,
14  correct?
15    A    Yes.
16    Q    Your company sells that product to its
17  customers, correct?
18    A    Correct.
19    Q    Okay.  And would you agree with me that that
20  product is one of the few that the company always returns?
21    MR. RAETHER:  Objection to form.
22    BY MR. FRANCIS:
23    Q    You can answer.
24    A    I don't know if it is always returned.  It's
25  based on the request.

Page 50

1    Q    Okay.  Are you familiar with the concept of
2  bundling at service levels, products?
3    A    Yes.
4    Q    Would agree with me that with regard to -- it
5  doesn't matter what service level or what bundle a
6  customer chooses, they always get the SafeRent Identify
7  product?
8    MR. RAETHER:  Objection to form.
9    BY THE WITNESS:  I don't remember.  It's in
10  the -- customer could choose which -- what bundle they
11  want.  I don't remember all the bundles that there is in
12  the company.
13    BY MR. FRANCIS:
14    Q    Would you defer to Mr. Doyle on that?
15    A    Yes.
16    Q    Okay.  Each time your company returns a lease
17  decision like this, is this recorded somewhere?
18    MR. RAETHER:  Objection to form,
19  mischaracterizes testimony.
20    BY MR. FRANCIS:
21    Q    You can answer.
22    A    It's output what -- what clients see and
23  that's available for 60 days.
24    Q    Okay.  So, your answer is yes?
25    A    Yes.

Page 51

1    Q    Is your -- is the CoreLogic computer system
2  set up if you wanted to know how many lease decision
3  requests were fulfilled within a certain time period,
4  month, two months, a year it could do that?
5    MR. RAETHER:  Objection to form,
6  mischaracterizes testimony.
7    BY MR. FRANCIS:
8    Q    Go ahead.
9    A    We could do it based on the individual product
10  requested, which you see on the right-hand.  Lease
11  decision is just a title of the screen.  So, there's
12  nothing to be connected.
13    Q    Okay.  So, for example, we talked about the
14  SafeRent Identify product before, right?
15    A    Yes.
16    Q    And that's the last product on Alam 2,
17  correct?
18    A    Yes.
19    Q    Your company has the ability to find out how
20  many SafeRent Identify products it sold during a month,
21  two months, a year or specific dates in a time period,
22  correct?
23    A    Yes, we could do it.
24    Q    Okay.  If we wanted to find out from in the
25  last two years, how many SafeRent Identify products

Page 52

1  CoreLogic SafeRent sold, it could figure that out,
2  correct?
3    A    It could figure that out.
4    Q    And could it do it by geographical region?
5    A    What do you mean by that?
6    Q    Could the system be queried to figure out how
7  many SafeRent Identify results were sold in the state of
8  California?
9    MR. RAETHER:  Objection to form.
10    BY THE WITNESS:  It cannot.  We can only
11  recommend based on the landlord who requested that.
12    BY MR. FRANCIS:
13    Q    So you can't search by jurisdiction?
14    A    We can search it by the date or by the
15  landlord who requested for it.
16    Q    I see.  You're saying you could determine the
17  total number that you sold at any time, correct?
18    A    Yes.
19    Q    And if I wanted to change the number to make
20  it December 1 of 2013 through April 24th of today, you
21  could do that?
22    A    Yes.
23    Q    And if you wanted to find out how many of
24  landlord X ran in that time period, you could do that,
25  correct?

                    13  (Pages 49 to 52)

**Moreland v. Corelogic Saferent, LLC**                    **RIZWAN ALAM, 4/23/14**

Page 53

1    A    Yes.
2    Q    I think what you're saying is you can't do
3    that just by state?
4    A    Yes.  Like where this report was issued to or
5    something because we don't know.  We only know the
6    jurisdiction of where landlord belong to, landlord
7    address.
8    Q    Oh, okay.  So you could figure out, for
9    example, landlords in the State of California and search
10   for that, correct?
11   A    Yes.
12   Q    Okay.  And likewise, if you wanted to figure
13   out how many SafeRent Identify reports were sold in a
14   certain time period in a state, you could also take the
15   whole number and then just pull out all the other states,
16   correct?
17        MR. RAETHER:  Objection to form.
18        BY THE WITNESS:  Yes.
19        BY MR. FRANCIS:
20   Q    Okay.  Yes.  Now, all the things that I just
21   asked you about whether they could occur, do you know if
22   anyone from the company ever tried that in connection with
23   this case?
24   A    No.
25   Q    You don't know or no, they didn't?

