# EXHIBIT 3

Moreland v. Corelogic Saferent, LLC                                    ROBYN SMALL-CONFIDENTIAL, 2/5/14

Page 1

1               IN THE UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3

4     SUSAN E. MORELAND,              :

5                   Plaintiff,        : Case No.:

6     vs.                            : SACV13-00470 AG (ANx)

7     CORELOGIC SAFERENT, LLC,       :

8                   Defendant.        :

9                                    — — —

                     CONFIDENTIAL TRANSCRIPT
10                                   — — —

11          Oral deposition of ROBYN SMALL held at the

12    Law Offices of Morrison & Foerster, LLP, 1650 Tysons

13    Boulevard, Suite 400, McLean, Virginia 22102, on

14    Wednesday, February 5, 2014, commencing at 9:36 a.m.

15    taken by and before Janice Jones, Registered

16    Professional Reporter and Notary Public.

17

18                                   — — —

19

20

21

                    SUMMIT COURT REPORTING, INC.
22          Certified Court Reporters & Videographers
                   1500 Walnut Street, Suite 1610
23               Philadelphia, Pennsylvania 19102
          424 Fleming Pike, Hammonton, New Jersey 08037
24        (215) 985-2400 * (609) 567-3315 * (800) 447-8648
                     www.summitreporting.com
25                                        Exhibit 3 Page__21

Moreland v. Corelogic Saferent, LLC

ROBYN SMALL-CONFIDENTIAL, 2/5/14

Page 2

1
2
3  APPEARANCES:
4
5      Francis & Mailman, P.C.
6      BY:  JAMES A. FRANCIS, ESQUIRE
7      AND LAUREN BRENNAN, ESQUIRE
8      Land Title Building - 19th Floor
9      100 South Broad Street
10     Philadelphia, PA 19110
11     (215) 735-8600
12     Email:  jfrancis@consumerlawfirm.com
13          lbrennan@consumerlawfirm.com
14     REPRESENTING THE PLAINTIFF
15
16     Faruki, Ireland & Cox, PLL
17     BY:  RONALD I. RAETHER, JR., ESQUIRE
18     500 COURTHOUSE PLAZA, S.W.
19     10 North Ludlow Street
20     Dayton, Ohio 45402
21     (937)-227-3733
22     Email:  rraether@ficlaw.com
23     REPRESENTING THE DEFENDANT
24
25          - - -

Page 3

1                I N D E X
2
3  WITNESS                          PAGE
4  ROBYN SMALL
5      By Mr. Francis                  4
6
7                - - -
8
9             E X H I B I T S
10 Number                        Marked

11 P-1     Free Form Remarks           54
12 P-2     Consumer Disclosure Instructions    121
13 P-3     Consumer Disclosure Request Form    123
14 P-4     Cover Sheet/File Disclosure      124
15 P-5     Saferent Consumer Copy Procedures   125
16 P-6     Consumer Relations Policy Manual   127
17 P-7     Cover Letter/Disclosure File Form   131
18 P-8     Cover Letter/Disclosure Request    133
19 P-9     Consumer Disclosure Instructions   135
20         Maryland State Summary of Rights
21
22
23
24
25

Page 4

1          (It is hereby stipulated and
2  agreed by and between counsel for the
3  respective parties that filing, sealing,
4  and certification are waived; and that
5  all objections, except as to the form of
6  the question, are reserved to the time
7  of trial.)
8            - - -
9          ROBYN SMALL, having been duly
10 sworn/affirmed, was examined as follows:
11              EXAMINATION
12            - - -
13 BY MR. FRANCIS:
14     Q    Ma'am, good morning.  My name is Jim
15 Francis.  I'm an attorney, one of the lawyers
16 representing the plaintiff in the case called Moreland
17 versus Corelogic Saferent.
18          Today, I'm going to be taking your
19 deposition.  Would you please state and spell your full
20 name for the record?
21     A    It's Robyn Small, R-O-B-Y-N, S-M-A-L-L.
22     Q    All right.  Ms. Small, have you ever given
23 a deposition before?
24     A    I have.
25     Q    All right.  On how many different

Page 5

1  occasions, would you say?
2     A    Three or four.
3     Q    Three or four.  All right.
4          Were any of those depositions situations in
5  which you were testifying on behalf of a company you
6  worked for, such as Corelogic or Saferent?
7     A    They were.
8     Q    All right.  Were all of them in connection
9  with your employment at a company you worked for?
10    A    Yes.
11    Q    All right.  So none of them were situations
12 where you were involved in personally, a car accident
13 or anything like that?
14          They were all cases involving litigation by
15 or against your employer.
16          Correct?
17    A    That's correct.
18    Q    All right.  When was the last time you gave
19 a deposition?
20    A    I don't recall the exact date.  It was
21 probably a year and a half, two years ago.
22    Q    All right.  Do you remember what type of
23 case that was or what the situation or circumstances
24 were?
25    A    Not off the top of my head, no.

2 (Pages 2 to 5)

Exhibit 3 Page 22

Moreland v. Corelogic Saferent, LLC

ROBYN SMALL-CONFIDENTIAL, 2/5/14

Page 10

1 Saferent. I am the consumer relations manager.
2    Q    How long have you held that position?
3    A    I have had the management position for 10
4 years.
5    Q    When you say the "management position," do
6 you mean that your position as consumer relations
7 manager, you have had that for 10 years or you have had
8 a management type position for 10 years?
9    A    I have been either the consumer relations
10 manager or director for the past 10 years.
11    Q    Are you currently the director?
12    A    There is no director.
13    Q    Was there a director previously?
14    A    It was me.
15    Q    It was you. From when to when were you the
16 director of that department?
17    A    I was the consumer relations director from
18 about 2007 until 2012 when we were acquired by
19 Corelogic.
20    Q    So who was your employer between 2007 and
21 2012?
22    A    Saferent with different parent companies.
23    Q    All right. Do I understand you to suggest
24 that in connection with the change with the Corelogic
25 acquisition the director position went away?

