# EXHIBIT 5

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                   SOUTHERN DIVISION

 4
     SUSAN E. MORELAND, on behalf of)
 5   herself and all others         )
     similarly situated,,           )
 6                                  )
                 PLAINTIFF,         )
 7      vs.                         ) CASE NO. SACV13-00470 AG
                                    )          (ANx)
 8   CORELOGIC SAFERENT LLC,        )
                                    )
 9               DEFENDANT.         )
     _____)
10

11

12          DEPOSITION OF ANGELA BARNARD

13              SAN DIEGO, CALIFORNIA

14                FEBRUARY 12, 2014

15

16

17

18   Reported by:  Adela Medina, RPR, CSR No. 11964

19

20

21

22

23

24

25
```

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Angela Barnard                                                                February 12, 2014

Page 2

        VIDEOTAPED DEPOSITION OF ANGELA BARNARD,
    taken on behalf of Susan E. Moreland, et al., at
    12531 High Bluff Drive, Suite 100, beginning at 9:46
    a.m., and ending at 12:14 p.m, on Wednesday, February
    12, 2014, before Adela Medina, RPR, CSR No. 11964,
    Certified Shorthand Reporter, in and for the County of
    San Diego, State of California.

Page 3

APPEARANCES:
FOR THE PLAINTIFF:
    CADDELL & CHAPMAN
    BY: Michael A. Caddell, Esq.
    1331 Lamar, Suite 1070
    Houston, Texas 77010-3027
    mac@caddellchapman.com

    FOR DEFENDANT:

    FARUKI, IRELAND & COX
    BY: Ronald I. Raether, Jr., Esq.
    BY: Christopher T. Herman, Esq.
    500 Courthouse Plaza, S.W.
    10 North Ludlow Street
    Dayton, Ohio 45402
    rraether@ficlaw.com
    cherman@ficlaw.com

Page 4

                        I-N-D-E-X
                              PAGE   LINE   VOL

ANGELA BARNARD
EXAMINATION BY MR. CADDELL . . . . . . .2    7     1

Page 5

                INDEX OF EXHIBITS IDENTIFIED

                        PAGE   LINE   VOL

1  NOTICE OF DEPOSITION          5    15    1

2  FORM CRD-001                 11    3     1

3  CONSUMER DISCLOSURE          12    10    1
   INSTRUCTIONS
4  PACKET OF MATERIALS          30    20    1
5  CUSTOMER RELATIONS           41    12    1
   POLICY MANUAL

6  CONSUMER AUTHENTICATION      46    10    1
   PROCESS
7  CONSUMER DISCLOSURE          55    9     1
   COPY PROCESS

8  COVER LETTER                 76    8     1

9  REINVESTIGATION PROCEDURES   77    5     1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Angela Barnard                                                                February 12, 2014

Page 14

1  separate entities.
2      Q.  Okay. And is --
3      A.  I --
4      Q.  I'm sorry.
5      A.  Sorry. I don't know if they're wholly-owned.
6      Q.  Okay. And is there a contract of some kind
7  between CoreLogic and SafeRent pursuant to which the
8  services that you've described relating to consumer
9  relations and onboarding compliance are provided by
10 Credco to SafeRent?
11         MR. RAETHER: Objection to form.
12         THE WITNESS: Not that I'm aware of.
13 BY MR. CADDELL:
14     Q.  Now, in general, what's your understanding of
15 the procedures that are in place today for an individual
16 or consumer to request their SafeRent file pursuant
17 to -- well, whatever the policies are at SafeRent?
18         And it's a little confusing, so let me -- let
19 me reask that question.
20         First, are the policies for providing file
21 disclosures to consumers the same for Credco and
22 SafeRent?
23         MR. RAETHER: Objection to form.
24         THE WITNESS: They're similar.
25 ///

Page 15

1  BY MR. CADDELL:
2      Q.  Okay. How are they different?
3      A.  The consumers on the SafeRent side and the
4  Credco side, we're dealing with completely separate
5  purposes for the transaction. So a consumer may call a
6  different phone number. They're going to write the same
7  address. There may be a separate fax line for them to
8  contact us, so variation on how they contact us. But
9  the process should be very similar.
10     Q.  Okay. And so we've seen a document, CRD-001.
11 You're familiar with that, correct?
12     A.  Yes.
13     Q.  Is -- is there a document similar to CRD-001
14 for individuals/consumers requesting their Credco file?
15         MR. RAETHER: Objection. Form, relevance.
16         THE WITNESS: Could I see the form? I don't
17 really have it memorized.
18 BY MR. CADDELL:
19     Q.  Sure.
20     A.  Okay.
21     Q.  Let me hand you what's been marked as
22 Exhibit 2. And if you look -- Exhibit 2 I'll represent
23 to you is a SafeRent packet that went out at some point
24 in time with respect to consumers either requesting a
25 file disclosure or requesting an -- a reinvestigation of

Page 16

1  their file.
2          And if you look at the third page of the
3  exhibit, and that's SR ending in 71 through SR ending in
