Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
cbc@caddellchapman.com
Craig C. Marchiando (SBN 283829)
ccm@caddellchapman.com
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX  77010
Tel: (713) 751-0400, Fax: (713) 751-0906

Leonard A. Bennett (*pro hac vice*)
lenbennett@clalegal.com
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1A
Newport News VA 23606
Tel: (757) 930-3660, Fax: (757) 930-3662

James A. Francis (*pro hac vice*)
jfrancis@consumerlawfirm.com
John Soumilas (*pro hac vice*)
jsoumilas@consumerlawfirm.com
David A. Searles (*pro hac vice*)
dsearles@consumerlawfirm.com
**FRANCIS & MAILMAN, P.C.**
100 South Broad Street, 19th Floor
Philadelphia PA 19110
Tel: (215) 735-8600 Fax: (215) 940-8000

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| SUSAN E. MORELAND, on behalf of herself and all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>CORELOGIC SAFERENT, LLC,<br><br>                Defendant. | Case No. 8:13-cv-00470-AG-AN<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS I, II AND III**<br><br><br>Date:   September 22, 2014<br>Time:  10:00 a.m.<br>Place:  Courtroom 10D |

# TABLE OF CONTENTS

I.     INTRODUCTION ..........................................................................................1

II.    FACTS .........................................................................................................3

       A.     The Experience of Plaintiff Susan E. Moreland ....................................3

       B.     SafeRent's Uniform and Cumbersome System for
              Handling Consumer File Requests .........................................................6

III.   STANDARD .................................................................................................7

IV.    ARGUMENT AND AUTHORITIES ...........................................................8

       A.     Defendant Is Not Entitled To Summary Judgment
              On Plaintiff's Claims Under FCRA Section 1681g .............................8

              1.    Actual Damages ........................................................................8

              2.    Willfulness ..............................................................................10

              3.    Plaintiff's CCRAA Claim Must Also Proceed To Trial ............12

       B.     Defendant Is Not Entitled to Summary Judgment
              on Plaintiff's Claim Under FCRA Section 1681j(a) ..........................13

              1.    A Reasonable Jury Could Find In This Case That
                    Defendant's Disclosure Process Is Not Streamlined ..................14

              2.    Defendant's Disclosure Process Imposes Charges
                    On Consumers Seeking Their Consumer Files ..........................16

V.     CONCLUSION ...........................................................................................18

# **TABLE OF AUTHORITIES**

## **CASES**

*Acosta v. Trans Union, LLC,*
    243 F.R.D. 377 (C.D. Cal. 2007)........................................................9

*Ashby v. Farmers Ins. Co. of Oregon*,
    592 F. Supp. 2d 1307 (D. Or. 2008)...................................................9

*Bakker v. McKinnon*,
    152 F.3d 1007 (8th Cir. 1998) ...........................................................8

*Bateman v. Am. Multi-Cinema, Inc.*,
    623 F.3d 708 (9th Cir. 2010) .........................................................9, 10

*Beaudry v. Telecheck Servs., Inc.,*
    579 F.3d 702 (6th Cir. 2009) .............................................................9

*Boris v. Choicepoint Servs., Inc.*,
    249 F. Supp. 2d 851 (W.D. Ky. 2003) ............................................11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...........................................................................7

*Chakejian v. Equifax Info. Servs., LLC*,
    256 F.R.D. 492 (E.D. Pa. 2009) ........................................................9

*Cortez v. Trans Union, LLC*,
    617 F.3d 688 (3d Cir. 2010) .........................................................8, 10

*Cowley v. Burger King Corp.*,
    No. 07-21772-CIV, 2008 WL 8910653 (S.D. Fla. May 23, 2008)................10

*Edwards v. Toys "R'" Us*,
    527 F. Supp. 2d 1197 (C.D. Cal. 2007)...........................................10

*Fregoso v. Wells Fargo Dealer Servs., Inc.*,
    No. 11-10089, 2012 WL 4903291 (C.D. Cal. Oct. 16, 2012)....................8, 11

*Galen v. County of Los Angeles*,
    477 F.3d 652 (9th Cir. 2007) .............................................................7

*Gillespie v. Equifax Info. Servs., LLC*,
    484 F.3d 938 (7th Cir. 2007)...........................................................10

*Guimond v. Trans Union Credit Info. Co.*,
    45 F.3d 1329 (9th Cir. 1995) .......................................................8, 17

*Hammer v. JP's Sw. Foods, L.L.C.*,
    739 F. Supp. 2d 1155 (W.D. Mo. 2010)..........................................................10

*Larson v. Trans Union, LLC*,
    No. 12-5726, 2014 WL 1477705 (N.D. Cal. Apr. 14, 2014) .........................11

*Levine v. World Fin. Network Nat'l Bank*,
    437 F.3d 1118 (11th Cir. 2006) ........................................................................8

*Meyer v. Nat'l Tenant Network, Inc.*,
    ___ F. Supp. 2d ___, No. 13-3187, 2014 WL 197773
    (N.D. Cal. Jan. 17, 2014)................................................................................11

*Miller v. Trans Union, LLC*,
    No. 12–1715, 2013 WL 5442059 (M.D. Pa. Sept. 27, 2013).........................11

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006) .............................................................................9

*Philbin v. Trans Union Corp.*,
    101 F.3d 957 (3d Cir. 1996) ..............................................................................8