Page 54

1    A    I don't know if anybody did.
2    Q    Okay.  To be specific, do you know whether or
3    not anybody from CoreLogic SafeRent ever tried to find the
4    number of SafeRent Identify reports were issued during the
5    last two years?
6    A    I -- I don't have any specific knowledge about
7    that.
8    Q    Okay.  You don't know if that was done or not,
9    correct?
10   A    Yeah, that's correct?
11   Q    You didn't do it, right?
12   A    We didn't do it.
13   Q    And likewise, do you know whether anybody from
14   CoreLogic SafeRent performed any type of query to
15   determine the total number of lease decisions regardless
16   of the product were run during a certain time period?
17        MR. RAETHER:  Objection to form,
18   mischaracterizes testimony.
19        BY THE WITNESS:  Not to my knowledge.  I
20   didn't do it.
21        BY MR. FRANCIS:
22   Q    You didn't do it and you don't know whether it
23   was done, correct?
24   A    Correct.
25   Q    Would agree with me that the SafeRent Identify

Page 55

1    product is a product that your company sells to its
2    customers on a regular basis?
3    A    It's offered to its customers.
4    Q    Right.  And there are customers who buy it,
5    correct?
6    A    Yes.
7    Q    Okay.  And would you agree with me that -- do
8    have you any sense of how many SafeRent Identify products
9    or reports are run in a year?
10   A    No.
11   Q    Two years?
12   A    No.
13   Q    Would you agree with me that it's in the
14   thousands?
15   A    I don't know.  I never run any -- anything or
16   see any account.
17   Q    Would you agree with me it's more than 100?
18   A    Could be.  I don't know.
19   Q    Okay.  You have no knowledge of any of the
20   numbers --
21   A    I'm not involved in any of those kinds of
22   information.
23   Q    Okay.  Let me just ask to make sure it's clear
24   for the record, you don't have any knowledge regarding
25   number of SafeRent Identify reports the company issued

Page 56

1    during any particular period, correct?
2    A    We do not know those information [sic].  We
3    only provide if somebody asks for it.
4    Q    Okay.  And nobody has asked for it?
5    A    Nobody has asked for it.
6    Q    So, could you take a look at Alam 1 again,
7    please.  If you look at 1a --
8    A    Okay.
9    Q    -- right, all persons residing in United
10   States and its Territories who during the period beginning
11   two years prior to the filing of the Complaint and
12   continuing through the date of the resolution of this case
13   made any request for their consumer file which was
14   received by the defendant and who were not provided with
15   their consumer file by the defendant.
16        Do you see that?
17   A    Yes.
18   Q    You don't know that number or anything about
19   that number, correct?
20        MR. RAETHER:  Objection to form.
21        BY THE WITNESS:  Correct.
22        BY MR. FRANCIS:
23   Q    Okay.  And likewise, in paragraph B, the same
24   question regarding people in the State of California, you
25   don't know what that number is, correct?

                              14  (Pages 53 to 56)

Page 57

1      MR. RAETHER: Objection to form.
2      BY MR. FRANCIS:
3      Q     You can answer.
4      A     That's correct.
5      Q     And paragraph 1c: All persons residing in the
6  United States and its Territories who during the period
7  beginning two years prior to the filing of the Complaint
8  and continuing through the date of the resolution of this
9  case made a request for their consumer file to defendant
10 using defendant's consumer disclosure request form and had
11 not obtained a consumer file from the defendant in the
12 12-month period immediately preceding the request, you
13 don't have any information regarding that number, correct?
14     MR. RAETHER: Objection to form.
15     BY THE WITNESS: I don't have any information
16 regarding this.
17     BY MR. FRANCIS:
18     Q     Okay. And the last one goes more toward what
19 we were just discussing, the lease decision reports.
20         The topic of all persons residing in the
21 United States and its Territories about whom defendant
22 sold during the period beginning two years prior to the
23 filing of the Complaint and continuing through the date of
24 resolution of this case a lease decision reports, you
25 don't have any information regarding that number, correct?

Page 58

1      MR. RAETHER: Objection to form.
2      BY THE WITNESS: We don't have a count or
3  number.
4      BY MR. FRANCIS:
5      Q     Okay. And I think you said before, if you
6  wanted to figure out how many total reports your company
7  sold, you could do that, correct?
8      A     We could do that, yes.
9      Q     And if you wanted to figure out the total
10 number of SafeRent Identify reports that were sold, you
11 could do that, correct?
12     A     Yes.
13     Q     If you wanted to figure out the total number
14 of multistate criminal search reports that were sold, you
15 could do that, correct?
16     A     Yes.
17     Q     Okay. And to your knowledge, no one has tried
18 to do that, correct?
19     MR. RAETHER: Objection to form.
20     BY THE WITNESS: I don't have a specific
21 memory of it. There could be just a regular request goes
22 to a team, but I don't remember specific request asking
23 for that.
24     MR. FRANCIS: I understand.
25     Mark this Alam 3, please.