Page 11

1    A    That's correct.
2    Q    Did your duties and responsibilities change
3 in any way, other than the fact that you no longer had
4 the director of title -- or excuse me -- the title of
5 director?
6    A    Yes, they did.
7    Q    Tell me how your duties changed in
8 connection with the acquisition by Corelogic.
9    A    As of November 26, 2012, my department no
10 longer handled the responsibility for file disclosures,
11 intake of consumer calls, phone calls, and we focused
12 solely on responding to disputes at this time.
13    Q    The date, I think it was November 26th of
14 2012 you said.
15        Is that correct?
16    A    That's correct.
17    Q    What was the date? What was the magic
18 date?
19    A    The day after Thanksgiving and the day we
20 made the switch.
21    Q    All right. So, based upon what you have
22 just said, would I be correct in stating that prior to
23 November 26, 2012 that the department that you were the
24 director of handled file disclosures and intake of
25 consumer calls?

Page 12

1    A    That is correct.
2    Q    Now you are strictly and solely handling
3 disputes from consumers.
4        Correct?
5    A    That is correct.
6    Q    I want to focus for a little bit on the
7 time frame up through and up until November 26, 2012.
8 All right. So just look at that time period.
9        You had been director of the -- is it
10 called -- consumer relations department or team or --
11    A    Department.
12    Q    Department. All right.
13        You were director for 10 years?
14    A    I was a manager and then became a director
15 about 2006, 2007. I'm not sure of the exact date.
16    Q    All right. Did your duties change when you
17 became a director versus being a manager?
18    A    No.
19    Q    So, let's focus on the time period -- when
20 you say about 10 years, so are you using 10 years going
21 back from 2012 or 10 years from now?
22    A    From today.
23    Q    All right. So you started becoming a
24 manager in or around 2004?
25    A    Late 2003, early 2004.

Page 13

1    Q    What were you doing before that or
2 immediately prior to that?
3    A    I was in advertising and marketing with the
4 May Company store.
5    Q    All right. So, when you assumed the role
6 of manager of the consumer relations department, that
7 was in connection with your starting to be employed by
8 Saferent.
9        Correct?
10    A    That is correct.
11    Q    All right. Prior to joining Saferent in
12 2004, had you ever been employed by a company that was
13 a consumer reporting agency?
14    A    No.
15        MR. RAETHER: Objection to form.
16 BY MR. FRANCIS:
17    Q    Had you ever been involved by a company,
18 employed by a company which sold consumer reports about
19 consumers?
20    A    No.
21    Q    All right. Had you been involved in any
22 company which was in any way regulated, to the best of
23 your knowledge, by the Fair Credit Reporting Act?
24    A    I have worked for companies that had credit
25 departments that would have been regulated under the

4 (Pages 10 to 13)

Exhibit 3 Page 2%

Moreland v. Corelogic Saferent, LLC                                    ROBYN SMALL-CONFIDENTIAL, 2/5/14

Page 22

1            MR. RAETHER:  Objection to form.
2    BY MR. FRANCIS:
3        Q     You can answer.
4        A     It has -- it has not changed in that we
5    respond to the consumer within a specified time period.
6            We have increased the efficiency with which
7    we can respond by adding ways that we accept the file
8    requests or requests for disclosure.
9            We have increased the availability of
10   Consumer Disclosure Forms to the consumer by adding a
11   website, adding automated request lines, having the
12   consumer have the ability to speak with a live person
13   for assistance in filling out forms, and also being
14   able to offer alternative means of disclosure in
15   addition to a written response in the mail.
16       Q     All right.  Am I correct, based upon my
17   review of some of the documents that have been produced
18   in this case, that at least at some point, if not up
19   until the current time, the company used a standard
20   form, which appears to be coded CRD001 for consumers to
21   fill out in connection with processing a file,
22   disclosure request?
23       A     The department does have a form --
24       Q     All right.
25       A     -- that consumers can use.

Page 23

1        Q     Right.  I am just using the coding that I
2    saw on that form.
3            Do you know the form that I am talking
4    about?
5        A     Yes.  That is the correct code.
6        Q     All right.  So let me just focus on the
7    CRD001 form for a second.
8            Has that form changed in any way since you
9    have been with the company?
10       A     It has.
11       Q     All right.  Tell me about when it changed,
12   according to your recollection.
13       A     The form has been reviewed almost every
14   year, so there have been several changes throughout the
15   years including -- most of the changes are to the
16   instructions.
17           We have added a Spanish language version of
18   summary of rights and instructions; we have added the
19   ability for consumers to fax in their disclosure
20   request and added that fax number.
21           We have a third-party authorization form
22   that if the consumer wanted to have an attorney or a
23   spouse or another person who might -- translator act on
24   their behalf or receive their personal information.
25       Q     All right.  Any other changes to the form

Page 24

1    that you recall?
2        A     I think there was also a -- there have been
3    some changes because of the fact that we have changed
4    the form to specify a particular reason that a consumer
5    might be requesting file disclosure, you know, asking
6    for their annual free credit report or free consumer
7    report versus a consumer report based on an adverse
8    action request.
9            We have removed -- there was a fee
10   structure that was allowed under the FCRA but we were
11   not collecting the fee, so we took out the table that
12   had stated how much you could charge to obtain a copy
13   of your file -- or for the consumer to obtain a copy of
14   his or her file.
15       Q     Have there been any changes to the form or
16   the instructions accompanying the form in the last
17   couple of years and by that I mean since January of
18   2012, for example?
19       A     In January of 2012, the form became the
20   responsibility of our Poway office.  I'm not familiar
21   with what that form says today.
22       Q     Poway?
23       A     Poway is our California corporate office.
24       Q     Oh, all right.  How do you spell that?
25       A     It's P-O-W-A-Y.