4  72, those two pages appear to be Form CRD-001.
5          (Exhibit No. 2 was identified.)
6          MR. RAETHER: Objection to form.
7  BY MR. CADDELL:
8      Q.  Do you see --
9          MR. RAETHER: Sorry.
10         MR. CADDELL: That's okay.
11 BY MR. CADDELL:
12     Q.  Do you see the pages to which I'm referring?
13     A.  I do.
14     Q.  Okay. Are you familiar with Form CRD-001?
15         MR. RAETHER: Objection. Lack of foundation.
16         THE WITNESS: I'm not familiar with this
17 version.
18 BY MR. CADDELL:
19     Q.  Okay. So you have a version that you're
20 currently using that is different from this version?
21     A.  Yes.
22     Q.  Is it still called Form CRD-001?
23     A.  I don't know.
24         THE VIDEOGRAPHER: I need to swap that out.
25 Thanks.

Page 17

1  BY MR. CADDELL:
2      Q.  Okay. Ms. Barnard, this is -- hand you what's
3  been marked as Exhibit 3.
4          And as you can see in the lower right-hand
5  corner, this version is dated 2013, looks like
6  June 16th. Do you see that?
7      A.  Yes.
8      Q.  Is this the version of CRD-001 that is used by
9  the unit that you supervise today?
10         MR. RAETHER: Objection. Form.
11         THE WITNESS: Yes.
12         (Exhibit No. 3 was identified.)
13 BY MR. CADDELL:
14     Q.  Okay. And if you look at -- let's compare
15 SR 000082 in Exhibit 3 to SR 000071 in Exhibit 2. And
16 would you identify for me any differences that you can
17 find?
18         MR. RAETHER: Objection to form. Documents
19 speak for themselves.
20         THE WITNESS: Question number one is
21 different. In Form 82, there's no question number two.
22 Under Section B, in parentheses, the sentence that
23 starts "Complete this section" is different. Under
24 Section C, the first sentence that starts "Include" is
25 different.

Page 74

1   Q.  Okay. And that includes lease decisioning?
2   A.  Yes.
3   Q.  And at present does -- well, let me -- I'm not
4   sure how to frame this.
5       Well, at present does your department require
6   a certification of a permissible purpose for the use of
7   a lease decisioning report --
8       MR. RAETHER: Objection. Form.
9   BY MR. CADDELL:
10  Q.  -- from SafeRent?
11  A.  There are multiple lease decisioning products.
12  Can you be more specific?
13  Q.  Previous address history. It's SafeRent
14  Identity -- or Identify.
15  A.  I'm not familiar with that product.
16  Q.  Okay. Who in your onboarding compliance
17  department is responsible for SafeRent credentialing and
18  vetting?
19  A.  We have a group of individuals who would
20  perform that function. I would be the director. I have
21  a manager, Danielle Anderson, under me.
22  Q.  Daniel Anderson?
23  A.  Danielle.
24  Q.  Oh, Danielle. Sorry.
25  A.  Uh-huh.

Page 75

1   Q.  Is that D-A-N-I-E-L-L-E?
2   A.  Correct.
3   Q.  Anderson?
4   A.  Uh-huh.
5   Q.  And is that with an E or an O?
6   A.  E-R.
7   Q.  Okay.
8   A.  S-O-N. Sorry.
9   Q.  S-O-N.
10  A.  Uh-huh.
11  Q.  And Ms. Anderson is located in your offices?
12  A.  Yes.
13  Q.  And what's her title?
14  A.  Operations manager.
15  Q.  And is she specific to SafeRent or both Credco
16  and SafeRent products?
17  A.  Both Credco and SafeRent.
18  Q.  And -- but all of her salary and benefits are
19  allocated to Credco, correct?
20  A.  Correct.
21  Q.  And -- but she would -- she supervises
22  individuals who have direct interface with customers for
23  SafeRent products?
24  A.  With potential customers, yes.
25  Q.  And then she supervises the vetting and

Page 76

1   credentialing of those customers, correct?
2   A.  Correct.
3   Q.  Now, Credco, to your knowledge -- well, strike
4   that.
5       Other than the functions that you -- that your
6   department performs for SafeRent in the area of consumer
7   relations and in the area of onboarding compliance, are
8   you aware of any other functions that Credco provides to
9   SafeRent?
10  A.  No.
11  Q.  And are you -- have you been involved in any
12  decision to treat SafeRent Identify as subject to the
13  FCRA or not subject to the FCRA?
14  A.  I --
15      MR. RAETHER: Objection. Form.
16      THE WITNESS: I have not.
17  BY MR. CADDELL:
18  Q.  And -- and is that the kind of decision that
19  would be made by SafeRent?
20      MR. RAETHER: Objection to form.
21      THE WITNESS: Yes.
22  BY MR. CADDELL:
23  Q.  In other words, you're -- you're providing a
24  function, a service to SafeRent in terms of its
25  onboarding compliance, vetting and credentialing

Page 77

1   prospective customers, but you're not telling SafeRent
2   which of their products are governed by the FCRA and
3   which are not. SafeRent is actually telling you, we
4   think this product is FCR governed, and then you are
5   implementing procedures to comply with that. Is that
6   fair?
7       MR. RAETHER: Objection to form.