*Robins v Spokeo, Inc.*,
    742 F.3d 409 (9th Cir. 2014) ........................................................................9, 10

*Singletery v. Equifax Info. Servs., LLC*,
    No. 2:09-489, 2011 WL 9133115 (N.D. Ala. Sept. 22, 2011) .......................18

*Slantis v. Capozzi & Assocs., P.C.*,
    No. 1:09-CV-00049-CCC, 2010 WL 4878846 (M.D. Pa. Aug. 10,
    2010) report and recommendation adopted, No. 1:09-CV-049,
    2010 WL 4853672 (M.D. Pa. Nov. 23, 2010)................................................10

*Stevenson v. TRW Inc.*,
    987 F.2d 288 (5th Cir. 1993) .............................................................................8

*Summerfield v. Equifax Info, Servs. LLC*,
    264 F.R.D. 133 (D.N.J. Sept. 30, 2009) ............................................................9

*Walters v. Metro. Educ. Enters., Inc.*
    519 U.S. 202 (1997) ........................................................................................16

*Williams v. LexisNexis Risk Mgmt., Inc.*,
    No. 06-241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007)...............................9

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON CLAIMS I, II AND III

## STATUTES

15 U.S.C. § 1681g(a) ...............................................................2, 8, 10, 13

15 U.S.C. § 1681j(a) ...................................................................*passim*

15 U.S.C. § 1681j(a)(1)(A) ...............................................14, 16, 17

15 U.S.C. § 1681j(a)(1)(C)(i) .......................................................14

15 U.S.C. § 1681j(a)(2) .................................................................14

15 U.S.C. § 1681j(a)(3) .................................................................14

15 U.S.C. § 1681j(f) ......................................................................17

12 C.F.R. § 1022.136 ....................................................................14

12 C.F.R. § 1022.137 ..............................................................14, 17

12 C.F.R. § 1022.137(a)(1)(i) ................................................14, 17

12 C.F.R. § 1022.137(a)(2)(ii) ....................................................15

12 C.F.R. § 1022.137(a)(2)(iii)(B) ...............................................15

12 C.F.R. § 1022.137(e) ...............................................................15

16 C.F.R. § 610.3(a)(1) ................................................................14

Cal. Civ. Code § 1785.10 ....................................................2, 8, 12

Cal. Civ. Code § 1785.15 ....................................................2, 8, 12

Cal. Civ. Code § 1785.15(b) (1)-(4) ............................................13

Cal. Civ. Code § 1785.15(c) .........................................................13

## RULES

Fed. R. Civ. P 56(c)(2)..............................................................7, 13

Case No. 8:13-cv-00470

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON CLAIMS I, II AND III

Plaintiff Susan E. Moreland opposes Defendant Corelogic SafeRent, LLC's (SafeRent's) Motion for Summary Judgment on Claims I, II and III (Motion).  (Dkt. No. 72).  Defendant's Motion should be denied, and all of Plaintiff's claims -- including Counts I, II and III -- should proceed to trial.

# I.  INTRODUCTION

Plaintiff brought this class action lawsuit under the Fair Credit Reporting Act (FCRA) and the California Consumer Credit Reporting Agencies Act (CCRAA).  After SafeRent sold a highly inaccurate consumer report about Plaintiff to her prospective landlord, she was then forced her navigate through significant procedural barriers, and incur expenses as a result of those barriers, in order to request a copy of her consumer file.  Despite Plaintiff's repeated requests and  expending of funds that Defendant's onerous procedures require -- but which are not required by other consumer reporting agencies (CRAs) -- Defendant still failed to send Plaintiff a copy of her file, in violation of the FCRA.

SafeRent deliberately makes it difficult and costly for consumers to obtain copies of their files, even though the FCRA requires a streamlined request process and mandates that consumers have easy access to their files at least once every 12 months without charge.  The obvious advantage that SafeRent obtains through its corner-cutting practices is savings, in two distinct ways.  Defendant saves money and resources in not having to print and mail as many files to consumers and by processing and investigating fewer consumer disputes (as required by the FCRA) because fewer consumers receive and identify errors in their SafeRent files.

On May 27, 2014, Plaintiff moved for certification of two distinct classes of consumers who were similarly affected by Defendant's burdensome file disclosure request procedures.  (Dkt. No. 73).  The first proposed class consists of consumers nationwide to whom Defendant never sent a copy of their SafeRent files because of

SafeRent's evasive and burdensome procedures.[1]  The second proposed class includes consumers nationwide who expend funds because of Defendant's burdensome procedures in connection with their attempts to obtain a purportedly free copy of their SafeRent files.

Although not contemplated or approved in the original scheduling order in this matter, Defendant moved for partial summary judgment after it saw Plaintiff's class certification motion, and only with respect to the claims that Plaintiff seeks to certify. In doing so, Defendant mischaracterizes Plaintiff's claims.

Defendant's Motion erroneously assumes that Plaintiff's claim under FCRA section 1681g(a) is that an employee at SafeRent was careless on one occasion in mishandling one of Plaintiff's file requests.  The factual record, however, plainly reveals that it is Defendant's corporate practices and well-designed obstacles that explain why Plaintiff and many others were never able to obtain a copy of their SafeRent files despite their repeated requests and the clear requirements of FCRA section 1681g(a).