Page 59

1      (ALAM Deposition Exhibit Alam 3 was marked for
2  purposes of identification.)
3      BY MR. FRANCIS:
4      Q     Mr. Alam, I'm handing you a document marked as
5  Alam 3.
6         Have you seen this document before?
7      A     I believe, yesterday I've seen this.
8      Q     Yesterday you saw it. I'll represent to you
9  this is a document that was served upon the plaintiff in
10 this case by CoreLogic's lawyers. It's entitled
11 Defendant's Amended Responses to Plaintiff's First
12 Interrogatories, okay.
13         Do you see that on the first page?
14     A     Yes.
15     Q     And if you look at Interrogatory Number 1,
16 Page 3, Interrogatory Number 1 requests: Please state the
17 number of lease decision reports you sold between A, March
18 25, 2008 and the present; and B, March 25, 2011 and the
19 present; and identify the persons about whom the reports
20 were sold.
21         Do you see that?
22     A     Yes.
23     Q     Okay. You didn't do anything to try to figure
24 out that number, correct?
25     MR. RAETHER: Objection to form.

Page 60

1      BY THE WITNESS: I don't remember.
2      BY MR. FRANCIS:
3      Q     You might have?
4      A     My team might have in a general request. I
5  don't remember.
6      Q     Now, in terms of my asking you earlier a few
7  moments ago about the number of SafeRent Identify reports
8  that the company sold during a particular time period, you
9  testified clearly that you could figure out that number,
10 correct?
11     A     Uh-huh.
12     Q     If you wanted to, could you also figure out
13 who the consumer was who was the subject of the report?
14     MR. RAETHER: Objection to form.
15     BY THE WITNESS: Yes.
16     MR. FRANCIS: Yes.
17     (The court reporter asked for clarification.)
18     (Off the record.)
19     (Whereupon, a brief recess was taken.)
20     (On the record.)
21     BY MR. FRANCIS:
22     Q     All right. Sir, before we took a break or the
23 lights were turned out on us, I was asking you questions
24 about the Amended Interrogatory Responses the defendant
25 had supplied.

15   (Pages 57 to 60)

Page 61

1       Please turn to Page 8. If you look at
2   Interrogatory Number 10, it requests: Please state the
3   total number of individuals who have requested their files
4   from you between A, March 25, 2008 and the present; and B,
5   March 25, 2011 and the present; and identify such persons.
6       Do you see that?
7   A   Uh-huh.
8   Q   You didn't perform any queries of any
9   databases or the system used by CoreLogic to answer that
10  question, correct?
11      MR. RAETHER: Objection to form.
12      BY THE WITNESS: I might. I don't remember.
13      BY MR. FRANCIS:
14  Q   You don't remember.
15      And you don't know of anybody who did,
16  correct?
17  A   I don't remember. There could be a general
18  request from consumer relations to produce this.
19  Q   But you don't know, correct?
20  A   I don't remember.
21  Q   Interrogatory Number 11, same question, please
22  state -- my question will be the same.
23      Please state the number -- the total number of
24  individuals who submitted to you a consumer disclosure
25  request form between A, March 25, 2008 and the present;

Page 62

1   and B, March 25, 2011 and the present; and identify such
2   persons.
3       Do you see that?
4   A   Yes.
5   Q   You didn't perform any queries or searches of
6   the CoreLogic computer system or databases to obtain any
7   information responsive to that question?
8       MR. RAETHER: Objection to form.
9       BY MR. FRANCIS:
10  Q   You can answer.
11  A   I personally did not do it and I don't
12  remember if somebody from my team might have done that.
13  Q   Okay. And you don't generally do that
14  yourself in your course of business, correct?
15  A   Yes.
16  Q   All right. If you look at -- I'd like to turn
17  your attention to Interrogatory Number 12. It's the next
18  page.
19      Do you see Interrogatory Number 12?
20  A   Yes.
21  Q   You didn't perform any queries or searches of
22  the CoreLogic system and/or any databases maintained by it
23  in order to retrieve information responsive to this
24  request, correct?
25      MR. RAETHER: Objection to form, outside of

Page 63

1   scope of 30(b)(6).
2       BY THE WITNESS: I don't remember.
3   Personally, I did not. It could be a general -- I don't
4   remember anything.
5       BY MR. FRANCIS:
6   Q   Okay. If you look at Interrogatory Number 13,
7   it asks: Please state the total number of individuals to
8   whom you provided free of charge a complete copy of their
9   files between A, March 25, 2008 and the present; and B,
10  March 25, 2011 and the present; and identify such persons.
11      Do you see that?
12  A   Uh-huh.
13  Q   If you turn to the next page, there is an
14  answer to this one and it reads: Subject to and without
15  waiving those objections through January 24, 2014, A, is
16  46,102; and B, is 28,846.
17      Do you see that?
18      (The court reporter asked for clarification.)
19      BY MR. FRANCIS:
20  Q   Do you know where the information came from
21  which came up with these numbers?
22      BY MR. RAETHER: Objection to form, outside
23  the scope of 30(b)(6) topic.
24      BY MR. FRANCIS:
25  Q   You can answer.