Page 25

1        Q     I don't know where that is.
2        A     Outside of San Diego.
3        Q     Did that change occur in January of 2012?
4        A     I'm sorry.  I misspoke.  Our change was in
5    November of 2012.
6            In January of 2012, there may have been
7    slight changes to the form.  I'm not -- I'm not
8    thinking of anything monumental off the top of my head.
9        Q     Let me write that down.
10           So in November -- you think in November of
11   2012.
12           Right?
13       A     November 2012.
14       Q     Right.  All right.
15           The form ceased being the responsibility of
16   your group.
17           Correct?
18       A     That is correct.
19       Q     And that responsibility then shifted to the
20   Poway office.
21           Correct?
22       A     That is correct.
23       Q     And is that in connection or was that in
24   connection with the acquisition by Corelogic?
25       A     Yes.

SUMMIT COURT REPORTING, INC.
215.985.2400 * 609.567.3315 * 800.447.8648 * www.summitreporting.com

Exhibit 3 Page 24

Moreland v. Corelogic Saferent, LLC                                    ROBYN SMALL-CONFIDENTIAL, 2/5/14

Page 26

1          MR. RAETHER:  Objection to form.
2    BY MR. FRANCIS:
3        Q    All right.  You can answer.  Yes?
4        A    Yes.
5        Q    I see.  Now, so am I correct, based upon
6    what you have stated that since November of 2012
7    neither you nor anyone whom you supervise, manage or
8    oversee, had any responsibility for handling the
9    consumer file disclosure part of the company?
10       A    That is correct.
11       Q    And do you know who the version of you
12   would be out in California or is?
13       A    I do.
14       Q    Who is that person?
15       A    Angela Bernard.
16       Q    All right.  Let's, again, focus up through
17   November 26, 2012, because I know that was when things
18   changed.
19            Since your becoming director in 2006 and up
20   through November 26th of 2012, were there any changes
21   to the form or the accompanying instructions to the
22   CRD001 form regarding the documentation that was
23   communicated to the consumer that they had to supply in
24   connection with fulfilling a file request?
25            MR. RAETHER:  Objection to form; asked and

Page 27

1    answered.
2    BY MR. FRANCIS:
3        Q    You can answer.
4        A    I believe that there was a change to a
5    statement with regard to providing a photo ID, which
6    had been stated to be required.
7            It is not required in practice.  It does
8    help us process the disclosure request more completely
9    sometimes.
10           I think at one point the phraseology was
11   even used to provide a copy of your ID for faster
12   processing, and then at another point, it just said to
13   provide a copy of your ID.
14       Q    When was that change made?
15       A    I'm not sure of the exact date.
16       Q    How about approximately?
17       A    2009 or 2010, maybe.
18       Q    All right.  That was a change to the
19   instructions that went along with the form?
20       A    That change was, I believe, on the actual
21   form itself under the form fields or above the form
22   field.
23       Q    All right.  Any other changes to the
24   documentation requirement aspect of a consumer file
25   disclosure, other than that which you have just said

Page 28

1    from 2006 through November of 2012?
2            MR. RAETHER:  Objection to form.
3    BY MR. FRANCIS:
4        Q    You can answer.
5        A    Not that I am -- that I am aware of or not
6    that I could think of.
7        Q    Do you know what I mean by 'documentation'?
8        A    Yes.
9        Q    What I am referring to?
10       A    Yes.
11           MR. RAETHER:  Objection to form.
12   BY MR. FRANCIS:
13       Q    I am correct, am I not, that during the
14   period of 2006 at least up through November of 2012
15   Corelogic Saferent had used a standard CRD001 form in
16   connection with fulfilling consumer file disclosure
17   requests?
18           Correct?
19           MR. RAETHER:  Objection to form.
20       A    Corelogic Saferent used a disclosure
21   request form that was available to consumers.  It was
22   not the only way consumers could request a file
23   disclosure.
24   BY MR. FRANCIS:
25       Q    I understand.  There were other methods by

Page 29

1    which consumers might be able to request it.
2            Correct?
3        A    That is correct.
4        Q    But one of the methods that the company
5    used to handle consumer file disclosure requests was
6    the CRD001 form.
7            Correct?
8            MR. RAETHER:  Objection to form.
9    BY MR. FRANCIS:
10       Q    You can answer it.
11       A    That is correct.
12       Q    When I say 'the form,' that the form that
13   would be sent to consumers would include the
14   instructions such the requirement -- such as the
15   documentation instructions.
16           Correct?
17       A    That is correct.
18       Q    All right.  Would you please tell me how
19   the company used the CRD001 form in connection with
20   fulfilling consumer file disclosure requests?
21           How was the form used?
22       A    When we receive the form, we would use that
23   form as a guide to look for matching criteria for
24   existing reports in our system that might have been run
25   by one of our clients so a matching name and social

Exhibit 3 Page 25

SUMMIT COURT REPORTING, INC.
215.985.2400 * 609.567.3315 * 800.447.8648 * www.summitreporting.com

Moreland v. Corelogic Saferent, LLC                                           ROBYN SMALL-CONFIDENTIAL, 2/5/14