8       THE WITNESS: It's fair. I would make it --
9   it's more broad than just by product. So a customer can
10  access multiple products. So we are credentialing that
11  entity as in that line of business to be able to order
12  products.
13  BY MR. CADDELL:
14  Q.  Okay.
15  A.  So not product by-product.
16  Q.  Okay. We talked about the consumer
17  authentication process. In looking at Exhibit 6, I see
18  a reference -- we -- we -- I see a description of phone
19  authentication and fax mail authentication.
20      Is there a authentication process that can
21  take place via the Internet?
22  A.  No.
23  Q.  Okay. And that's been the case since you have
24  been responsible for the SafeRent disclosure process,
25  correct?

Page 78

1  A.  Correct.
2  Q.  And since Credco has been responsible for that
3  process, do consumers receive -- oh, well -- what are
4  the requirements for a consumer to receive a free copy
5  of their SafeRent file?
6       MR. RAETHER:  Objection to form.
7       THE WITNESS:  We -- any time a consumer
8  requests of a copy of their report, we would give them a
9  free copy.
10 BY MR. CADDELL:
11 Q.  And that doesn't -- so -- and there's no
12 processing charge or anything like that, correct?
13 A.  Correct.
14 Q.  And I think it's -- it's clear on the record,
15 but just to be doubly sure.  Exhibit 5, you had nothing
16 to do with the creation of Exhibit 5 or -- and -- and
17 Exhibit 5 was not used to govern Credco's procedures
18 when it took over the SafeRent functions we have
19 discussed, correct?
20 A.  Correct.
21 Q.  And Credco has no responsibility for
22 reinvestigation with respect to SafeRent products,
23 correct?
24      MR. RAETHER:  Objection.  Form.
25      THE WITNESS:  Credco operations handles the

Page 79

1  reinvestigation for SafeRent as well.
2  BY MR. CADDELL:
3  Q.  Oh, okay.  Okay.  I'm sorry.  I got some
4  faulty information there.
5       So -- so is that -- did that happen when
6  the -- well, strike that.
7       So when the consumer relations and onboarding
8  compliance functions were assumed by Credco for
9  SafeRent, the consumer relations function encompassed
10 not only the file disclosure area but also the
11 reinvestigation procedures, correct?
12      MR. RAETHER:  Objection to form.
13      THE WITNESS:  We work in conjunction with
14 Robyn Small on the consumer disputes reinvestigation
15 piece, but yes, we do response -- we accept the dispute
16 and then respond to the consumer dispute.
17 BY MR. CADDELL:
18 Q.  Okay.  And how does that work when you say you
19 work with Robyn Small, how does that work?
20 A.  Robyn Small's team is doing the investigation
21 of the dispute, verifying the information.
22 Q.  Now, as to the file disclosure function, does
23 that have any -- does SafeRent have any involvement in
24 that or is that handled completely by Credco since late
25 2012?

Page 80

1       MR. RAETHER:  Objection to form.
2       THE WITNESS:  There could be instances where
3  Rockville may produce a consumer disclosure.  There
4  could be situations of that, but we are handling that
5  function in San Diego.
6  BY MR. CADDELL:
7  Q.  And so you have access to -- in San Diego you
8  have access to the SafeRent database and the files for
9  each consumer, correct?
10 A.  Correct.
11 Q.  Now, Credco has nothing to do with the
12 creation of SafeRent files, correct?
13      MR. RAETHER:  Objection to form.
14      THE WITNESS:  Correct.
15 BY MR. CADDELL:
16 Q.  And are you familiar with the MyRental product
17 from SafeRent?
18 A.  Yes.
19 Q.  And what's your understanding of that product?
20 A.  It is a product geared toward small landlords
21 to obtain information on prospe- -- prospective tenants.
22 Q.  And do you know whether SafeRent treats
23 MyRental as being governed by the FCRA?
24      MR. RAETHER:  Objection.  Form.
25      THE WITNESS:  I don't know.

Page 81

1  BY MR. CADDELL:
2  Q.  Are you aware of any individual lawsuits
3  against Credco or SafeRent regarding the SafeRent lease
4  decision reports?
5  A.  Other than this case, no.
6  Q.  Ms. Barnard, let me hand you what's been
7  marked as Exhibit 8.  Can you identify that, please?
8  A.  This is a -- the cover letter that we would
9  provide to a consumer with their disclosure -- consumer
10 disclosure report.
11      (Exhibit No. 8 was identified.)
12 BY MR. CADDELL:
13 Q.  And this is what you're using currently,
14 correct?
15 A.  Yes.
16 Q.  And has this -- I mean, I see in the lower
17 right-hand corner it says, "2005-06-23."  Does that
18 suggest that this form is effectively the same form
19 that's been used for the last eight years or so?
20      MR. RAETHER:  Objection.  Lack --
21      THE WITNESS:  I don't know.
22      MR. RAETHER:  -- of foundation.
23      THE WITNESS:  I don't know.
24 BY MR. CADDELL:
25 Q.  Okay.  You do know that it's the same form