Defendant also suggests that because SafeRent did not directly bill her for the file she never received, Plaintiff cannot state a claim under FCRA section 1681j(a). Plaintiff, however, never claimed that Defendant billed her for her file.  Rather, she claims that Defendant's onerous and costly procedures fall well short of the streamlined process required by FCRA section 1681j(a), and followed by many other CRAs, and as a result undermine the ability of consumers to obtain annual file disclosures that are truly without charge.

---

[1] Plaintiff also moved to certify a subclass of California consumers who were not sent their file disclosures as requested, under the corollary provisions of the CCRAA, sections 1785.10 and 1785.15.

Under the appropriate legal standard and in light of the facts relevant to the claims actually asserted, Defendant's Motion must be denied.

## II.   FACTS [2]

### A. The Experience of Plaintiff Susan E. Moreland

In April 2012, SafeRent sold a highly inaccurate consumer report about Plaintiff Susan E. Moreland in connection with her application to rent a house.[3]   (Dkt. No. 73-1, Moreland Report; Dkt. No. 73-2 Moreland Dep. at 87:25-88:1).   The report attributed to Plaintiff multiple full names and last names that she never used, identified her as multiple different men although she is a woman, and included numerous inaccurate previous addresses.   (Dkt. No. 73-2, Moreland Dep. at 91:25–92:5, 92:23–93:15, 94:16–95:11, 95:23–96:6, 96:16–22, 130:7–12, 136:9–16, 137:9–25).   The prospective landlord saw a problem regarding Plaintiff's identity due to the inaccurate SafeRent report, but ultimately rented to Plaintiff and her boyfriend because they had applied jointly.   (Dkt. No. 3, Ramos Dep. at 77:14–25, 47:25–48:9).

After being notified of the existence of these multiple aliases and other serious inaccuracies, Plaintiff attempted to correct the problem.   (Dkt. No. 73-2, Moreland Dep. at 102:11–105:10).   Plaintiff sent a letter to Defendant identifying the inaccuracies in her report in approximately April 2012, but received no response. (*Id.*).   She also contacted SafeRent directly through its website by submitting an electronic form, but again received no response.   (*Id.* at 105:11-107:4).   When her multiple attempts to reach SafeRent proved unsuccessful, Plaintiff sought the assistance of counsel to write a letter to SafeRent requesting her complete consumer file.   (*Id.* at 153:8-154:5; Dkt. No. 73-4, 10/19/2012 Letter).   In the letter, Plaintiff included her full name and address, Social

---

[2] The factual background of this case is set forth in further detail in Plaintiff's motion for class certification.   (Dkt. No. 72, pp. 2-8).

[3] The Court has already affirmed that the report at issue in this case is a consumer report as defined by the FCRA. (Dkt. No. 51).

Security number, date of birth, and her prior married name.  (Dkt. No. 73-4).  Despite the clarity of the letter and the comprehensive information included therein, SafeRent again did not send Plaintiff a copy of her file disclosure.  (Dkt. No. 73-2, Moreland Dep. at 156:21-24).

Discovery has revealed that although the letter was mailed to one of Defendant's published and established addresses for receiving consumer correspondence, an office in Poway, California, it languished there for over three months until it was forwarded to Defendant's office in Rockville, Maryland.  (Dkt. No. 73-5, Small Dep. at 77:9-78:3).  SafeRent's records confirm that no one responded to Plaintiff's request during those three months.  (*Id*. at 76:18–77:8, 77:25–78:15, 82:21–83:7).

Even after Plaintiff's letter reached the Rockville office, however, SafeRent still failed to send Plaintiff her file disclosure.  Instead, despite Plaintiff's specific request for "everything in [her] consumer file," Defendant sent Plaintiff a letter explaining that she had provided "insufficient information" to process her request, along with a form for her to fill out, requiring her to provide even more information and authentication documentation.  (Dkt. No. 73-4, 10/19/2012 Letter; Dkt. No. 73-5, Small Dep. at 87:3–15; Dkt. No. 73-6).  According to Defendant's corporate representative, SafeRent employees reviewing consumer correspondence were not instructed to read the contents of letters they received from the Poway office, a policy that led to SafeRent processing Plaintiff's letter as a dispute of information rather than a request for her file.  (Dkt. No. 73-5, Small Dep. at 83:25–85:1, 90:23–91:2, 92:3–24).

Still seeking a copy of her SafeRent file, Plaintiff returned to the SafeRent website, where she obtained Defendant's Consumer Disclosure Request Form, known in this litigation as the CRD-001 Form.  (Dkt. No. 73-2, Moreland Dep. at 123:10-25.; Dkt. No. 73-7).  The instructions for that lengthy form require consumers to include in their correspondence:

- Photocopy of a valid driver's license, non-driver's license **OR** state, federal or military government-issued photo ID.

Alternatively, you may provide a photocopy of <u>two (2)</u> of the following pieces of identification:

- Social Security Card or ITIN

- Non-Government issued photo ID (such as Employment ID or Student ID)

- Recent Utility Bill (electric, gas or telephone bill)

(Dkt. No. 73-7 at SR000080 (emphasis in original)).

Plaintiff followed the instructions on the Consumer Disclosure Request Form, made copies of her identification documents, drove to the post office, and paid for postage to send the request for her file to SafeRent. (Dkt. No. 73-2, Moreland Dep. at 123:10-25). Once again, however, SafeRent did not respond to Plaintiff or provide her with a copy of her file. (*Id.* at 126:11-12). Although Plaintiff's requests, including that made using Defendant's proprietary request form, contained sufficient information to identify her, SafeRent never sent Plaintiff the contents of her file. (Dkt. No. 73-5, Small Dep. at 82:21–83:7, 87:3–25).