Page 64

1   A   Based on that time, anything before 2002, it
2   could be, you know, from our AS-400 system and I think
3   from our system migrated after 2012.
4   Q   My question is, do you know where that
5   specific data came from?
6   A   That could be a query asked by the consumer
7   relations department.
8   Q   But you don't know, correct?
9   A   I don't remember specific -- might have asked
10  and might have provided.
11  Q   Okay. But you don't remember, correct?
12  A   Usually these things goes as requests.
13  Q   If a query or queries were performed in order
14  to obtain those numbers, you wouldn't know what
15  specifically was done to try to get those numbers,
16  correct?
17      MR. RAETHER: Objection to form, outside the
18  scope of the 30(b)(6) topics.
19      BY MR. FRANCIS:
20  Q   Go ahead.
21  A   We have to look into the request, what they
22  have asked for.
23  Q   My question is, you don't know what was done
24  to reveal those numbers, correct?
25  A   I don't remember. But it would be part of the

                                    16 (Pages 61 to 64)

Page 69

```
 1   sign.
 2            (The deposition concluded at 1:58 p.m. )
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 70

```
 1   COMMONWEALTH OF VIRGINIA
 2   COUNTY OF FAIRFAX
 3
 4
 5        I, Veronica M. Mackin, a Notary Public of the
 6   Commonwealth of Virginia, County of Fairfax, do hereby
 7   certify that the within-named witness personally appeared
 8   before me at the time and place herein set out, and after
 9   having been duly sworn by me, according to law, was
10   examined by counsel.
11        I further certify that the examination was
12   recorded stenographically by me and this transcript is a
13   true record of the proceedings.
14        I further certify that I am not of counsel to any
15   of the parties, nor in any way interested in the outcome
16   of this action.
17
18
19   _____
20            Veronica M. Mackin, CCR
21            Notary Public
22
23   My Commission Expires:
24   June 30, 2015
25
```

Page 71

```
 1        INSTRUCTIONS TO WITNESS FOR READING & SIGNING
 2            Read your deposition over carefully.  It
 3   is your right to read your deposition and make
 4   changes in form or substance.  You should assign a
 5   reason in the appropriate column on the errata
 6   sheet for any change made.
 7            After making any changes in form or
 8   substance which have been noted on the following
 9   errata sheet along with the reason for any change,
10   sign your name on the errata sheet and date it.
11            Then sign your deposition at the end of
12   your testimony in the space provided.  You are
13   signing it subject to the changes you have made in
14   the errata sheet, which will be attached to the
15   deposition before filing.  You must sign it in
16   front of a witness.  Have the witness sign in the
17   space provided.  The witness need not be a notary
18   public.  Any competent adult may witness your
19   signature.
20        Return the original errata sheet to your
21   counsel promptly.  Court rules require filing
22   within 30 days after you receive the deposition.
23
24
25
```

Page 72

```
 1            ERRATA SHEET
 2   Attach to Deposition of: Rizwan Alam
     Taken on: April 23, 2014
 3   In the matter of: Moreland v. Corelogic Saferent, LLC
 4   PAGE  LINE NO.  CHANGE REASON
 5   _____
 6   _____
 7   _____
 8   _____
 9   _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18   _____
19   _____
20   _____
21   _____
22   _____
23   _____
24   _____
25   _____
```

18  (Pages 69 to 72)

Moreland v. Corelogic Saferent, LLC                          RIZWAN ALAM, 4/23/14

Page 73

```
 1              SIGNATURE PAGE
 2                  - - -
 3         I hereby acknowledge that I
 4    have read the aforegoing transcript, dated
 5    April 23, 2014, and the same is a true and
 6    correct transcription of the answers given by
 7    me to the questions propounded, except for
 8    the changes, if any, noted on the errata
 9    sheet.
10                  - - -
11
12
13    SIGNATURE: _____
                    Rizwan Alam
14
15    DATE: _____
16
17    WITNESSED BY: _____
18
19
20
21
22
23
24
25
```

19 (Page 73)