Page 74

1      A    -- were requested from the California, San
2  Diego, area.
3      Q    Above that there is lettering, "ATPRINQR".
4          Do you see that?
5      A    Yes.
6      Q    Do you know what that refers to?
7      A    I believe that refers to the print queue
8  that this page ended up in to be printed.
9      Q    Under that there is a "D. Matthews".
10         Do you see that?
11     A    I do.
12     Q    What does that refer to?
13     A    That is a person who works for me who would
14  have printed this page.
15     Q    All right.  Is the date that this was
16  printed on March 26, 2013?
17     A    Yes, it was.
18     Q    All right.  Did you direct that it be
19  printed?
20     A    I don't recall.  I may have.
21     Q    All right.  After this lawsuit was filed,
22  were you involved in gathering or helping retrieve
23  records like this?
24     A    I or my department, yes.
25     Q    All right.  So, if you would, please turn

Page 75

1  to SR6.  It's another of the same type of record, a
2  prior inquiry lookup; this also comes from the AS400.
3          Is that correct?
4      A    That's correct.
5      Q    Can you tell me what type of data is
6  contained here?
7      A    Similar to the previous one, there is the
8  account, the client who ran the request, the request
9  number, the date it was run, the geographic region
10  where it was requested, the input information by our
11  client, which includes the consumer's name, address,
12  social security number, the end -- in this case, the
13  end user and the types of product requested.
14     Q    All right.  Here, the transaction code is
15  filled in.  There is "UDCHCKREQ".
16         Do you see that?
17     A    I do.
18     Q    What does that mean?
19     A    It appears that this person was run by a
20  company that we acquired.  It appears that the consumer
21  was run by the UD Registry, and this was their product
22  which appeared to be a landlord tenant background
23  screening.
24     Q    All right.  Under that at the bottom, there
25  is a reference to a Kristen.

Page 76

1          Do you know who Kristen is?
2      A    I do not.
3      Q    Up in the upper right, there is "Client
4  Initial, AUT".
5          Do you know what that refers to?
6      A    I don't.
7      Q    "FAR initial, KRI".
8          Do you know what that refers to?
9      A    I don't.
10     Q    Then there is an "Auto slash verbal colon"
11  with an "L" after that.
12         Do you know what that means?
13     A    I do not.
14     Q    All right.  Would you turn to SR7, please?
15         Can you identify this document for me?
16     A    It appears to be a written request from
17  Ms. Moreland.
18     Q    All right.  Before we get into exactly what
19  occurred with Ms. Moreland's situation, do you have any
20  independent recollection of being involved in
21  responding to any inquiries or communications from
22  Ms. Moreland at any time?
23     A    No.
24     Q    Do you know anybody who does have a
25  specific recollection of communicating with or

Page 77

1  responding to Ms. Moreland at any time?
2      A    No.
3      Q    Have you spoken to anybody and/or inquired
4  with anybody within your department as to whether or
5  not they have any knowledge regarding anything that
6  happened with regard to Ms. Moreland's communications
7  with Corelogic Saferent in 2012 or 2013?
8      A    No.
9      Q    All right.  There is a stamp in the middle
10  of this page, "Received January 16, 2013".
11         Do you see that?
12     A    I do.
13     Q    Do you know what that means?
14     A    Yes.
15     Q    Can you tell me?
16     A    That means that we received this
17  correspondence in our department on January 16, 2013.
18     Q    Is it customary or part of your usual
19  practice to stamp written disclosure requests received
20  from consumers?
21     A    Yes.
22     Q    Is that a mandatory thing for your people
23  to do?
24     A    Yes, it is.
25     Q    Do you have any idea why this letter was

20 (Pages 74 to 77)

Exhibit 3 Page 26

Moreland v. Corelogic Saferent, LLC                                          ROBYN SMALL-CONFIDENTIAL, 2/5/14

Page 78

1   dated October 19, 2012 but wasn't received in your
2   department until January 16, 2013?
3       A    I do not.
4       Q    In connection with preparing to testify
5   today, have you been able to discern why there has been
6   such a delay between the date that this letter was
7   apparently sent around and the receipt date?
8           MR. RAETHER:  Objection to form.
9   BY MR. FRANCIS:
10      Q    You can answer.
11          MR. RAETHER:  As long as your knowledge is
12  not connected with communications with attorneys, you
13  can answer.
14      A    I have no knowledge as to why there was a
15  delay in it getting to my department.
16          I can tell you that when it came to my
17  department it came in a bundle of inquiry disputes, so
18  it was processed as an inquiry dispute on January 12 --
19  16th of 2013.
20  BY MR. FRANCIS:
21      Q    Does that matter or would that have had any
22  bearing on the fact that it came as a bundle of inquiry
23  disputes versus a regular file request?
24      A    It does.
25      Q    Why?