```
                                                              Page 9
  1                    CORRECTION CERTIFICATE
  2        I, ANGELA BARNARD, do hereby certify that I have
  3   read my deposition and that, to the best of my
  4   knowledge, said deposition is true and accurate with the
  5   exception of the following changes listed below.
  6   Page   Line   Explanation
  7   ____   ____   _____
  8   ____   ____   _____
  9   ____   ____   _____
 10   ____   ____   _____
 11   ____   ____   _____
 12   ____   ____   _____
 13   ____   ____   _____
 14   ____   ____   _____
 15   ____   ____   _____
 16   ____   ____   _____
 17   ____   ____   _____
 18   ____   ____   _____
 19   ____   ____   _____
 20   ____   ____   _____
 21   ____   ____   _____
 22
 23                            [signature]
 24                       ANGELA BARNARD
 25
```

Exhibit 5 Page 50

Page 10

1                DECLARATION UNDER PENALTY OF PERJURY

2

3        I, ANGELA BARNARD       , do hereby certify under

4    penalty of perjury under the laws of the State of

5    California that I have read the foregoing transcript of

6    my deposition taken on February 12, 2014; that I have

7    made the necessary corrections, additions or changes to

8    my answers that I deem necessary; that my testimony as

9    contained herein, as corrected, is true and correct.

10

11   Executed this __14__ day of ___March___, 2014.

12

13   [Notary stamp: CALISTA JONES, COMM. #1938213, NOTARY PUBLIC-CALIFORNIA, SAN DIEGO COUNTY, My Commission Expires MAY 24, 2015]

14

15

16

17   _____

18                ANGELA BARNARD

19

20

21

22

23

24

25

Exhibit 5 Page 51

```
 1                    REPORTER'S CERTIFICATION
 2
 3        I, ADELA MEDINA, Certified Shorthand Reporter for
 4   the State of California, do hereby certify:
 5
 6        That the witness in the foregoing deposition was by
 7   me first duly sworn to testify to the truth, the whole
 8   truth, and nothing but the truth in the foregoing cause;
 9   that the deposition was taken by me in machine shorthand
10   and later transcribed into typewriting, under my
11   direction, and that the foregoing contains a true record
12   of the testimony of the witness.
13
14        Dated:  This 17th day of February, 2014, at
15   San Diego, California.
16
17
18
19                    _____
20                    Adela Medina, RPR, CSR 11964
21
22
23   Government Code 69954(d):  Any court, party, or person
     who has purchased a transcript may, without paying a
24   further fee to the reporter, reproduce a copy or portion
     thereof as an exhibit pursuant to court order or rule,
25   or for internal use, but shall not otherwise provide or
     sell a copy or copies to any other party or person.
```

Exhibit 5 Page 52