SafeRent's burdensome and convoluted procedures for handling consumer file requests cost Plaintiff time and money in trying to obtain her file after SafeRent failed to respond to her first request. (Dkt. No. 80-1, Moreland Dep. at 187:19-190:23). Defendant's failure to send Plaintiff a copy of her consumer file upon request also caused her significant stress. (Dkt. No. 73-2, Moreland Dep. at 101:21-102:10, 108:15-20, 123:4-6). She was understandably worried about the inaccurate information in her SafeRent file, and wanted to correct the problem and prevent inaccurate information from being further reported in the future. (*Id.*).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON CLAIMS I, II AND III

### B. SafeRent's Uniform and Cumbersome System for Handling Consumer File Requests

Plaintiff's experience was not unusual. SafeRent maintains uniform, deliberately-adopted procedures purportedly for providing consumers with copies of their files. (Dkt. No. 73-5, Small Dep. at 22:3–23:24, 28:7–29:17). Unlike other national CRAs, which maintain procedures allowing consumers to request their consumer files over the telephone and on the Internet, SafeRent's procedures revolve around the use of the CRD-001 Form. (*Id.*; Ex. A, Declaration of Evan Hendricks (Hendricks Decl.)).

Although Defendant maintains a toll-free telephone number, consumers who call the number are sent into a "phone tree," an automated system by which consumers receive a series of message prompts, one of which consumers are instructed to select if they want to obtain a copy of their file disclosure. (Dkt. No. 73-5, Small Dep. at 35:11–38:20). If consumers select the "file-disclosure" prompt, they are then directed to an automated message instructing them to leave a message with their personal identifying information. (*Id.*). In response to these messages, SafeRent will not send the consumers their file disclosures, but instead will send the CRD-001 Form which instructs consumers to fill out the information and supply the documentation described on it. (*Id.* at 36:7–10, 38:3–20, 45:6–47:24, 51:25–52:22). Thus, all consumers who request their file disclosures by telephone -- even if they provide their identifying information -- were not provided with them, but instead are instructed to provide the documentation outlined on the CRD-001 Form and incur the accompanying expenses in complying with the Form's requirements.

Consumers who attempt to order their file disclosures through the Internet are subjected to the same process. Defendant's website instructs consumers who wish to order their file disclosures to download the CRD-001 Form and send it in along with the specified documentation. (*Id.* at 36:15–37:5). For consumers who are somehow

able to find SafeRent's fax number or write to SafeRent directly, SafeRent will sometimes send them their file disclosures, while at other times it sends the CRD-001 Forms.  (*Id*. at 31:17–32:11).

As such, the vast majority of consumers who request file disclosures from SafeRent are instructed to provide and use the CRD-001 Form and supply the documentation it requires, even before SafeRent attempts to determine whether it can identify the requesting consumer in its database using a simpler, streamlined process. Other CRAs have established disclosure-request procedures which allow millions of consumers to obtain their consumer files instantly on the Internet or by calling a toll-free number, without requiring consumers to incur expenses or submit documentation. (Ex. A, Hendricks Decl.).

Ironically, when a *paying* customer wants to buy a consumer report, SafeRent does not require the CRD-001 Form or the same level of information in order to identify the consumer and deliver his or her file.  (Ex. B, Doyle Dep. at 52:4-54:17).  Although SafeRent allows paying customers to enter minimum identifying information into an online form in order to obtain a report on a consumer, it does not provide a similar option for consumers seeking their free file disclosure.  (*Id.*; Dkt. No. 73-5, Small Dep. at 36:15–37:5).

**III.   STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(c)(2), a motion for summary judgment will only be granted if:  "The pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."   FED. R. CIV. P. 56(c)(2) (revised as of Dec. 1, 2009).  A court may not, at the summary judgment stage, weigh evidence or make credibility decisions.  These tasks are left to the fact-finder. *See generally Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23 (1986)).

## IV.   ARGUMENT AND AUTHORITIES

### A. Defendant Is Not Entitled To Summary Judgment On Plaintiff's Claims Under FCRA Section 1681g

Defendant seeks summary judgment on Plaintiff's claim that SafeRent failed to provide a copy of her consumer file upon request in violation of FCRA section 1681g(a) and CCRAA sections 1785.10 and 1785.15 despite admitting its failure to provide Plaintiff's file upon request, because (1) Plaintiff allegedly suffered no actual damages, and (2) because SafeRent's non-compliance was supposedly not willful. (Dkt. No. 79, Def. Mem. at pp. 10-14).  Because this case presents genuine issues of material fact regarding Plaintiff's damages and the willful nature of Defendant's non-compliance, Defendant's Motion should be denied.

### 1. Actual Damages

Actual damages available under the FCRA can be economic but are not strictly limited to monetary damages. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *Levine v. World Fin. Network Nat'l Bank,* 437 F.3d 1118, 1125 (11th Cir. 2006); *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998); *Philbin v. Trans Union Corp.*, 101 F.3d 957, 962 n.3 (3d Cir. 1996); *Fregoso v. Wells Fargo Dealer Servs., Inc.*, No. 11-10089, 2012 WL 4903291, at *6 (C.D. Cal. Oct. 16, 2012).