Page 79

1       A    In January of 2013, my department was not
2   processing file disclosures and would not have
3   received -- should not have received a file disclosure
4   request.
5       Q    I see.  All right.
6           In reviewing the records that you have
7   reviewed prior to today's deposition and in connection
8   with those that you and your department gathered in
9   March of 2013, were you able to discern when the letter
10  was actually received by the company at all, by any
11  part of the company?
12      A    I don't know when the letter was received
13  by any part of the company other than my department.
14      Q    All right.  Do you know whether or not the
15  company as a whole records the date when they receive
16  consumer correspondence?
17      A    I don't know what the current practice in
18  Poway is, so I couldn't tell you.
19      Q    What about the practice back in October of
20  2012?
21      A    In October of 2012, the responsibility for
22  file disclosures was with my department, and every
23  piece of correspondence, every request for file
24  disclosure would have been date stamped upon receipt.
25      Q    All right.  This letter was addressed to

Page 80

1   the Poway office.
2           Correct?
3           MR. RAETHER:  Objection to form.
4       A    It appears to be addressed to the former
5   address of the Poway office.
6   BY MR. FRANCIS:
7       Q    All right.  Do you know whether or not that
8   address, the 12395 First American Way address was an
9   address used by Corelogic Saferent at some point?
10      A    I believe it was used by Corelogic Saferent
11  as of November 26, 2012 but not prior -- not -- not --
12  Saferent had no affiliation with this address prior to
13  November 26th.
14      Q    All right.  Putting aside what happened or
15  may have happened here, what would have been the
16  typical process or the usual process if a consumer
17  submitted a written request for a file disclosure on
18  October 19, 2012 and sent that file disclosure request
19  to the address that is on SR7?
20          MR. RAETHER:  Objection to form.
21      A    I can't tell you what the process would
22  have been, because to my knowledge, we had no file
23  disclosures going to that address at that time.
24          So, I can't state what would have happened
25  to it, because I don't know what their process for file

Page 81

1   disclosure was at that time.
2   BY MR. FRANCIS:
3       Q    Were there ever times in the past where
4   that office would forward to you requests they were
5   getting?
6           MR. RAETHER:  Objection to form.
7       A    That office, to my knowledge, had not
8   received a file request.  We received no correspondence
9   from them prior to November 26th that needed to come to
10  our office.
11  BY MR. FRANCIS:
12      Q    Do you know if somebody sent a letter,
13  specifically a file disclosure request to the 12395
14  First American Way Poway office, if that would be
15  processed in accordance with company procedures for
16  handling file disclosure requests?
17          MR. RAETHER:  Objection to form.
18      A    I have no --
19  BY MR. FRANCIS:
20      Q    You may answer --
21      A    I have no knowledge of what their file
22  disclosure request process was in the past or is today.
23      Q    All right.  Was the Poway office
24  responsible for handling file disclosure requests of
25  any sort in October of 2012?

21 (Pages 78 to 81)

Exhibit 3 Page 27

Moreland v. Corelogic Saferent, LLC                                      ROBYN SMALL-CONFIDENTIAL, 2/5/14

Page 82

1          MR. RAETHER:  Objection to form.
2      A    I would assume that Poway was responsible
3  for handling Corelogic file disclosure requests.
4          Prior to November 26, 2012, they had no
5  responsibility for file disclosures for Saferent
6  consumers.
7  BY MR. FRANCIS:
8      Q    All right.  Do you know whether or not they
9  responded to Ms. Moreland's October 2012 request
10  regarding a Corelogic file disclosure?
11     A    I do not.
12         MR. RAETHER:  Objection to form.
13     A    I have no knowledge of that.
14  BY MR. FRANCIS:
15     Q    Do you know whether Corelogic's side ever
16  responded to Ms. Moreland in connection with her
17  October 2012 letter?
18         MR. RAETHER:  Objection to form.
19     A    I do not.
20  BY MR. FRANCIS:
21     Q    All right.  In connection with your coming
22  to testify here today and preparing to testify and
23  gathering documentation back in March of 2012 -- excuse
24  me -- March in 2013, in connection with this case, did
25  you ever find out, other than a communication with an

Page 83

1  attorney, what if anything Corelogic did with this
2  letter?
3          MR. RAETHER:  Objection to form.
4      A    I have -- I have no knowledge of any
5  information of whether or how Corelogic might have
6  responded to Ms. Moreland.  I have seen no
7  correspondence.
8  BY MR. FRANCIS:
9      Q    You mentioned that Ms. Moreland's
10  October 19, 2012 letter, which is SR7, came to your
11  department in connection with a batch of inquiry
12  disputes.
13         Correct?
14     A    That's correct.
15     Q    How do you know that?
16     A    I know that by the notes that are in the
17  AS400 that were free form input.  I know that by the
18  inquiry lookup that they did, the standard -- the
19  documentation that appears to have been input into
20  Ms. Moreland's file in January of 2013 are consistent
21  with a standard procedure for responding to an inquiry
22  request.
23     Q    I understand that.  How do you know that
24  her letter came in as part of a batch, though?
25         Was there something in the records that we

Page 84

1  have looked at already that communicated that?
2      A    No, not that I am aware of but all of our
3  inquiry requests were coming to us bundled from Poway.
4      Q    I see.  So you are saying that generally
5  back then inquiry disputes were forwarded to you from
6  Poway in some bulk format?
7      A    After November 26th.
8      Q    All right.  That is why you believe that
9  this letter was sent in connection with a batch of
10  inquiry disputes?
11         MR. RAETHER:  Objection to form.
12  BY MR. FRANCIS:
13     Q    You can answer.
14     A    That's correct.
15     Q    You don't have any other basis other than
16  that is the way it was done in making that assumption.
17         Correct?
18         MR. RAETHER:  Objection to form;
19  mischaracterizes prior testimony.
20  BY MR. FRANCIS:
21     Q    You can answer.
22     A    I believe that to be the case because that
23  was the process in place for handling inquiry disputes
24  and the documentation that does exist on Ms. Moreland
25  appears to be consistent with a response to an inquiry