FCRA jurisprudence recognizes the harm that occurs when CRAs deprive consumers of valuable information in their files to which they are entitled by law, and which is vital to fix a known problem with a consumer report. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 719 (3d Cir. 2010) (upholding actual damages for FCRA violations explicitly including failure to provide a copy of a consumer report upon request to consumer seeking to remedy inaccurate information on report). Furthermore, time spent trying to resolve problems on a consumer report is a part of cognizable actual damages under the FCRA. *Id.* (citing *Stevenson v. TRW Inc.*, 987 F.2d 288, 297 (5th Cir. 1993)).

Defendant's assertion that Plaintiff cannot show that she suffered any cognizable damages is mistaken.  SafeRent's refusal to provide to Plaintiff a copy of her file, despite her extensive and repeated efforts, required Plaintiff to expend time, money, and effort after Defendant's initial failures to disclose, and caused her to suffer significant distress as she tried to "clean up the mess" of her background report, which SafeRent alone created.  (Dkt. No. 73-2, Moreland Dep. at 101:21-102:10, 108:15-20, 123:4-6).

Further, in her follow-up efforts to obtain her file, made after her initial requests to SafeRent went unanswered, Plaintiff expended money to make copies of her identification documents, drove to the post office, and paid for postage to send the request for her file to SafeRent using the required CRD-001 Form.  (Dkt. No. 73-2, Moreland Dep. at 123:10-25).  Plaintiff testified that those out of pocket expenses are less than $20.00. (Dkt. No. 80-1, Moreland Dep. at 190:5-23).

While the amount of Plaintiff's actual damages may be small and/or difficult to quantify, in a case such as this, that is precisely the purpose FCRA statutory damages are intended to accomplish.  *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).  And while Plaintiff may elect to pursue statutory damages for this claim, which requires no showing of actual damages,[4] there can be no doubt that under the

---

[4] The FCRA statutory damages that Plaintiff seeks for herself and the Classes here are available even without any proof of actual harm.  *See Robins v Spokeo, Inc.,* 742 F.3d 409, 413-414 (9th Cir. 2014) (FCRA plaintiffs may recover statutory damages of $100-$1,000 for willful violation even absent a showing of actual damages); *Beaudry v. Telecheck Servs., Inc.,* 579 F.3d 702, 707 (6th Cir. 2009) (same). Multiple federal courts have found no difficulty in certifying FCRA statutory damages class actions because no individualized showing of harm is required.  *Bateman v. Am. Multi-Cinema, Inc.,* 623 F.3d 708, 718 (9th Cir. 2010); *Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008)*; Acosta v. Trans Union,* 243 F.R.D. 377, 385 (C.D. Cal. 2007);  *Williams v. LexisNexis Risk Mgmt., Inc.*, No. 06-241, 2007 WL 2439463, at *4-6 (E.D. Va. Aug. 23, 2007); *Chakejian v. Equifax Info. Servs., LLC,* 256 F.R.D. 492, 498, 500-01 (E.D. Pa. 2009); *Summerfield v. Equifax Info, Servs. LLC,* 264 F.R.D. 133, 139, 142 (D.N.J. Sept. 30, 2009).

record here, she has proffered evidence of cognizable FCRA actual damages. Defendant's Motion must therefore be denied.

### 2. Willfulness

SafeRent admits that it failed to provide Plaintiff with a copy of her consumer file upon request, but claims that its failure was due to "human error." (Dkt. No. 79, Def. Mem. at p.10). Defendant thus contends that no reasonable jury can find a willful FCRA violation in this case.[5] This argument fails as discussed below.

Courts are legion in concluding that willfulness is ill-suited for summary judgment, roundly agreeing that, because it questions one's state of mind, it is best left to the jury. *See Edwards v. Toys "R'" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) (collecting cases from the Ninth and Eleventh Circuits so holding).[6] The plain text of FCRA section 1681g clearly provides in pertinent part that: "Every consumer reporting agency shall, upon request . . . clearly and accurately disclose to the consumer: (1) All information in the consumer's file at the time of the request…." 15 U.S.C. § 1681g(a). No reasonable reading of the statute suggests that a CRA such as Defendant may fail to provide a consumer with their file upon request.

As demonstrated by the holdings of multiple courts, including Circuit Courts, it is well established that CRAs must provide all information in a consumer's file upon any request. *Cortez*, 617 F.3d at 711; *Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 940-42 (7th Cir. 2007); *Larson v. Trans Union, LLC*, No. 12-5726, 2014 WL

---

[5] Willful violations of the FCRA include actions taken in reckless disregard of the rights of consumers. *Robins*, 742 F.3d at 411 n.1; *Bateman v. Am. Multi-Cinema, Inc*. 623 F.3d 708, 711 n.1 (9th Cir. 2010).

[6] *Hammer v. JP's Sw. Foods, L.L.C.*, 739 F. Supp. 2d 1155, 1167 (W.D. Mo. 2010) (reaching same conclusion, and collecting cases); *Cowley v. Burger King Corp.*, No. 07-21772-CIV, 2008 WL 8910653, at *4 (S.D. Fla. May 23, 2008) (same); *Slantis v. Capozzi & Assocs., P.C.*, No. 1:09-CV-00049-CCC, 2010 WL 4878846, at *4 (M.D. Pa. Aug. 10, 2010) report and recommendation adopted, No. 1:09-CV-049, 2010 WL 4853672 (M.D. Pa. Nov. 23, 2010) (refusing to grant summary judgment on willfulness because of the highly fact-specific nature of the inquiry).