Page 85

1  dispute.
2      Q    All right.  Now, do you remember when I was
3  asking you questions a little while ago about what the
4  company's processes were for responding to consumer
5  file disclosure requests coming from different sources?
6          Do you remember when we were going over
7  that?
8      A    Yes.
9      Q    And I asked you what if somebody did this,
10  what would happen?  Would you send them a letter or
11  would you send them a file disclosure?
12         Do you remember those questions?
13     A    I do.
14     Q    Back in October of 2012, what was the
15  procedure for handling a letter like SR7?
16     A    Through my department, if this had been
17  received in October of 2012, we would have searched our
18  database for a match, matching criteria, matching on a
19  name, a social security number that was provided here,
20  date of birth, and/or address and pulled the historical
21  report if one existed; and then we would have run a
22  file disclosure, based on the name Susan Moreland and
23  on the name Susan Burbano with the address of 808 Loma
24  Alta Terrace, Vista, California using the social
25  security number that she has provided here as well as

22 (Pages 82 to 85)

Exhibit 3 Page 28

Moreland v. Corelogic Saferent, LLC

Page 86

1  the date of birth.
2      Q    Would the company send a -- what is it --
3  CRD001 form in connection with a request like this?
4      A    Probably not.
5      Q    All right.  Are there instances in which it
6  would and instances in which it would not?
7      A    They are unique but if we had found no
8  matching criteria in Ms. Moreland's letter and what was
9  in our database, we might send a form if she had
10  implied she had applied at a property.  This particular
11  letter does not indicate that she has applied
12  somewhere.
13        So she probably would not have been sent a
14  form.  If she had made a statement in her letter that
15  said I applied at property X, Y, Z but we could not
16  find that based on the information that was here, we
17  might have sent her a form for additional information,
18  which would give us prior addresses and things that
19  might help us find a report.
20        If the social security number didn't match
21  what was in our database, we might have sent her a
22  form, in order to ascertain whether she maybe mistyped
23  her own social here or whether the property misinput
24  (sic) her information; but based on this letter, I
25  don't believe she would have been sent a form.

Page 87

1        She would have simply been sent disclosure
2  based on information that was provided.
3      Q    Now, do you know what the company did in
4  response to this letter, what your department did?
5      A    I do.
6      Q    What happened?
7      A    Because her file -- her request was bundled
8  as an inquiry dispute, she did receive a form for
9  reinvestigation, a dispute form along with a statement
10  that insufficient information had been received and
11  asking her to please complete the form and specify an
12  inquiry date that she was disputing.
13      Q    Was that response compliant with the
14  company's procedures?
15      A    It was not.
16      Q    It was not why?
17      A    It was not compliant with the company's
18  procedures for a file disclosure.
19        It would have been compliant for a response
20  with an inquiry dispute.
21      Q    All right.  It was not compliant with
22  company procedures for the request that she made
23  because why?
24      A    Because she is asking for everything in her
25  file which sounds like a file disclosure request.

Page 88

1      Q    Is it your testimony that had she actually
2  been making a dispute that the response that the
3  company had was compliant with its current procedures?
4      A    Had she been disputing an inquiry, the
5  response she received would have been compliant with
6  our process.
7      Q    And that response being among other things
8  a request for additional information.
9        Correct?
10      A    That's correct.
11      Q    Would that be compliant with any dispute or
12  just inquiry disputes?
13      A    That is compliant with inquiry disputes and
14  particularly to the information that was contained in
15  this letter, because there is no specification of what
16  inquiry date was being disputed, so among the
17  additional information and as stated on the response
18  packet, they would ask her for the date that she is
19  disputing; because sometimes our consumers have been
20  run by multiple properties and they are not disputing
21  all of them, only one particular inquiry.
22        We would need additional information
23  because we would try to obtain the actual lease
24  application, which means we would want something to
25  compare it to.

Page 89

1      Q    All right.  Along with that would the
2  CRD001 letter or form be sent?
3      A    The request for disclosure would not have
4  been sent as part of an inquiry dispute.
5      Q    All right.  Do you know whether she was
6  sent that form in this case?
7      A    I know that she was not sent the disclosure
8  request form by my department.
9      Q    All right.  But she was sent a different
10  type of form.
11        Correct?
12      A    She was sent a dispute form.
13      Q    Dispute form.  All right.
14        Do you know why her file disclosure request
15  from October of 2012 was not handled in a compliant
16  way?
17      A    Can you be more --
18      Q    Sure.  Do you know why it was treated as an
19  inquiry dispute as opposed to responding and giving her
20  everything in her file?
21      A    She was treated as an inquiry dispute by my
22  department because of the way in which I believe it
23  came to us.
24        I can't attest to why it was put into an
25  inquiry bundle in Poway and not treated as a disclosure

SUMMIT COURT REPORTING, INC.
215.985.2400 * 609.567.3315 * 800.447.8648 * www.summitreporting.com

Exhibit 3 Page 29

Moreland v. Corelogic Saferent, LLC

ROBYN SMALL-CONFIDENTIAL, 2/5/14

Page 90

1    there.
2       Q   When you would receive bundles of inquiry
3    disputes, would your department review the actual
4    documentation from the consumers?
5       A   They would review the documentation from
6    the consumers as it related to an inquiry dispute.
7       Q   So, even if they get a letter that says,
8    like this one, "Please give me everything in my file,
9    in my consumer file," they still would not respond to
10   it as a consumer file request?
11       Is that what you are saying?
12       MR. RAETHER:  Objection to form.
13   BY MR. FRANCIS:
14       Q   You can answer.
15       A   I'm saying this was not responded to as a
16   file disclosure but it was responded to as an inquiry
17   dispute.
18       Should someone have red flagged it and said
19   "This sound strange," I don't know.  I know that it was
20   sent to us as an inquiry and treated as an inquiry
21   dispute.
22       Q   I understand that but my question was
23   slightly different.  That was, generally back then, in
24   connection with a bundle of inquiry disputes, was your
25   staff instructed to read those, the contents of those