1477705, at *3 (N.D. Cal. Apr. 14, 2014); *Meyer v. Nat'l Tenant Network, Inc.*, ___ F. Supp. 2d ___, No. 13-3187, 2014 WL 197773, at *3-4 (N.D. Cal. Jan. 17, 2014). *See also Miller v. Trans Union, LLC*, No. 12–1715, 2013 WL 5442059, at *5 (M.D. Pa. Sept. 27, 2013) (Section 1681g requires CRAs to clearly and accurately provide all information contained in a consumer's file upon request).  Courts have found willful violations where defendants' policies and procedures "are cursory, do not appropriately address the specifics of individual disputes, or otherwise act to exclude relevant information." *Fregoso*, 2012 WL 4903291, at *10.

Defendant seeks to avoid liability by mischaracterizing its failure to provide Plaintiff with her SafeRent file as the anomalous result of "human error."  Defendant's failure to provide Plaintiff with a copy of her complete file despite her multiple efforts extends well beyond an isolated incident of human error promptly cured.  *See, e.g.*, *Boris v. Choicepoint Servs., Inc.*, 249 F. Supp. 2d 851, 862 (W.D. Ky. 2003) (upholding a finding of a willful violation of the FCRA).  Rather, Defendant employs deliberately designed policies and procedures which depart significantly from industry norms, and which make it difficult (if not impossible) and costly for consumers to obtain copies of their consumer files.  As Defendant acknowledges, willful violations of the FCRA often arise from the use of such inadequate procedures.  (Dkt. No. 79, Def. Mem. at 10-11).

Contrary to Defendant's assertions, Plaintiff has proffered evidence here of systematic deficiencies in SafeRent's file disclosure process, raising genuine issues of material fact.  As described in Plaintiff's motion for class certification, Defendant's policies are uniform and onerous.  (Dkt. No. 73-12, Barnard Dep. at 18:23-20:21, 65:15-21 (describing uniform policies)).  Consumers seeking copies of their SafeRent files cannot obtain them over the phone, even when they have provided sufficient identifying information in a voicemail message.  (Dkt. No. 73-5, Small Dep. at 36:7–10, 38:3–20, 45:6–47:24, 51:25–52:22).  Instead of receiving their file, consumers who

call are instructed to fill out the CRD-001 and send in the required documentation. (*Id.*). Consumers who visit Defendant's website are likewise unable to obtain their consumer files, and are subjected to the same process. (*Id.* at 36:15-37:5). Even when consumers write directly to SafeRent, it will at times respond by sending the CRD-001 Form instead of the consumer's file disclosure. (*Id.* at 31:17-32:11).

Plaintiff's experience is entirely typical given Defendant's onerous file-disclosure policies, which are contrary to industry standards. Plaintiff was unable to obtain her SafeRent report through Defendant's website, or by writing directly to SafeRent. (Dkt. No. 73-2, Moreland Dep. at 102:11-107:4). Even after she expended time, effort, and money to provide the documentation required by the SafeRent's CRD-001 Form, Defendant still did not send her a copy of consumer file. (*Id.* at 123:10-25, 126:11-12). Further, Defendant cannot possibly claim that its employees acting as instructed -- by failing to read the contents of Plaintiff's file-request letter -- and carrying out their duties by failing to send Plaintiff her full file, as Defendant planned, is some sort of "human error."

Defendant's claim that Plaintiff's case is one of isolated error is thus unavailing given that Defendant's failure to send Plaintiff the contents of her file upon request was exactly as Defendant planned and trained its employees. Based on the current record, a reasonable jury here could find that Defendant's non-compliance was reckless, and thus in willful violation of the FCRA. Defendant's motion for summary judgment must therefore be denied.

### 3. Plaintiff's CCRAA Claim Must Also Proceed To Trial

Defendant asserts that Plaintiff's claim under CCRAA sections 1785.10 and 1785.15 should be dismissed for the same reasons as Plaintiff's FCRA section 1681g claims. (Dkt. No. 79, Def. Mem. at p.14). On the contrary, because Plaintiff has demonstrated that there are genuine issues of fact with respect to her FCRA claims,

Defendant's motion for summary judgment on the analogous CCRAA claim should likewise be denied.

Indeed, the plain language of the CCRAA supports the conclusion that Defendant's disclosure request process is impermissibly burdensome.   As Defendant notes, under the CCRAA, CRAs may require consumers requesting their files to provide "proper identification."  *See* Cal. Civ. Code § 1785.15(b)(1)-(4).   Unlike the FCRA, however, the CCRAA defines "proper identification" in the statutory text, to mean "information generally deemed sufficient to identify a person."  *Id.* at § 1785.15(c).   The definition further, specifies that "*[o]nly* if the consumer is unable to reasonably identify himself or herself with the information described above may a [CRA] require additional information" from the consumer to verify his or her identity. *Id.* (emphasis added).   Defendant is able to sufficiently identify consumers using first name, last name, address, Social Security number, and date of birth, without the need for photocopies of bills, licenses, or other verifying documentation.  (Dkt. No. 73-5, Small Dep. at 82:31-83:7, 87:3-25).   Plaintiff unquestionably provided just such information in her letter and completed CRD-001 Form.   Other nationwide CRAs routinely provide consumer files without requiring such information.   (Ex. A, Hendricks Decl.).   Without question, Defendant's demands for far more information than is necessary or permissible under the CCRAA represents a significant departure from industry norms.