Page 91

1    disputes?
2       A   They were not.
3       Q   They were not.  All right.
4       How would they be able to respond to a
5    dispute if they did not read what the consumer said?
6       A   They would read what the consumer submitted
7    in response to researching an inquiry dispute, so they
8    are looking for specific information such as an inquiry
9    date, a matching social security number or a different
10   social security number as the case might be and pulling
11   documents as to who inquired on the person, what client
12   so that we could request additional information from
13   the client if we received identifying information from
14   the consumer.
15       Q   All right.  But they were not instructed to
16   read what the consumer said.
17       Correct?
18       MR. RAETHER:  Objection to form.
19       A   My team that was processing inquiry
20   disputes were operating under the premise that it had
21   already been filtered out and determined to be an
22   inquiry dispute by the Poway office.
23       We were not using the Poway address in any
24   form at that time.  It was probably not on anyone's
25   radar screen to have received a disclosure request

Page 92

1    coming to us from Poway.
2    BY MR. FRANCIS:
3       Q   All right.  So they were looking at it
4    exclusively as an inquiry dispute regardless of what
5    the consumer said.
6       Correct?
7       MR. RAETHER:  Objection to form.
8       A   In the packet that came to us as an inquiry
9    dispute, which is what I believe this document was sent
10   to us as, they were looking for specific criteria as it
11   related to inquiry disputes and not to whatever else
12   was contained in the letter.
13   BY MR. FRANCIS:
14       Q   So, if the consumer happened to along with
15   an inquiry dispute ask for a file request that would
16   not be processed.
17       Correct?
18       MR. RAETHER:  Objection to form.
19       A   Had it come to us in the bundle for
20   inquiries from Poway, it would have been treated solely
21   as an inquiry dispute.
22   BY MR. FRANCIS:
23       Q   All right.  As this one was.  Correct?
24       A   As this one was.
25       Q   All right.

Page 93

1       A   Had it come to us as a Saferent, addressed
2    to Saferent, it would have been reviewed and probably
3    provided with both file disclosure and inquiry dispute
4    information if that was contained in the letter.
5       Q   All right.  Was that pursuant to
6    instructions from Corelogic that, here, just look at
7    this part as opposed to look at everything?
8       I mean, why did you operate that way?
9       MR. RAETHER:  Objection to form.
10   BY MR. FRANCIS:
11       Q   You can answer.
12       A   At that point in time, as I stated earlier,
13   we were not receiving any correspondence from con --
14   from our Poway office other than inquiry disputes.
15       So, I don't think there was any process in
16   place -- in fact, I know there was no process in place
17   for handling a file disclosure because the company was
18   in a transition but they weren't receiving, to my
19   knowledge, and prior to this -- knowledge of this case,
20   they weren't receiving any disclosure requests in
21   October of 2012 for us.
22       Q   All right.  My question is, who decided
23   that for that period of time all of the communications
24   that would be forwarded from Corelogic to Saferent
25   would be inquiry disputes?

24 (Pages 90 to 93)

Exhibit 3 Page 30

Moreland v. Corelogic Saferent, LLC                                ROBYN SMALL-CONFIDENTIAL, 2/5/14

Page 94

1      Who decided that?
2      A      I think that was a joint decision between
3  myself and Angie Bernard because they indicated they
4  had received inquiry disputes, so they were being
5  bundled and sent to us in order to respond to them.
6      Q      All right.  Why would they just be getting
7  inquiry disputes that would immediately be forwarded to
8  you and only inquiry disputes?
9      MR. RAETHER:  Objection to form.
10     A      I don't know but they did start to get
11  them.  Many of our inquiry disputes come to us from
12  what appeared to be credit repair houses.
13     They get one address and send out 1,500
14  requests and for whatever reason the requests were
15  going to Poway.
16     Poway was then forwarding them back to us
17  because at that time they had no knowledge of our
18  database or our inquiries and we completed the
19  disputes.
20  BY MR. FRANCIS:
21     Q      Was Poway sending your department all
22  inquiry disputes of any Corelogic or Saferent report?
23     MR. RAETHER:  Objection to form.
24     A      No.
25  BY MR. FRANCIS:

Page 95

1      Q      Which ones were forwarded to you?
2      A      They were sending us only correspondence
3  for inquiry disputes that related to Saferent
4  reports --
5      Q      All right.
6      A      -- where there was a dispute.
7      Q      All right.  If you look at SR8, do you know
8  where this document came from?
9      A      This appears to be a xerox of the envelope
10  that Ms. Moreland's correspondence was sent --
11     Q      All right.
12     A      -- in.
13     Q      And would you agree with that the post
14  stamp here appears to be October 24, 2012?
15     MR. RAETHER:  Objection to form.
16     A      The postmark as I see on here does appear
17  to be October 24, 2012.
18  BY MR. FRANCIS:
19     Q      All right.  To your knowledge, was
20  Corelogic processing or handling consumer file
21  disclosure requests of its own or of any kind at that
22  time?
23     MR. RAETHER:  Objection to form.
24     A      I have no knowledge of their -- whether
25  they received file disclosure requests on their own

Page 96

1  or --
2  BY MR. FRANCIS:
3      Q      All right.  Is that because the two
4  departments, your department and the Corelogic side,
5  operate independently and don't really communicate?
6      MR. RAETHER:  Objection to form.
7  BY MR. FRANCIS:
8      Q      You can answer.
9      A      At that point in time, on October 24, 2012,
10  Corelogic and Saferent did operate independently, and
11  each was responsible for its own file disclosures and
12  dispute handling.
13     Q      All right.  If you could turn to SR9,
14  please.
15     Can you identify this document, please?
16     A      This is a response packet addressed to
17  Ms. Moreland for a dispute.  It's our dispute response
18  packet.
19     Q      All right.  Is this a standard form that
20  would be sent to consumers in or around this time
21  period?
22     MR. RAETHER:  Objection to form.
23     A      This is the standard response that would be
24  sent to consumers in response to a dispute in or around
25  that time period.