For these reasons as well as the reasons discussed above with respect to Plaintiff's FCRA section 1681g(a) claim, Defendant's Motion must be denied.

## B. Defendant Is Not Entitled to Summary Judgment on Plaintiff's Claim Under FCRA Section 1681j(a)

Defendant also seeks to avoid liability for its burdensome file disclosure request process by seeking summary judgment on Plaintiff's claim under FCRA section 1681j(a).   Defendant wrongly attempts to reduce Plaintiff's claim to the single word

"charge" in section 1681j(a)(1)(A), as though the claim at issue is that Defendant presented Plaintiff with a bill for her consumer report.  In truth, Plaintiff claims that Defendant has failed to establish a process for responding to consumer file requests promptly, without waste, without hassle, and without charge to the consumer as required by the entirety of FCRA section 1681j(a).

### 1. A Reasonable Jury Could Find In This Case That Defendant's Disclosure Process Is Not Streamlined

FCRA section 1681j requires CRAs to "make all disclosures pursuant to section 1681g of [the FCRA] once during any 12-month period upon the request of the consumer and without charge to the consumer."  15 U.S.C. § 1681j(a)(1)(A).  But it does not end there, as Defendant suggests.  Section 1681j also requires CRAs to respond to consumer requests within fifteen days (§ 1681j(a)(2)), and contains provisions specific to disclosures when a consumer has requested reinvestigation of information (§ 1681j(a)(3)).  Most importantly, Section 1681j(a)(1)(C)(i) mandates the establishment of "a streamlined process for consumers to request consumer reports" and directs the Federal Trade Commission (FTC) to prescribe regulations regarding this process.

The applicable regulations, issued first by the FTC and then adopted by the Consumer Financial Protection Bureau (CFPB) when it assumed primary jurisdiction over the FCRA, provide specific guidance on the standards of this "streamlined process."  *See* 16 C.F.R. § 610.3(a)(1) (2011) (FTC regulations); 12 C.F.R. §§ 1022.136 and 1022.137 (2012 (CFPB regulations).  The regulations specify that the streamlined process must not: "<u>interfere with</u>, <u>detract from</u>, contradict, or otherwise <u>undermine</u> the ability of consumer to obtain annual file disclosures . . . ."  12 C.F.R. § 1022.137(a)(1)(i) (emphasis added).

Further, CRAs must "[b]e designed, funded, implemented, maintained, and operated in a manner that … [c]ollects only as much personal information as is

reasonably necessary to properly identify the consumer" making the request.  *Id.* at 1022.137(a)(2)(ii).  CRAs such as Defendant may not require consumers to produce more identifying information than they need to match the consumer to their records.  Also, the regulations require CRAs to either accept or redirect disclosure requests sent through methods other than the established streamlined process.  *Id.* at 1022.137(e).

SafeRent's uniform procedures concerning to consumer file requests detract from and undermine the ability of consumer to obtain their files, in violation of FCRA section 1681j(a) and the applicable regulations.  As described above, consumers are unable to obtain their SafeRent files over the phone or Internet, although easy and quick procedures are standard practice in the consumer reporting industry.  (Ex. A, Hendricks Decl.).[7]  Further, as noted above, if a customer is willing to pay for the information SafeRent maintains on a consumer, the process is exceedingly easy.

Instead of the mandated streamlined process, SafeRent requires all consumers attempting to request their files by phone or Internet to gather, copy, and mail to Defendant (all at the consumer's expense) extensive documentation to accompany the CRD-001 Form.  (Dkt. No. 73-7 at SR000080).  In fact, SafeRent requires the submission of this information despite the fact that it can produce file disclosures using only name, Social Security number, address, and date of birth, and sometimes does so for written requests.  (Dkt. No. 73-5, Small Dep. at 31:20-32:11).  SafeRent's standardized use of the CRD-001 Form requiring additional, unnecessary documentation serves as a barrier and constitutes a detraction that undermines consumers' ability to obtain their files, in violation of FCRA section 1681j(a).

The notion that Defendant needs the completed CRD-001 Form and photocopies of additional information in order to properly identify consumers in order to provide a

---

[7] In fact, the CFPB's regulations explicitly anticipate that CRAs will have a "Web site request method" for consumer disclosures.  *See* 12 C.F.R. 1022.137(a)(2)(iii)(B).

file disclosure to them is not credible.  As Plaintiff's expert report establishes, along with evidence from the websites of other major CRAs, a much simpler, quicker and cost-effective process is possible and is in fact routinely used by the credit reporting industry.  (Ex. A, Hendricks Decl.).  Moreover, Defendant itself must acknowledge that when it comes to selling reports to its customers for a profit, it needs minimal information -- which it allows customers to submit solely over the Internet -- in order to identify the consumer who is the subject of the report.  (Ex. B, Doyle Dep. at 52:4-54:17).  Certainly, SafeRent's customers do not need to submit anything similar to the CRD-001 Form and photocopies of supporting documents in order to obtain a consumer's report.  (*Id.*).  At a minimum, under the facts of this case, there exists a genuine issue of material fact as to whether the CRD-001 Form and Defendant's procedures are impermissibly burdensome and undermine the streamlined process required by the FCRA.