Page 97

1  BY MR. FRANCIS:
2      Q      Any type of dispute or just an inquiry
3  related dispute?
4      A      The packet, itself, would be used for any
5  type of dispute.
6      Q      All right.  Was this used for disputes
7  regarding Saferent information?
8      A      Saferent information, that is correct.
9      Q      Was it also used for disputes regarding
10  Corelogic information?
11     MR. RAETHER:  Objection to form.
12     A      No.
13  BY MR. FRANCIS:
14     Q      Do you know if there was a version of this
15  that was used for Corelogic disputes?
16     A      I have no knowledge of what response packet
17  they have.
18     Q      All right.  Did you have any input in terms
19  of designing this form?
20     A      I did.
21     Q      What was your involvement in the design of
22  this form?
23     A      I worked with our in-house counsel and
24  our -- the person responsible for maintaining our forms
25  to create a standard response packet that would allow

25 (Pages 94 to 97)

Moreland v. Corelogic Saferent, LLC                                    ROBYN SMALL-CONFIDENTIAL, 2/5/14

Page 142

1   me.  No further questions.
2           MR. RAETHER:  So we will read and sign.
3           Then also there are a number of documents
4   that were used in the deposition that are marked as
5   confidential.
6           The parties are still negotiating the
7   specific provisions of the protective order to be
8   entered -- to be presented to the Court by stipulation
9   and hopefully entered in by the Court.
10          It is my understanding until those issues
11  are resolved, the last draft that the defendants
12  provided to plaintiff's counsel will be in effect.
13          MR. FRANCIS:  Yes.  Agreed.
14          MR. RAETHER:  I also noted that we had
15  produced documents in this matter.  I think they are
16  part of Exhibit 1 SR001 through SR007 that include the
17  plaintiff's social security number; and we will mark
18  those confidential.
19          MR. FRANCIS:  I agree.
20          (Deposition concluded at 1:55 p.m.)
21
22
23
24
25

Page 144

1   INSTRUCTIONS TO WITNESS FOR READING & SIGNING
2           Read your deposition over carefully.  It
3   is your right to read your deposition and make
4   changes in form or substance.  You should assign a
5   reason in the appropriate column on the errata
6   sheet for any change made.
7           After making any changes in form or
8   substance which have been noted on the following
9   errata sheet along with the reason for any change,
10  sign your name on the errata sheet and date it.
11          Then sign your deposition at the end of
12  your testimony in the space provided.  You are
13  signing it subject to the changes you have made in
14  the errata sheet, which will be attached to the
15  deposition before filing.  You must sign it in
16  front of a witness.  Have the witness sign in the
17  space provided.  The witness need not be a notary
18  public.  Any competent adult may witness your
19  signature.
20          Return the original errata sheet to your
21  counsel promptly.  Court rules require filing
22  within 30 days after you receive the deposition.
23
24
25

Page 143

1           CERTIFICATE OF NOTARY
2
3           I, JANICE JONES, the officer before whom the
4   foregoing deposition was taken, do hereby certify that
5   the witness whose testimony appears in the foregoing
6   deposition was duly sworn by me; that the testimony of
7   said witness was taken by me in stenotype and
8   thereafter reduced to typewriting under my direction;
9   that said deposition is a true record of the testimony
10  given by said witness; that I am neither counsel for,
11  related to, nor employed by any of the parties to the
12  action in which this deposition was taken; and,
13  further, that I am not a relative or employee of any
14  counsel or attorney employed by the parties thereto,
15  nor financially or otherwise interested in the outcome
16  of this action.
17
18
19           JANICE JONES
20           Notary Public in and for the
21           Commonwealth of Virginia
22           Registration No. 7566898
23
24  My Commission Expires:
25  March 31, 2017

Page 145

1           ERRATA SHEET
2   Attach to Deposition of: Robyn Small
    Taken on: February 5, 2014
3   In the matter of: Moreland v. Corelogic Saferent, LLC
4   PAGE  LINE NO.  CHANGE REASON
5   _____
6   _____
7   _____
8   _____
9   _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____
25  _____

37 (Pages 142 to 145)

Exhibit 3 Page 72

Page 146

**ROBYN SMALL-CONFIDENTIAL**

| | |
|---|---|
| 1 | SIGNATURE PAGE |
| 2 | |
| 3 | - - - |
| 4 | I hereby acknowledge that I |
| | have read the aforegoing transcript, dated |
| 5 | |
| | February 5, 2014, and the same is a true and |
| 6 | |
| | correct transcription of the answers given by |
| 7 | |
| | me to the questions propounded, except for |
| 8 | |
| | the changes, if any, noted on the errata |
| 9 | |
| | sheet. |
| 10 | |
| | - - - |
| 11 | |
| 12 | |
| 13 | SIGNATURE: _____ |
| | Robyn Small |
| 14 | |
| 15 | DATE:      3/6/14 _____ |
| 16 | |
| 17 | WITNESSED BY: _____ |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

**SUMMIT COURT REPORTING, INC.**
**215.985.2400 * 609.567.3315 * 800.447.8648 * www.summitreporting.com**

Exhibit 3 Page 33