### 2. Defendant's Disclosure Process Imposes Charges On Consumers Seeking Their Consumer Files

In addition to departing substantially from the "streamlined process" requirements of FCRA section 1681j(a) generally, Defendant's burdensome disclosure policies impose charges on consumers such as Plaintiff.

The word "charge," as used in section 1681j(a), is not a defined term in the FCRA.  When a term is not defined by a statute, it is assumed to bear its "ordinary, contemporary, common meaning." *Walters v. Metro. Educ. Enters., Inc.* 519 U.S. 202, 207 (1997).

Contrary to Defendant's bald assertion, "charge" is broadly defined to encompass several concepts, beyond the direct billing of a fee.  Black's Law Dictionary provides seven different definitions of "charge" when used as a noun (as it is in section 1681j(a)(1)(A)), which include "an assigned duty or task; a responsibility," an "encumbrance," or, tellingly, "price, cost or <u>expense</u>."  (Black's Law Dictionary, 9th

ed. 2009) (emphasis added)).  Merriam Webster likewise ascribes seven different meanings to the noun "charge," including "obligation," "requirement," and "expense." (*See* http://www.merriam-webster.com/dictionary/charge).

Here, SafeRent's onerous disclosure-request process imposes expenses, obligations, and encumbrances upon consumers seeking their SafeRent files by requiring them to submit unnecessary documentation and incur the costs of photocopying, transportation, and postage in order to do so.  (*See* Dkt. No. 73-2, Moreland Dep. at 123:10-25).  Far from being "without charge" and "streamlined," Defendant's file request procedures "interfere with, detract from, contradict, [and] otherwise undermine the ability of consumer to obtain annual file disclosures . . . ," 12 C.F.R. § 1022.137(a)(1)(i), in direct contravention to the dictates of the FTC and CFPB.

To limit the meaning of the term "charge" to a fee demanded by a CRA and paid by a consumer, as Defendant suggests, unduly narrows the requirements of FCRA section 1681j(a).  This constrained reading undermines the remedial consumer-protection purposes of the FCRA, despite the fact that the Ninth Circuit has long adopted a policy of liberal construction of the FCRA.  *Guimond*, 45 F.3d at 1333.

FCRA section 1681j(a) as a whole is aimed at preventing CRAs from erecting unnecessary barriers to consumers seeking their consumer files.  Although the section addresses the "fee" aspect of such barriers by limiting the permissible cost of a consumer report in section 1681j(f), this subpart cannot be read in isolation from the rest of section 1681j, which requires a streamlined process and details the circumstances when consumers are entitled to a free copy of their file.  When a CRA has a truly streamlined and user-friendly consumer disclosure process, no other type of obligation, requirement, or expense is placed on the consumer making the request.

Defendant's sole citation in support of its interpretation of section 1681j(a)(1)(A) is an unreported case from the U.S. District Court for the Northern District of Alabama which is neither binding nor persuasive.  *Singletery v. Equifax*

*Info. Servs., LLC*, No. 2:09-489, 2011 WL 9133115 (N.D. Ala. Sept. 22, 2011). *Singletery* involved an entirely different request process, in which the defendant CRA's policies did not require consumers, at the outset, to provide identity documentation. *Id.* at *6-8.   Rather, the consumer was unable to obtain a copy of his file disclosure due to a mismatch between the data provided by the consumer and that maintained in the CRA's files. *Id.* By contrast, SafeRent's standard procedures instruct the vast majority of consumers who request their files, such as Plaintiff, to provide the CRD-001 Form and the documentation it requires, despite the fact that it is capable of identifying consumers without such documentation.   Furthermore, Defendant here has acknowledged that Plaintiff provided more than enough information to identify her properly, but it still failed to provide her with a copy of her file.  (Dkt. No. 73-5, Small Dep. at 82:21-83:7, 87:3-25).

At the end of the day, a reasonable jury could easily find under the circumstances of this case that Defendant has erected a deliberately burdensome process (rather than a streamlined one) for consumers to request their files and that Defendant's practices undermine the ability of consumers to obtain their annual file disclosure truly without charge.   The Court should therefore conclude that summary judgment on Plaintiff's FCRA section 1681j(a) claim is inappropriate.

## V.   CONCLUSION

For all the foregoing reasons, this Court should deny Defendant's motion for partial summary judgment on Counts I, II and III.

Date: August 11, 2014                              Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

*/s/ John Soumilas*
James A. Francis (*pro hac vice*)
jfrancis@consumerlawfirm.com

John Soumilas (*pro hac vice*)
jsoumilas@consumerlawfirm.com
David A. Searles (*pro hac vice*)
dsearles@consumerlawfirm.com
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia PA 19110
Telephone:  (215) 735-8600
Facsimile:  (215) 940-8000

Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
cbc@caddellchapman.com
Craig C. Marchiando (SBN 283829)
ccm@caddellchapman.com
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX  77010
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906

Leonard A. Bennett (*pro hac vice*)
lenbennett@clalegal.com
**CONSUMER LITIGATION ASSOCIATES,
P.C.**
763 J. Clyde Morris Blvd., Suite 1A
Newport News VA 23601
Telephone:  (757) 930-3660
Facsimile:  (757) 930-3662

***Attorneys for Plaintiff***

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON CLAIMS I, II AND III

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 11, 2014, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *John Soumilas*
John Soumilas

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON CLAIMS I, II AND III