1   NANCY R. THOMAS (CA SBN 236185)
2   NThomas@mofo.com
    MORRISON & FOERSTER
3   555 West Fifth Street, Suite 3500
    Los Angeles, CA 90013
4   Phone: (213) 892-5561
    Fax: (213) 892-5454
5
    RONALD I. RAETHER (admitted *pro hac vice*)
6   rraether@ficlaw.com
    DONALD E. BURTON (admitted *pro hac vice*)
7   dburton@ficlaw.com
    FARUKI IRELAND & COX P.L.L.
8   500 Courthouse Plaza, S.W.
    10 North Ludlow Street
9   Dayton, OH 45402-1818
    Phone: (937) 227-3733
10  Fax: (937) 227-3717

11  Attorneys for Defendant
    CORELOGIC SAFERENT, LLC
12

13               UNITED STATES DISTRICT COURT

14               CENTRAL DISTRICT OF CALIFORNIA

15

16  SUSAN E. MORELAND, on behalf       Case No. SACV 13-00470 AG (ANx)
    of herself and all others similarly
17  situated,                          **MEMORANDUM OF CORELOGIC
                                        SAFERENT, LLC IN OPPOSITION
18               Plaintiff,            TO PLAINTIFF'S MOTION FOR
                                        CLASS CERTIFICATION**
19        v.
                                        Hearing Date:    September 22, 2014
20  CORELOGIC SAFERENT, LLC,            Hearing Time:    10:00 a.m.
                                        Location:        Courtroom 10D
21               Defendant.
                                        Hon. Andrew J. Guilford
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................... 1

II.  FACTS ........................................................................................... 3

    A.   Overview ............................................................................ 3

    B.   Plaintiff's Unique Circumstances ..................................... 4

    C.   SafeRent Individually Evaluated Each File Request to Determine Whether The Consumer Had Provided "Proper Identification". ................................................... 5

    D.   SafeRent Never Demanded or Collected A Charge From Consumers As A Condition Of Responding To File Disclosure Requests. ........................................... 7

III. PLAINTIFF'S PROPOSED CLASSES ARE INCONSISTENT WITH THE STATUTES ON WHICH HER CLAIMS ARE BASED, AND CERTIFICATION SHOULD BE DENIED ON THAT BASIS ALONE. ................................................................. 7

IV.  PLAINTIFF HAS FAILED TO DEMONSTRATE THAT ANY OF THE CLASSES IS ASCERTAINABLE. .............................. 9

V.   PLAINTIFF HAS NOT MET HER BURDEN OF ADDUCING EVIDENCE TO SUPPORT THE ELEMENTS OF RULE 23. ....... 10

    A.   Plaintiff Has Failed To Demonstrate That There Are Numerous Persons With Claims Cognizable Under The Statutes Sued Upon (Rule 23(a)(1). ................................ 11

    B.   Plaintiff Has Failed To Demonstrate That Common Questions Exist And Would Predominate At Trial Of The Asserted Claims In a Class Action (Rules 23(a)(2) and 23(b)(3)). ........................................................................ 12

        1.   Plaintiff has failed to establish that common questions exist (Rule 23(a)(2). ...................................... 12

1

2

3

    2.   Plaintiff has failed to establish that common questions
         would predominate at trial of the asserted claims in
         a class action (Rule 23(b)(3))..................................................... 14

C.   Plaintiffs Lacks The Typicality Required By Rule 23(a)(3)
     Because Her Individual Circumstance are Unique and Her
     Interest Differs From those of the Putative Classes........................19

D.   Plaintiff is not an Adequate Class Representative Under
     Rule 23(a)(4)......................................................................................25

E.   Plaintiff Has Failed to Provide a Method to Measure
     and Quantify Damages on a Classwide Basis (Rule 23(b)(3)).......27

F.   Plaintiff Has Failed to Demonstrate That Trial Of Her
     Claims As A Class Action Would be Superior To The
     Assertion of Individual Claims (Rule 23(b)(3)). .............................29

VI.   CONCLUSION .................................................................................29

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Antoninetti v. Chipotle Mexican Grill, Inc.,* No. C 02-5849 PJH,
2012 U.S. Dist. LEXIS 123102 (S.D. Cal. Aug. 28, 2012) .............................. 29

*Baas v. Dollar Tree Stores, Inc.,* No. C 07-03108, 2008 U.S. Dist.
LEXIS 119908 (N.D. Cal. Apr. 1, 2008) ........................................................ 25

*Berlowitz v. Nob Hill Masonic Mgmt., Inc.,* No. C-96-01241 MHP,
1996 U.S. Dist. LEXIS 22599 (N.D. Cal. Dec. 6, 1996) .................................. 8

*Braxton v Farmer's Ins. Grp.*, 209 F.R.D. 654 (E.D. Ala. 2002).................... 15

*Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546 (C.D. Cal. 2011)
(Guilford, J.)............................................................................................... 19, 25

*Brown v. Brewer*, No. CV 06-3731, 2009 U.S. Dist. LEXIS 47535
(C.D. Cal. May 29, 2009)................................................................................ 27

*Caldera v. J.M. Smucker Co.*, No. CV 12-4936, 2014 U.S. Dist.
LEXIS 53912 (C.D. Cal. Apr. 15, 2014) ........................................................ 15

*Campos v. ChoicePoint, Inc.*, 237 F.R.D. 485, (N.D. Ga 2006)...................... 15

*Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013)............................... 9

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 185 L. Ed. 515
(2013) ........................................................................................10-11, 27, 28

*Costello v. Chertoff*, 258 F.R.D. 600 (C.D. Cal. 2009) ..................................... 8

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ...................... 23

*Fendler v. Westgate-California Corp.*, 527 F.2d 1168 (9th Cir. 1975)............ 25

*Garrison v. Equifax Info., Servs., LLC,* No. 10-13990, 2012 U.S. Dist.
Lexis 52942 (E.D. Mich. Apr. 16, 2012)........................................................ 17

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ................................ 11, 12

*Gillespie v. Equifax Infor. Servs.*, No. 05-138) 2008 U.S. Dist.
LEXIS 82483 (N.D. Ill. Oct. 15, 2008).....................................................15-16

*Gomez v. Kroll Factual Data, Inc.*, No. 13-cv-0445, 2014 U.S. Dist.
LEXIS 51303 (D. Colo. Apr. 14, 2014)........................................................... 29

*Hanlon v. Chrysler Corp.*, 150 F. 3d 1011 (9th Cir. 1998) ............................. 15

*Hanon v. Dataproducts Corp.*, 976 F.2d 497(9th Cir. 1992) .................... 19, 20

iii

*Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013) ......................... 11

*In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555 (N.D. Cal. 2013) ... 14-15

*Legge v. Nextel Commc'ns, Inc.*, No. CV 02-8676 DSF (VBKx),
2004 U.S. Dist. LEXIS 30333 (C.D. Cal. June 25, 2004) ............................. 22

*Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003) ....... 8

*Marlo v. U.P.S.*, 639 F. 3d 942 (9th Cir. 2011) .......................................... 10

*Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239 (E.D.N.Y. 2012) .............. 15

*Menton v. Experian Corp.*, No. 02 Civ. 4687 (NRB, 2003
U.S. Dist. LEXIS 3325 (S.D.N.Y. Mar. 6, 2003) ..................................... 17

*Messner v. Northshore Univ. HealthSystem*, 669 F. 3d 802 (7th Cir. 2012).... 15

*Munoz v. PHH Corp.*, 2013 U.S. Dist. LEXIS 69306
(E.D. Cal. May 14, 2013) ........................................................... 27

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998) ................ 9

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1977) ............................. 10

*Ortiz v. McNeil-PPC, Inc.*, Nos. 07cv678-MMA(CAB),
08cv536-MMA(CAB), 2009 U.S. Dist. LEXIS 39584
(S.D. Cal. May 8, 2009) ............................................................... 8

*In re Quarterdeck Office Sys. Sec. Litig.*, No. CV 92-3970, 1993 U.S. Dist.
LEXIS 19806 (C.D. Cal. Sept. 30, 1993) ............................................ 27

*Rainbow Bus. Solutions v. Merch. Servs.*, No. C 10-1993 CW,
2013 U.S. Dist. LEXIS 179288 (N.D. Cal. Dec. 20, 2013) ......................... 19

*Schulein v. Petroleum Dev. Corp.*, No. SACV 11-1891 AG (ANx),
2014 U.S. Dist. LEXIS 71236 (2007) ................................................. 11

*Simon v. Ashworth Inc.*, No. CV 07-1324-GHK, 2007 U.S. Dist.
LEXIS 96131 (C.D. Cal. Sept. 28, 2007) ............................................ 25

*Singletery v. Equifax Info. Servs. LLC*, No. 2:09-cv-489-TMP,
2011 U.S. Dist. LEXIS 156215 (C.D. Cal. May. 19, 2014) ............ 5, 13, 14, 17,
.................................................................................... 18, 20, 28

*Soutter v. Equifax Information Services, LLC*, 498 Fed. App'x 260
(4th Cir. 2012) ........................................ 12, 20, 22, 23, 24, 28

*Stillmock v. Weis Mkts., Inc.*, 385 Fed. App'x 267 (4th Cir. 2010) ................ 29

*Stuart v. Radioshack Corp.*, No. C-07-4499 EMC,
2009 U.S. Dist. LEXIS 12337 (N.D. Cal. Feb. 5, 2009) ............................. 8

*Taylor v. Screening Reports, Inc.*, 294 F.R.D. 680 (N.D. Ga. 2013) .............. 13

iv

*Vasquez-Torres v. StubHub, Inc.*, No. CV 07-1328, 2008 U.S. Dist. LEXIS 22503 (C.D. Cal. Mar. 4, 2008)............................................................ 25

*Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011) ............................... 10, 12, 14

*Warth v. Seldin, 422 U.S. 490 (1975)* ................................................ 7-8

*Williams v. LexisNexis Risk Mgmt., Inc.*, No. 3:06-cv-241, 2007 U.S. Dist. LEXIS 62193 (E.D. Va. Aug. 23, 2007)....................... 16

*Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010)......................................................... 29

*Wolph v. Caer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011)............................ 9

## STATUTES

Cal. Civ. Code

§ 1785.10........................................................................ 16

§ 1785.15........................................................................ 16

§ 1785.15(a)...................................................................... 1

§ 1785.15(b).................................................................... 1, 7

§ 1785.31.................................................................... 23, 28

15 U.S.C.

§ 1681g.............................................................. 1, 5, 7, 17

§ 1681g(a).................................................................... 16

§ 1681h........................................................................ 1

§ 1681h(a)(1)............................................................... 5, 14

§ 1681j...................................................................... 13

§ 1681j(a)........................................................ 2, 3, 14, 18, 24

§ 1681k(a)(1)................................................................. 16

§ 1681n....................................................................... 28

§ 1681n(b)............................................................... 22-23, 28

# **RULES**

Fed. R. of Civ. P. 23 ................................................................ 2, 3, 10

Fed. R. of Civ. P. 23(a) ............................................................... 19

Fed. R. of Civ. P. 23(a)(1) ........................................................... 11

Fed. R. of Civ. P. 23(a)(2) ........................................................... 12

Fed. R. of Civ. P. 23(a)(3) ........................................................... 19

Fed. R. of Civ. P. 23(a)(4) ........................................................... 25

Fed. R. of Civ. P. 23(b) ............................................................... 27

Fed. R. of Civ. P. 23(b)(3) .............................. 1, 12, 14, 15, 27, 29

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.        INTRODUCTION

Plaintiff Susan Moreland ("Plaintiff") seeks to certify under Federal Rule of Civil Procedure 23(b)(3) three classes, which concern two sets of claims.  The classes for Claims I and II consist of persons who "made any request" for a full file disclosure from defendant CoreLogic SafeRent, LLC ("SafeRent") but did not receive one, with the class for the second claim limited to California residents.  The third class consists of persons who filled out a certain SafeRent form to request a full file disclosure.  (Claim III).  Plaintiff has failed to carry her burden as to any of the three classes.

Plaintiff's class definitions and allegations fail to take into account critical elements of her claims.  As to Claims I and II, Plaintiff nowhere addresses the uncontroverted point of law that when sections 1681g and 1681h are read together, it is apparent that a consumer reporting agency is permitted to provide full file disclosures only to persons who have first provided the consumer reporting agency with "proper identification."  The disclosure obligation of section 1681g is expressly "condition[ed]" upon the consumer's having "furnish[ed] proper identification" (section 1681h); this obligation is expressly "subject to [§ 1681h]," and section 1681h mandates that a consumer reporting agency "shall require . . . proper identification" from consumers requesting disclosures.  California Consumer Credit Reporting Agencies Act ("CCRAA"), § 1785.15(a) (Claim II), parallels § 1681g, of the FCRA by requiring a consumer reporting agency to provide a file at the consumer's request only upon furnishing of "proper identification."  Cal. Civil Code § 1785.15(b).  Plaintiff's "File Request" class definitions are thus overbroad, as they are based only on a consumer having made "any request," not on having made a request *and* having provided the "proper identification" the statutes require.  Even if Plaintiff is permitted to amend her complaint and the proposed class

1

definitions are revised to track the requirements of the statutes Plaintiff claims

SafeRent violated, it is clear that Plaintiff has not met and cannot meet her burden

of establishing the elements of Rule 23.  The question of whether any consumer

who did not receive a full file disclosure after requesting one raises predominating

individualized issues as to whether the identification furnished by the consumer

was proper, i.e., sufficiently detailed to allow SafeRent to match the requester to a

unique individual in their files and to confirm that the request was being made by

the subject consumer, rather than an impostor.  In addition, Plaintiff fails to adduce

evidence to establish that there are numerous persons who furnished proper

identification yet failed to receive full file disclosures, fails to establish that there

are any common issues, and fails to establish that her claims are typical of persons

who actually made file disclosure requests to SafeRent.

Plaintiff also has not met her Rule 23 burden as to a class to assert Claim III.

That Claim purports to state a claim under 15 U.S.C. § 1681j(a), which requires

consumer reporting agencies to provide consumers with full file disclosures

"without charge" under certain circumstances.  Plaintiff proposes a class for

Claim III consisting **not** of persons from whom SafeRent collected a disclosure fee

– SafeRent undisputably does not charge any fee-- but rather of all persons who

requested a full file disclosure from SafeRent using any version of a particular

SafeRent form.  Plaintiff's theory is that the effort consumers expended completing

various versions of SafeRent's forms constituted a prohibited "charge" for a full file

disclosure.  As explained in SafeRent's Motion For Summary Judgment (Docket

No. 79), Plaintiff misconstrues the statute:  the statute prohibits only the collection

of a fee as a precondition to provision of a full file disclosure, and SafeRent has

never collected any such fee.  The statute does not require consumer reporting

agencies to assure that file requests are free of costs to consumers, and plainly

leaves on consumers the cost of providing "proper identification" before they can

2

1   receive full file disclosures.  As with the classes proposed for Claims I and II, the

2   class proposed for Claim III is inconsistent with the statute on which the claim is

3   purportedly based, and for that reason is improper: proof that a consumer completed

4   some version of a SafeRent form is unrelated to the question of whether SafeRent

5   failed to provide that consumer a file disclosure "without charge."  The third class

6   proposed is thus also overbroad.

7        The Court should grant SafeRent's motion for summary judgment.  If,

8   however, the Court concludes that the FCRA could be read to treat excessive

9   "proper identification" requirements for file disclosures as a "charge" prohibited by

10  § 1681j(a), Plaintiff's § 1681j(a) claim should still not be certified for class

11  treatment.  Individual inquiries would predominate in trial of different consumers'

12  claims related to use of SafeRent's forms.  Use of the forms was never required by

13  SafeRent to request a file, and the consumer's reasons for using the forms (instead

14  of calling a toll-free number, writing a letter, or communicating in some other way),

15  would be individualized, as would the degree of burden use of the form involved

16  for any particular file requester.  These obvious issues were not addressed by

17  Plaintiff.  Plaintiff has failed to establish any requirement of Rule 23 as to Claim

18  III, let alone all of those required to certify a class.

19       Plaintiff's motion should be denied.

20  **II.**        **FACTS**

21          **A.**    **Overview**

22       In the relevant period, SafeRent provided tens of thousands of disclosures to

23  consumers, some in response to file requests and others following adverse actions

24  by landlords.  Defendant's [Amended] Responses to Plaintiff's First Set of

25  Interrogatories ("Def.'s Am. Responses"), Interr. No. 13, pp. 9-10 (excerpts

26  attached as Exhibit 1).

27

28

1    Plaintiff attempted to request a file disclosure from SafeRent, but she mailed

2   her letter request to an address at which SafeRent did not then operate and had not

3   previously operated, rather than to the address SafeRent published as the address

4   for file disclosure requests.  She did not receive a file disclosure from SafeRent.

5    Plaintiff's submission in support of class certification fails to adduce any

6   evidence that anyone other than Plaintiff ever misaddressed a file disclosure request

7   to SafeRent or that anyone other than Plaintiff ever requested a file disclosure and

8   provided "proper identification," but did not receive one.  Plaintiff also presents no

9   evidence that SafeRent charged her or anyone else a fee as a condition of providing

10   a file disclosure.

11                **B.    Plaintiff's Unique Circumstances**

12    In April, 2012, Plaintiff successfully applied, with a co-applicant, to rent

13   residential property in Vista, California.  Deposition of Susan Moreland ("Moreland

14   Depo."), pp. 59:14-20, 64:25-65:4 (excerpts attached as Exhibit 2).  The landlord

15   provided her with a copy of her reports.  Memorandum of Points and Authorities in

16   Support of Plaintiff's Motion for Class Certification ("Pl.'s Mem.") , p. 3 (Doc. No.

17   73).  Plaintiff retained counsel by May 2012, Moreland Depo., at 128:2–11, who, in

18   October 2012, drafted for her a letter to send to SafeRent that stated "Dear

19   SafeRent:  Please provide me with everything in my consumer file.  Sincerely, [s/]

20   Susan E. Moreland."  *Id.* at 154:3–5; Ex. 14 to Moreland Depo. (attached as Exhibit

21   3).  Plaintiff mailed the letter, at her attorney's instruction, to an address in Poway

22   that was not at the time and had never been a SafeRent address.  The building was

23   occupied by a different subsidiary of SafeRent's parent company, CoreLogic.

24   Deposition of Robyn Small ("Small Depo."), pp. 80:10–13, 82:2–6 (excerpts

25   attached as Exhibit 4).  After SafeRent relocated some of its operations to Poway in

26   November 2012, *id.* at 10:17–12:5; 25:10–26:15, personnel there forwarded

27   Plaintiff's October 18 letter to SafeRent's Rockville office bundled with a group of

28

                                    4

letters concerning disputes. *Id.* at 77:9–17, 78:16–19, 84:4–14. Plaintiff's letter was marked received in Rockville on January 16, 2013. *Id.* at 93:22–95:6. SafeRent's Rockville office treated Plaintiff's October 18 letter as a dispute rather than as a request for disclosure of the contents of Plaintiff's file. *Id.*, at 89:18–92:1. There is no evidence that any other consumer's file request was treated as an inquiry dispute.

Plaintiff does not assert she paid a fee to SafeRent for a file disclosure. Although not clear as to what request was at issue, Plaintiff claims to have incurred out-of-pocket expenses of approximately $11.50, but not more than $20, for copies and postage in sending her file disclosure request to SafeRent by registered mail. Moreland Depo., pp. 187:19–190:23. Plaintiff also claims to have spent two hours driving to UPS and Federal Express, which according to her would not send the letter with a return receipt requested, then, finally, the post office to send her correspondence to SafeRent via certified delivery and receipt, none of which was required by SafeRent. She incurred no gasoline expense in doing so; she borrowed her roommate's car and did not compensate him for gasoline. *Id.* at 188:5-190:1. There is no evidence of any other consumer sharing this same experience.

### C. SafeRent Individually Evaluated Each File Request to Determine Whether The Consumer Had Provided "Proper Identification".

Section 1681h(a)(1) of the FCRA provides that "[a] consumer reporting agency shall require, as a condition of making the disclosures required under section [1681g], *that the consumer furnish proper identification*." (Emphasis added). Under § 1681h(a)(1), "the credit-reporting agency must require that the requesting consumer properly identify himself in order to reduce the risk of improper disclosure and the attendant risk of identity theft." *Singletery v. Equifax Info. Servs.*, No. 2:09-cv-489-TMP. 2011 U.S. Dist. LEXIS 156215, at *33 (N.D. Ala. Sept. 21, 2011).

1    While SafeRent has made a form available to consumers with which they can
2  request their files, SafeRent has never required that a consumer use a particular
3  form to make a file request, or as the sole means to furnish "proper identification."
4  Throughout the relevant period, SafeRent employees determined whether a
5  consumer's file disclosure request contained sufficient identifying information on a
6  case by case basis. Small Depo., pp. 31:25-35-9; 85:14-87:2. This effort required
7  an individualized review of the information submitted by the consumer to (a)
8  identify the file that matched the consumer making the request, and (b) verify the
9  identity of the person making the inquiry, as required by §1681h. *Id.* SafeRent
10  individually reviewed each file request to determine whether a consumer provided
11  sufficient background information to match up with a unique file, and to verify that
12  the requesting party was the person who was the subject of the file. *Id.* at 33:22–
13  35:9, 85:14–87:2. If it was able to match the request to a unique file, then SafeRent
14  would provide the consumer with a copy of his file so long as the SafeRent
15  employee did not suspect identity theft. *Id.* SafeRent would provide consumers
16  with a copy of their files so long as SafeRent had enough information to ensure that
17  the requests were not fraudulent, regardless of the method or means of request. *Id.*
18  at 31:25–34:3.

19    In some cases, a consumer's initial request for a file disclosure did not
20  contain enough information to identify any file, or to identify the correct file among
21  multiple possible matches. In other cases, information supplied by the consumer
22  matched some information in SafeRent's files, but conflicted with other
23  information. In each of those cases, SafeRent would provide the consumer with a
24  "consumer disclosure request form" to assist the consumer in providing additional
25  information with which they could complete their required identification. *Id.* at
26  32:12–33:2, 33:24–34:3, 41:21–24. The form, known within SafeRent as the
27  "CRD-001 Form" (Deposition of Angela Barnard ("Barnard Depo."), p. 17)

28

1  (excerpt attached as Exhibit 5), sought information to verify identity.  Consumers

2  did not need to complete every aspect of the disclosure request form for SafeRent to

3  respond with a file.  *Id.* at 20:23–21:3.  In short, consumers were *not* required for

4  any part of the proposed class period to use the CRD-001 form to obtain a file

5  disclosure from SafeRent, and the determination of whether the consumer had

6  provided "proper identification" was made on a case-by-case basis.

7        **D.    SafeRent Never Demanded or Collected A Charge**
               **From Consumers As A Condition Of Responding**
8             **To File Disclosure Requests.**

9        SafeRent has neither collected a fee nor otherwise sought to charge Plaintiff

10  in connection with her request for disclosure of the contents of her consumer file.

11  Small Depo. at 23:25-24:14 (no fee collected from consumers); Barnard Depo.,

12  pp. 77:23-78:13; (same); Moreland Depo., pp. 190:2-23, 192:25-193:4 (Plaintiff's

13  list of out-of-pocket expenses includes mailing costs, but not a fee paid to

14  SafeRent).

15  **III.    PLAINTIFF'S PROPOSED CLASSES ARE INCONSISTENT**
         **WITH THE STATUTES ON WHICH HER CLAIMS ARE**
16      **BASED, AND CERTIFICATION SHOULD BE DENIED ON**
         **THAT BASIS ALONE.**
17

18       As noted above, Plaintiff's class definitions are inconsistent with the statutes

19  under which Plaintiff proposes to try claims.

20       The "File Request" classes are proposed to consist of persons who requested

21  a file, not persons who requested a file *and provided proper identification.*  Persons

22  who requested a file from SafeRent, but supplied insufficient information to

23  identify themselves "proper[ly]," had no right to a file disclosure under 15 U.S.C.

24  § 1681g or California Civil Code § 1785.15(b).  The classes are thus facially

25  overbroad, and include persons who lack standing to assert the putative class

26  claims.  A class may not include persons who lack standing to assert the class

27  claim.  *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and

28

7

show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." ). *Accord*: *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003). The "File Request" classes cannot be certified as proposed. The balance of the discussion below anticipates an effort by Plaintiff to cure this fatal defect by seeking leave to modify the scheduling order to likewise seek a late amendment of the complaint's class definitions[1] to persons who requested a file *and* provided proper identification to SafeRent, but did not receive a disclosure. Such an amended "File Request" class cannot be certified, either.

Similarly, the "Without Charge" class is proposed to consist of persons who supplied information to SafeRent on a particular form, not persons from whom SafeRent demanded or collected a charge for providing a file disclosure. The class is not limited to persons with standing to assert a "Without Charge" claim (i.e., persons who paid a fee), and thus cannot be certified due to overbreadth. The balance of the discussion below again anticipates an effort by Plaintiff to cure this fatal defect by seeking leave to modify the scheduling order to likewise seek a late

---

[1] SafeRent presents these additional arguments even though a "Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it." *Costello v. Chertoff*, 258 F.R.D. 600, 604-605 (C.D. Cal. 2009). *Accord*: *Berlowitz v. Nob Hill Masonic Mgmt., Inc.*, No. C-96-01241 MHP, 1996 U.S. Dist. LEXIS 22599, at *2 (N.D. Cal. Dec. 6, 1996) (rejecting plaintiff's attempt to certify a class different from that alleged in the complaint, because the "court is bound by the class definition provided in the complaint . . . and will not consider certification of the class beyond the definition provided in the complaint unless plaintiffs choose to amend it"); *Ortiz v. McNeil-PPC, Inc.*, Nos. 07cv678-MMA(CAB), 08cv536-MMA(CAB), 2009 U.S. Dist. LEXIS 39584, at *2 (S.D. Cal. May 8, 2009); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2009 U.S. Dist. LEXIS 12337, at *2 (N.D. Cal. Feb. 5, 2009). Indeed, as the below arguments establish, any amendment or consideration of an alternative class definition would be futile as Rule 23 would still prohibit certification.

amendment of the complaint's class definition to limit the class to persons for whom completing the Consumer Disclosure Request exceeded the "personal identification" burden imposed on consumers by the FCRA. Such an amended "Without Charge" class cannot be certified, either.

## IV. PLAINTIFF HAS FAILED TO DEMONSTRATE THAT ANY OF THE CLASSES IS ASCERTAINABLE.

"A class definition should be precise, objective, and presently ascertainable." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotations omitted). To show the class is presently ascertainable, the plaintiff must demonstrate that it would be "administratively feasible to determine whether a particular person is a class member." *Wolph v. Caer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011). "A plaintiff does not satisfy the ascertainability requirement if individualized fact-finding or mini-trials will be required to prove class membership." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013).

Having ignored the actual elements of the claims purportedly asserted, Plaintiff has made no effort to demonstrate that it would be administratively feasible to identify by objective criteria those persons who might have standing to assert the "File Request" claims (i.e., persons who requested disclosures and provided "proper identification"). Obviously, mini-trials would be required to evaluate the information each putative class member provided to SafeRent with his or her file request and thus to determine membership in properly defined "File Request" classes. Plaintiff cannot demonstrate that properly defined "File Request" classes would be ascertainable.

As for the "Without Charge" class, Plaintiff fails on two fronts. First, she fails to demonstrate that it is administratively feasible even to identify those consumers who sent SafeRent a Consumer Disclosure Request form. She has adduced evidence that SafeRent has a list of persons who requested file disclosures (Small Depo., pp. 11:21-12:1, 44:16-45:5, 46:11-47:24, 49:3-15, 51:25-52:19) and

that SafeRent has a document imaging database in which documents are indexed by consumer name but no other identifying information (Barnard Depo., p. 68:8-19), and she simply declares that the "Without Charge" class is ascertainable because it would be *possible* to look at all of the documents in the imaged document database linked to persons on the file disclosure request list to see whether any of those documents are Consumer Disclosure Request forms.  Plaintiff adduces no evidence as to how many thousands or hundreds of thousands or millions of documents in the imaged document haystack she would have to pay to have reviewed[2] under circumstances that would not disrupt SafeRent's business operations in search of the Consumer Disclosure Request form needles.  *Possibility* is not the same as *administrative feasibility.*  Plaintiff has not met her burden.  Second, if the "Without Charge" class was limited to persons for whom use of the Consumer Disclosure Request form was required and "burdensome," the determination of class membership would again require mini-trials to determine which consumers voluntarily chose to use the form versus those who were instructed by SafeRent to use it.  Plaintiff cannot demonstrate that the "Without Charge" class is ascertainable.

## V.    PLAINTIFF HAS NOT MET HER BURDEN OF ADDUCING EVIDENCE TO SUPPORT THE ELEMENTS OF RULE 23.

Plaintiff bears the burden of providing facts sufficient to satisfy Rule 23's requirements.  *Marlo v. U.P.S.*, 639 F.3d 942, 947 (9th Cir. 2011).  "Rule 23 does not set forth a mere pleading standard."  *Walmart v. Dukes*, 131 S. Ct. 2541 at 2551 (2011) ("*Dukes*").  A party must "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of

---

[2] Where the cost is "substantial," the class proponent properly bears the cost of developing the class list, even if the class opponent performs the analysis. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358-59 (1977).

claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013).

A district court should certify a class only if the "court is satisfied, after a rigorous analysis," that the Rule 23 prerequisites have been met. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Marlo*, 639 F.3d at 947. If the Court is not satisfied, then class certification should be denied. *Falcon*, 457 U.S. at 161. "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Schulein v. Petroleum Dev. Corp.*, No. SACV 11-1891 AG (ANx), 2014 U.S. Dist. LEXIS 71236, *8 (C.D. Cal. May 19, 2014) (Guilford, J.) (quoting *Dukes*, 131 S. Ct. at 2551). Plaintiff has failed to prove numerosity, commonality, typicality, adequacy, predominance. feasibility of classwide proof of damage, or the superiority of trial of the claims in a class action.

### A. Plaintiff Has Failed To Demonstrate That There Are Numerous Persons With Claims Cognizable Under The Statutes Sued Upon (Rule 23(a)(1)).

Having ignored the actual elements of the claims purportedly asserted, Plaintiff has made no effort to demonstrate that there are numerous consumers who made requests *and provided proper identification* to SafeRent, but did not receive disclosures from SafeRent. Plaintiff adduces evidence only of how many disclosures SafeRent *delivered* in the relevant time. Pl's Mem. 14 (Doc. No. 73). "[W]here a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013). Similarly, Plaintiff has failed to demonstrate that they were any persons – let alone numerous persons – who SafeRent charged a fee as a condition of providing file disclosures. She simply argues that there is circumstantial evidence that more than 40 persons used a particular form to request a disclosure. Pl.'s Mem. 15 (Doc. No. 73). Plaintiff has

1   thus failed to demonstrate that the only classes consistent with the statutes are

2   numerous, and has failed to meet her burden under Rule 23(a)(1) as to each of the

3   classes.

**B.    Plaintiff Has Failed To Demonstrate That Common Questions Exist And Would Predominate At Trial Of The Asserted Claims In a Class Action (Rules 23(a)(2) and 23(b)(3)).**

**1.    Plaintiff has failed to establish that common questions exist (Rule 23(a)(2).**

Under Rule 23(a)(2), a class proponent must show that the case presents issues common to the class. In addition, to certify a class pursuant to Rule 23(b)(3), as Plaintiff seeks to do, the class proponent must demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Plaintiff has failed to meet both of these requirements.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157). Commonality does not exist simply because the putative class members "have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551.[3] Instead, the class proponent must show that there is a "common contention" that is capable of classwide resolution, the "truth or falsity [of which] will resolve an issue that is central to the validity of each one of the claims *in one stroke*." *Id.* (emphasis added).

_____

[3] *Accord: Souter v. Equifax Info. Servs.,* 498 Fed. App'x 260 (4th Cir. 2012) (denying class certification of claims brought under FCRA; "in examining commonality under Rule 23(a)(2), that 'the members of a proposed class do not establish that their claims can productively be litigated at once, merely by alleging a violation of the same legal provision by the same defendant.'") (citations and internal quotation marks omitted).

12

1    Misinterpreting *Dukes,* Plaintiff claims incorrectly that only one common

2    question is required, and because she has identified three purported common issues,

3    she has met her burden. Pl.'s Mem. 17 (Doc. No. 73). *Dukes* rejects this approach.

4    "What matters to class certification . . . is not the raising of common 'questions'—

5    even in droves—but, rather the capacity of a classwide proceeding to generate

6    common *answers* apt to drive the resolution of the litigation." *Id.* (internal

7    quotation marks and citation omitted).

8    For claims based on FCRA disclosure requests, demonstrating

9    "[c]ommonality under Rule 23 requires more than simply saying that each

10   consumer requested a disclosure, but did not get it." *Singletery*, 2011 U.S. Dist.

11   LEXIS 156215, *61 (denying class certification of claim under 15 U.S.C. § 1681j,

12   the same statutory basis for the Count III class in the present case), *aff'd*, 2013 U.S.

13   App. LEXIS 20248 (11th Cir. Oct. 3, 2013) (per curiam).[4]  The class proponent

14   must show "that the particular injury suffered by each member of the putative class

15   was caused by *a policy or practice common to all of them.*" *Id.* (emphasis added).

16   Plaintiff's three purported "common contention[s]" (Pl.'s Mem. 16, Doc. No.

17   73) do not satisfy her burden to demonstrate commonality because they ignore the

18   undisputed factual context of the case and are premised on misreadings of the

19   statutes sued upon.  The first question, "[w]hether SafeRent responds to consumers

20   who request their full file disclosures" (*id.*), is not actually in dispute:  SafeRent

21   sends full file disclosures to consumers who have adequately identified themselves,

22   but solicits additional information from those who have not, so that it can, using

23   that additional information, identify and disclose the proper file requested.  Taking

24   the question to be "whether SafeRent sends full file disclosures to everyone who

25

26   [4] *Accord*: *Taylor v. Screening Reports, Inc.*, 294 F.R.D. 680, 689 (N.D. Ga. 2013)

27   (denying class certification of a FCRA file request claim).

28
                                          13

requests them," the answer is "It depends on how much information the consumer supplied with her request and what information  matches that information in SafeRent's databases," hardly a "common" answer, and certainly not one that resolves class claims "in one stroke." *Dukes*, 131 S. Ct. at 2551.  As explained in another case, Plaintiff's suggested common question does little more than improperly ask whether "each consumer requested a disclosure, but did not get it." *Singletery*, 2011 U.S. Dist. LEXIS 156215 at *61.  The second and third questions fare no better.  Plaintiff asks whether SafeRent "provides consumers with their file disclosures free-of-charge" and "[w]hether SafeRent knowingly and intentionally acted in conscious disregard of the rights of consumers."  Pl.'s Mem. 16(Doc. No. 73).  The second question is not in dispute, either: the undisputed evidence before the Court on this motion establishes that SafeRent *never* collected a charge from consumers for providing a full file disclosure.  The question of whether a consumer's expense in providing § 1681h(a)(1) "proper identification" constitutes a "charge" under § 1681j(a) might be common, but that issue should be resolved against Plaintiff on summary judgment before the class is certified.  The third question is also not "common":  if SafeRent failed to provide a consumer a full file disclosure after receipt of a request and proper identification from the consumer, its knowledge and intent regarding that transaction will not resolve claims for anyone other than the consumer in question.  Plaintiff has thus identified no true "common" questions.

> ### 2. Plaintiff has failed to establish that common questions would predominate at trial of the asserted claims in a class action (Rule 23(b)(3)).

Nor has Plaintiff demonstrated that common issues would predominate at trial of the asserted claims as class claims as Rule 23(b)(3) requires.  Courts considering predominance "have a duty to look closely at whether this requirement is satisfied." *In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555, 564 (N.D. Cal.

14

2013).  Additionally, "[a]lthough '[t]here is no mathematical or mechanical test for evaluating predominance,' Rule 23(b)(3) is only met 'where common questions, which can be resolved for all members on a classwide basis, are such a significant aspect of the case that they present a clear justification for handling the dispute on a representative rather than on an individual basis.'"  *In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. at 564 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012).[5]  Plaintiff summarily states that there are "overriding questions of law and fact" (Pl.'s Mem. 21, Doc. No. 73) without ever identifying what specific issues are "susceptible to classwide proof" or contending with any defenses that SafeRent has a due process right to present with respect to individual putative class member claims.[6]

---

[5] *Accord*:  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (amended)) (internal quotation marks and citation omitted).  "Where dissimilarities among class, [do not impede the generation of common answers, *i.e.* where commonality is met], the post-*Dukes* predominance inquiry requires us to consider whether other issues unique to individual class members are likely to render adjudication by representation impractical."  *Caldera v. J.M. Smucker Co.*, No. CV 12-4936, 2014 U.S. Dist. LEXIS 53912, *7 (C.D. Cal. Apr. 15, 2014).

[6] The cases cited by Plaintiff are distinguishable and not relevant.  Several of the cited cases involved some uniform manner of communication with each class member, which is not the case here.  *Campos v. ChoicePoint, Inc.*, 237 F.R.D. 485, (N.D. Ga 2006) (Defendant's failure to provide the entire consumer file arose "out of Defendant's standardized method of responding to requests [from] consumers.");  *Braxton v Farmer's Ins. Grp.*, 209 F.R.D. 654, 659 (E.D. Ala. 2002) ("*all class members* were mailed letters similar to the one sent to [the plaintiff], which alerted them to the increase in their premiums but did not include a notice in compliance with the FCRA.");  *Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239, 245, (E.D.N.Y. 2012) (outdated information on the reports were "a result of [a] flaw in the defendants' system," and this flaw was the same reason for the outdated information on each class member's report.).  Likewise, the cases Moreland cites on predominance in FCRA cases (Pl.'s Mem. 21–22, Doc. No. 73) not only pre-date *Dukes* but are factually dissimilar.  In *Gillespie v. Equifax Infor. Servs.*, No. 05-138) 2008 U.S. Dist. LEXIS 82483 (N.D. Ill. Oct. 15, 2008), the question was the

(footnote cont'd...)

1    **Claims I and II:** Plaintiff alleges that she requested from SafeRent the

2    disclosure of the contents of her file under 15 U.S.C. § 1681g(a) and California

3    Civil Code sections 1785.10 and 1785.15, but that SafeRent failed to provide her

4    with such disclosure.  Plaintiff seeks a class of all persons who (1) "made any

5    request" (2) and were not provided a copy of their "file" (3) since March 25, 2011.

6    As noted above, that class definition cannot be adopted, as it ignores the

7    elements of the statutes and hence includes persons who have no standing to assert

8    a claim.  Even if the class definition were modified to track the requirements of the

9    statute, (i.e., "persons who requested file disclosures and presented proper

10   identification, but did not receive file disclosures"), it would be obvious that such a

11   claim cannot be certified for trial in a class action.  The evidence before the Court

12   establishes that SafeRent provided consumers with their file so long as the

13   consumer's request included sufficient information to match the requesting

14   consumer to a unique individual in SafeRent's files.  Small Depo., pp. 31:25–34:3.

15   To verify identity, SafeRent required a minimum amount of background

16   information—sometimes only the name and address of the consumer requesting his

17   file.  *Id.* at 33:3–22.  SafeRent responded to file disclosure requests with its own

18   request for additional information only when the information initially provided by

19   the consumer was insufficient for SafeRent to complete the request.  *Id.* at 32:12–

20   33:2.  If Plaintiff intends to argue that there were cases where SafeRent should have

21   provided a consumer a file disclosure instead of asking the requesting consumer for

22   _____

(...cont'd)

23   allegedly misleading way in which defendant listed "date of last activity" in a
     consumer's file.  The offending language was the same in each file; here, in

24   contrast there is no uniform practice.  Similarly, in *Williams v. LexisNexis Risk*

25   *Mgmt., Inc.*, No. 3:06-cv-241, 2007 U.S. Dist. LEXIS 62193 (E.D. Va. Aug. 23,
     2007), as Moreland's parenthetical notes (Pl.'s Mem. 22, Doc. No. 73), the question

26   was failure to provide notice pursuant to 15 U.S.C. § 1681k(a)(1), based on

27   LexisNexis' "standard procedures."  *Id.* at *15.

28

16

additional identifying information, the jury would have to determine on an individual basis whether in those instances the consumers had already provided "proper identification" such that SafeRent's request for further information was improper.[7]  That determination would be governed by (a) what information the consumer provided, (b) whether SafeRent's databases had any matches to that information, (c) whether SafeRent's databases had multiple matches to that information (requiring further information to disambiguate), (d) whether there was a possible match, but discrepancies between the information supplied by the consumer and that maintained by SafeRent suggested fraud, and (e) whether there was any concern that the party requesting the disclosure was not who they represented themselves to be, among others[8].  Individualized issues would overwhelm the trial.

---

[7] The cases cited previously by Plaintiff in opposition to the motions to dismiss illustrate the individual inquiries required to resolve a §1681g claim: *Garrison v. Equifax Info., Servs., LLC*, No. 10-13990, 2012 U.S. Dist. LEXIS 52942 (E.D. Mich. Apr. 16, 2012); *Menton v. Experian Corp.*, No. 02 Civ. 4687 (NRB), 2003 U.S. Dist. LEXIS 3325, at *2 (S.D.N.Y. Mar. 6, 2003); and *Singletery*, 2011 U.S. Dist. Lexis 156215.

[8] *Accord*: *Singletery*, 2011 U.S. Dist. LEXIS at *74-75 (denying class certification and recognizing similar individual inquiries as predominating over common contentions: "[W]hether the consumer used the appropriate avenue, offered 'proper' identification, and made only one request in each twelve-month period[?]. . . . [W]hether, in this particular instance, [the defendant] acted recklessly, negligently, or properly?  Was the disclosure not made because of simple human error or oversight?  Was it due to unexplained discrepancies in the requester's address, name, or date of birth?  Was it due to transposed digits in his Social Security number?  Did the consumer attempt to request more than one disclosure during a twelve-month period?  How many unfulfilled requests has the consumer made?  Did the consumer suffer "actual damages" from the non-disclosure?  Was the request made by the consumer, or someone fraudulently posing as the consumer?").

**Claim III:** Plaintiff seeks certification of a class of all persons who (1) made a file disclosure request to SafeRent using a Consumer Disclosure Request Form (2) since March 25, 2011 to try a claim alleging a violation of 15 U.S.C. § 1681j(a), which obligates SafeRent to periodically provide consumers file disclosures "without charge."  As noted above, that class definition cannot be adopted, as it is predicated on a misconstruction of section 1681j(a) as something more than a prohibition on a consumer reporting agency's collection of a fee from a consumer. Even if the Court were to deny summary judgment and to construe "without charge" in section 1681j(a) to limit the information consumer reporting agencies can seek as "personal identification" in connection with file requests, individual issues would predominate at trial of claims based on all the circumstances surrounding a consumer's use of the Consumer Disclosure Request form.

Plaintiff contends that SafeRent "effectively" imposes a "charge" on consumers by using a "burdensome" disclosure request.  Numerous individual inquiries would predominate at trial of such claims as class claims, including those that defeated class certification in *Singletery*.  *See* footnote 8 above.  In addition to the nine individual issues identified in *Singletery*, which apply equally here, the individualized issues include:  (1) why the consumer completed the disclosure request form (was it voluntary or out of convenience), (2) did the consumer know about the other means for requesting a file, such as the 1-800 number, (3) when was the request made (before or after November 2012, when SafeRent's file disclosure processes changed), (4) was the disclosure request form required as a result of evidence of fraud, (5) and if the consumer used the form, how burdensome was it for the consumer to complete and forward the disclosure request form —*e.g.*, did the putative class member, like Plaintiff (TAC ¶ 35, Doc. No. 57), choose to drive two hours to three different mail delivery service locations before ultimately

choosing to purchase a certified letter,[9] and spend money on printing or copying **or** did they print the disclosure request form from their home computer, scan the information, and send SafeRent their disclosure via fax, email, or regular mail, with less (or no) postage expense. Indeed, resolution of each of these questions will require testimony and a determination of credibility for each class member.

In sum, as to the "File Request" classes, questions of "how" and "why" SafeRent denied a consumer's file request overwhelm Plaintiff's misguided questions of "whether" SafeRent responded to consumer file requests. Similarly, individualized inquiries as to why the form was used and the degree of burdensomeness of using SafeRent's disclosure request form would predominate in any adjudication of the "Without Charge" claims as class claims.

**C.     Plaintiffs Lacks The Typicality Required By Rule 23(a)(3) Because Her Individual Circumstance are Unique and Her Interest Differs From those of the Putative Classes.**

"Rule 23(a)(3)'s typicality requirement provides that a 'class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Rainbow Bus. Solutions v. Merch. Servs.*, No. C 10-1993 CW, 2013 U.S. Dist. LEXIS 179288, *25 (N.D. Cal. Dec. 20, 2013) (quoting *Falcon*, 457 U.S. at 156) (internal quotation marks omitted). The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).[10]

---

[9] Plaintiff does not contend that SafeRent required file disclosure requests be sent by certified mail and nothing on the form or in evidence suggest that it did.

[10] *Accord*: *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546 , 557(C.D. Cal. 2011) (Guilford, J.) (emphasis added).

19

1    Typicality requires Plaintiff to demonstrate that her interests "align with the

2  interests of the class." *Hanon*, 976 F.2d at 508. Plaintiff's "interest in prosecuting

3  [her] own case must simultaneously tend to advance the interests of the absent class

4  members." *Souter*, 498 Fed. App'x at 264 (citation omitted). It is not enough that

5  Plaintiff "shares the fact with other class members that [she] did not receive [her

6  file] disclosures"; the plaintiff must also demonstrate that she shares with the class

7  "the same *reasons* for not getting a disclosure." *Singletery*, 2011 U.S. Dist. LEXIS

8  156215 at *65 (emphasis added) (denying certification of an FCRA file request

9  claim).

10    Plaintiff's unusual (indeed unique) circumstances demonstrate that her

11  individual claims are not typical of the putative class she seeks to represent.

12  Plaintiff's claims diverge so significantly from the typical putative class member

13  that her claims not only fail to "advance the interests" of putative class members,

14  but they are also entirely unrelated to the class she seeks to represent. *Souter*, 298

15  Fed. App'x at 264 (Souter's "interest in prosecuting [her] own case must

16  simultaneously tend to advance the interests of the absent class members").[11]

17    **Claims I and II.** Claims I and II relate to file disclosure requests made to

18  SafeRent. Plaintiff's claims differ from those of others in two ways. First,

19  Plaintiff, at her attorneys' direction, sent a letter requesting her file to the wrong

20  address. They sent Plaintiff's October 2012 letter to 12395 First American Way,

21  Poway, California. Moreland Depo., pp. 152:18–19, 153:11–13. When Plaintiff's

22  attorneys wrote the October 2012 letter, the Poway address was in no way affiliated

23

24  [11] Despite Moreland's attempt to minimize the typicality requirement (Pl.'s Mem.
     17, Doc. No. 73), this requirement ensures that the actual class claims are being

25  pursued, rather than the claims of an individual. The Fourth Circuit recently
     reversed class certification in a FCRA case where typicality was lacking. *Souter*,

26  498 Fed. Appx. at 265 ("Souter's claim is 'typical' only on an 'unacceptably

27  general level.'").

28

1   with SafeRent and never had been. Small Depo., p. 80:10–13. Had Plaintiff's

2   attorneys sent her request to the correct address, the address listed on the report

3   already in her possession, Plaintiff would likely have received her file. *Id.* at 86:5–

4   87:2. Plaintiff's mistake is unique: there is no evidence of any other putative class

5   member having sent a file request to the Poway office prior to November 26, 2012,

6   *id.* at 80:21–81:10, when certain SafeRent operations were moved there. Thus,

7   unlike Plaintiff, the class members she wants to represent have a distinctly different

8   experience of submitting a request to the proper mailing address, calling the correct

9   toll-free number or sending their information to the proper email.

10          Second, the events that led to the delay and failure to process Plaintiff's

11  attorney's request are unique and not typical of other putative class members.

12  Plaintiff's letter came into SafeRent's possession only by virtue of a November

13  2012 corporate restructuring process. Before November 2012, SafeRent handled

14  file disclosure requests from Rockville, Maryland. *Id.* at 81:23–82:6, 96:3–12.

15  After November 26, 2012, SafeRent adopted a new process where its file disclosure

16  requests were directed to Poway. *Id.*, at 11:7–12:5, 25:10–26:15. After that date,

17  Rockville dealt only with certain types of disputes. *Id.* If consumers sent those

18  types of disputes to its operations in Poway, then the letters would be forwarded in

19  bulk to Rockville. *Id.* at 93:22–95:6. Plaintiff's letter, which was sent to the wrong

20  address at the time, was mischaracterized and included in a packet of letters

21  forwarded from Poway to Rockville disputing whether SafeRent was authorized to

22  run a credit report. *Id.* at 77:9–17, 78:16–19, 84:4–14. As a result, Rockville

23  treated the letter as another dispute letter from Poway. SafeRent did not send

24  Plaintiff a disclosure request form, nor did it send her file. *Id.* at 89:1–12. Plaintiff

25  was instead sent a packet of information regarding accuracy disputes (and

26  SafeRent's dispute form). *Id.* at 87:3–89:13.

27

28

1     These unique circumstances effectively make Plaintiff a class unto herself.

2     Plaintiff recites these facts and states that they establish "a clear and undisputed

3     violation." Pl.'s Mem. 4 (Doc. No. 73). It is true that SafeRent did not send

4     Plaintiff a copy of her report (which she had already received from the landlord),

5     although her counsel's error in using the wrong address and other facts may

6     preclude her individual claim. However, these facts undermine substantially

7     Plaintiff's claim of a willful violation, the only remedy she seeks for the putative

8     classes. *Legge v. Nextel Commc'ns, Inc.*, No. CV 02-8676 DSF (VBKx), 2004 U.S.

9     Dist. LEXIS 30333, at *51 (C.D. Cal. June 25, 2004) (willful noncompliance with

10    the FCRA is rarely attributed to isolated instances of human error involving a single

11    plaintiff.). SafeRent thus has a defense to Plaintiff's personal claim for willful

12    violation of the statutes that it might not have to claims of other absent putative

13    class members who provided SafeRent with proper identification.

14    What is certain is that Plaintiff alone had this experience and her claims are

15    atypical of the class she seeks to represent, the members of which may have not

16    been sent a file copy due to insufficient identifying information, or numerous other

17    legitimate reasons. Thus, proving why Plaintiff did not receive her file—a

18    processing error that was the result of Plaintiff's attorney directing the request to

19    the wrong address, compounded by other unique, time-sensitive events—will not

20    "simultaneously tend to advance the interests of the putative class members."

21    *Souter*, 498 Fed. App'x at 264. "'[T]he essence of the typicality requirement is

22    captured by the notion that "as goes the claim of the named plaintiff, so go the

23    claims of the class.'" *Id.* (citations omitted). SafeRent did not send a file copy in

24    response to this attorney-prompted written request because of "standardized,

25    uniform practices" (Pl.'s Mem. 22, Doc. No. 73), but instead due to a series of

26    atypical events that would be unique compared to the experience of other putative

27    class members. The class seeks statutory damages under 15 U.S.C. § 1681n(b), and

28

22

California Civ. Code § 1785.31 predicated on a finding of "willfulness." The unique series of mishaps affecting Plaintiff's file request show that, whatever her factual basis for claiming that SafeRent's behavior was willful, it will necessarily differ from the class members whose requests were received and allegedly dealt with according to the alleged policy. *Soutter*, 498 Fed. App'x at 265.

**Claim III.** Plaintiff's claim regarding her alleged use of Consumer Disclosure Request form also differs from the claims of persons she seeks to represent. There is a dispute as to whether Plaintiff ever completed and submitted such a disclosure request form: SafeRent's files contain no such form (Declaration of A. Montgomery, ¶ 4 (attached as Exhibit 6)) -- which means that Plaintiff would not be identified as a member of the Claim III class under the class membership determination process that Plaintiff proposes. Neither Plaintiff nor her attorneys kept a copy of the form allegedly sent to SafeRent in January 2013. Unlike the class she hopes to represent, whether the form was ever submitted – and whether Plaintiff is a member of the class she purports to represent – will be a disputed issue of fact. Indeed, "a named plaintiff 's motion for class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotations omitted).[12]

---

[12] There is no evidence, other than Plaintiff's vague recollection, that a form was ever sent. Rather, the circumstances suggest, contrary to Moreland's allegations, that she returned the dispute form to SafeRent, rather than the disclosure request form. Her October 2012 letter was received by SafeRent's Rockville office on January 16 (Small Depo., p. 77:9–17), and Rockville sent her a dispute form that day (*id.* at 63:23–64:10), which is two days before the mailing of a form by Moreland alleged in ¶ 47 of the TAC. Preoccupation with this issue will dominate any trial of Plaintiff's assertion that she submitted a form, which is an issue not presented by the putative class.

Likewise, for this claim to survive summary judgment, it can do so only if the Court fashions a construction of the statute that limits the amount of information a consumer reporting agency can require as "proper identification," and treats requests for "excess" information or "burdensome" requests as a "charge" within the meaning of section 1681j(a), a construction SafeRent contends is incorrect. Were the Court to adopt such a construction, which no court has done, the "Without Charge" claim would depend upon whether SafeRent required the response from the consumer that the consumer contends was burdensome and not otherwise justified. Plaintiff's circumstances are unique in this regard as well. Plaintiff claims to have spent two hours driving to UPS and Federal Express (which apparently would not send a letter with return receipt requested), and then, finally, the post office to send in her correspondence to SafeRent – all at the suggestion of her counsel; none of this effort was "required" under any reading of the form's instructions, and thus was likely atypical. Her experience is unlike those she seeks to represent who, for example, simply scanned the form and emailed it to SafeRent out of convenience, or who used the form because other means of verifying identity had already failed.

In sum, "while Plaintiff's claim need not be 'perfectly identical' to the claims of the class she seeks to represent, typicality is lacking where 'the variation in claims strikes at the heart of the respective causes of action.'" *Souter*, 498 F. App'x at 265. The evidence shows that Plaintiff's claims are far from those of a typical putative class member: Plaintiff sent her request to the wrong address, and she failed to receive her file only because of a unique processing error; she did not fill out a disclosure request form (according to the documents provided in discovery); she voluntarily undertook efforts that she now characterizes as creating a burden that were neither requested nor required by SafeRent, she suffered no injury; and, as discussed below, she seeks redress only for the alleged inaccuracies

1    in a report other than the report that was the target of the file disclosure request.

2    Plaintiff's claims do not advance the putative classes' claims.  Therefore, she lacks

3    the typicality required to maintain a class action.

4             **D.**    **Plaintiff is not an Adequate Class Representative Under**

5                  **Rule 23(a)(4).**

6         An adequate class representative must prosecute the action "vigorously" on

7    behalf of the class.  *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 557 (C.D. Cal.

8    2011) (Guilford, J.).  "[T]he adequacy requirement has been denied 'where the class

9    representatives have so little knowledge and involvement in the class action that

10   they would be unable or unwilling to protect the interests of the class against the

11   possibly competing interests of the attorney.'"  *Vasquez-Torres v. StubHub, Inc.*,

12   No. CV 07-1328, 2008 U.S. Dist. LEXIS 22503, *13 (C.D. Cal. Mar. 4, 2008)

13   ((quoting *Simon v. Ashworth Inc.*, No. CV 07-1324-GHK, 2007 U.S. Dist. LEXIS

14   96131, *2-3 (C.D. Cal. Sept. 28, 2007)).  Plaintiff, however, lacks "sufficient 'zeal

15   and competence' to protect the interests of the class."  *Baas v. Dollar Tree Stores,*

16   *Inc.*, No. C 07-03108, 2008 U.S. Dist. LEXIS 119908, *5 (N.D. Cal. Apr. 1, 2008)

17   (quoting *Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir.

18   1975)).  Plaintiff has no interest in pursuing the File Request claims.  Plaintiff was

19   never interested in obtaining a copy of her file; she did so only because her

20   attorneys representing her in this case told her to do so.  Plaintiff concluded that she

21   suffered no harm from not receiving her file from SafeRent, likely because she had

22   already received a copy from her landlord.  As a result of this disconnect between

23   the claims Plaintiff is interested in and the claims her lawyers are pursuing, Plaintiff

24   has little knowledge and lacks the vigor, zeal, and competence to be an adequate

25   class representative.

26        First, since hiring her attorneys, Plaintiff has had no significant involvement

27   in this case.  Plaintiff reviewed neither the original nor the first two amended

28

1  complaints before they were filed by her attorneys.[13]  Plaintiff performed only a

2  cursory review of the allegations that her attorneys had made against SafeRent.[14]

3        Secondly, Plaintiff does not understand the nature of her claims.  Each of the

4  alleged class claims relate to file requests, yet Plaintiff admits that she has never

5  been concerned with obtaining a copy of her consumer file.  Moreland Depo., pp.

6  161:25–163:17.[15]  As a class representative, Plaintiff seeks to represent only those

7  people who have had issues with "[n]ot being able to get things corrected" on their

8  SafeRent reports, *id.* at 163:5–17; *id.* at 164:4–9, understandably, since Plaintiff

9  already received the SafeRent report from her landlord.  Pl.'s Mem. 2, 3 (Doc. No.

10  73).

11        Finally, several admissions made by Plaintiff contradict the allegations of the

12  Complaint, and she does not know the basis for certain other factual allegations.

13  For example, while the Complaint states that Plaintiff was denied housing due to

14  her report, she admitted that she was not denied housing and that her report in no

15

---

16  [13] Moreland admitted that she did not review any of the first three complaints until

17  one week before her deposition—four months after the most recent complaint was
   filed.  Moreland Depo., pp. 159:14–25; 160:1–7; 160:14–18.

18  [14] For instance, Moreland could not identify any differences between the original

19  Complaint and the First Amended Complaint.  *Id.* at 160:8–12.  Nor could

20  Moreland identify any differences between the First Amended Complaint and the
   Second Amended Complaint.  *Id.* at 161:2–6.

21  [15] Plaintiff's only concern in this case is having her Identify report corrected:  "Q.

22  You mentioned that you want CoreLogic to fix what was in the background report

23  provided to Mr. Ramos [her landlord].  Are you seeking anything else in this
   litigation from CoreLogic?  A. No."  *Id.* at 167:9–13.  "Q. So for you individually,

24  this case is about correcting the information in [Plaintiff's Identify report]?  A.

25  Yes."  Moreland Depo., pp. 161:25–162:12; *id.* at 167:9–13 ("Q.  You mentioned

26  that you want CoreLogic to fix what was in the background report provided to

27  Mr. Ramos.  Are you seeking anything else in this litigation from Corelogic?  A.
   No.").

28

1  way affected her ability to rent the property.  *Compare* TAC ¶¶ 27, 54, Doc. No. 57,

2  *with* Moreland Depo., pp. 64:25–65:4, 82:6–83:4.

3     Plaintiff's lack of knowledge (coupled with her understanding that this case

4  pursues a claim not alleged in the complaint) demonstrates that she "will not serve

5  the necessary role of 'check[ing] the otherwise unfettered discretion of counsel in

6  prosecuting the suit.'"  *Brown v. Brewer*, No. CV 06-3731, 2009 U.S. Dist. LEXIS

7  47535, *14 (C.D. Cal. May 29, 2009) (citation omitted).[16]  Plaintiff is an inadequate

8  representative.

9     **E.     Plaintiff Has Failed to Provide a Method to Measure**

10          **and Quantify Damages on a Classwide Basis (Rule 23(b)(3)).**

11     To satisfy the requirements of Rule 23(b), it is not enough that Plaintiff

12  provide a "method to measure and quantify damages on a classwide basis."

13  Instead, under Rule 23(b)(3), the class proponent must prove that damages are

14  attributable to a particular legal theory and a particular harmful event.  *Comcast*,

15  133 S. Ct. at 1433.  "The damages must be capable of determination on a classwide

16  basis, and those damages must be traceable to a plaintiff's 'liability case.'"  *Munoz*

17  *v. PHH Corp.*, 2013 U.S. Dist. LEXIS 69306, *81 (E.D. Cal. May 14, 2013).

18     Plaintiff cannot prove that damages for properly defined "File Request"

19  classes would be traceable to any particular harmful event, as *Comcast* requires.

20  Plaintiff's claims require that if SafeRent failed to provide a file disclosure to a

21  consumer who had provided "proper identification," such consumer's harm was

22  traceable to SafeRent's mis-assessment of the adequacy of the consumer's

23

24  [16] *Accord*:  *In re Quarterdeck Office Sys. Sec. Litig.*, No. CV 92-3970, 1993 U.S.

25  Dist. LEXIS 19806, *17 (C.D. Cal. Sept. 30, 1993) (applying authority finding the

26  named plaintiff inadequate when he admitted "that he was not familiar with

27  important aspects of the litigation; that he had no facts to support important

28  allegations in the complaint; and that plaintiff relied solely on his attorney's

direction of the case, creating a potential conflict of interest").

1   identifying information.  The damages suffered by proper "File Request" claimants

2   would be traceable to separate harmful events involving those claimants alone.

3   Thus, Plaintiff has not shown, nor can she, that each member of the classes can

4   trace damages to the same alleged harmful event.  *Comcast*, 133 S. Ct. at 1433.

5        Nor has Plaintiff demonstrated that damages can be determined on a

6   classwide basis.  Pl.'s  Mem. 22–23 (Doc. No. 73).  The class seeks only statutory

7   damages.  Pl.'s Mem. 12 n.5 ("Even *if* Plaintiff intended to seek actual

8   damages....") (emphasis added).  Statutory damages require a showing of

9   willfulness.  15 U.S.C. § 1681n(b); Cal. Civ. Code § 1785.31.  Willfulness under

10  the FCRA "is a very fact-specific question."  *Singletery*, 2011 U.S. Dist. LEXIS

11  156218 at *73.  "The recklessness of the credit-reporting agency cannot be

12  establish[ed] simply on the basis that there is a record of a request being made and a

13  record that it went unfulfilled."  *Id.*  Courts addressing the FCRA provisions

14  regarding statutory damages have found that such damages "typically require an

15  individualized inquiry."  *Souter*, 498 F. App'x at 265.

16       Here, willfulness is an individual issue as to both types of claims.  It is an

17  individual issue as to the "File Request" classes because of the need to determine

18  *why* SafeRent did not provide a file disclosure in each instance, which could vary

19  based on the level of identifying information supplied by each class member,

20  whether the identifying information matched to multiple persons in SafeRent's

21  databases, and whether there were any idiosyncratic human errors that prevented

22  the file request from being fulfilled, as with Plaintiff.  As to the "Without Charge"

23  class, the "burdensomeness" of filling out and sending in the disclosure request

24  form, as noted above, will vary from individual to individual, and thus affects the

25  willfulness determination.  The FCRA provides for a *range* of statutory damages,

26  $100 to $1,000.  15 U.S.C. § 1681n.  At trial, the jury would have to select a

27  number in this range that would apply to each class member's claim.  Plaintiff has

28

28

1  failed to demonstrate that it would be appropriate to use her unique experience as a

2  basis for determining the amount of statutory damages to be awarded to proper File

3  Request claimants whose circumstances were far different from her own.  "The

4  individualized nature of an FCRA claim—*particularly one seeking statutory*

5  *damages*—has led most courts to deny class certification in these types of cases."

6  *Gomez v. Kroll Factual Data, Inc.*, No. 13-cv-0445, 2014 U.S. Dist. LEXIS 51303,

7  *10–11 (D. Colo. Apr. 14, 2014); *Stillmock v. Weis Mkts., Inc.*, 385 Fed. App'x

8  267, 277 (4th Cir. 2010) (Wilkinson, J., concurring) (emphasis added).

9        **F.**    **Plaintiff Has Failed to Demonstrate That Trial Of Her**

10                **Claims As A Class Action Would be Superior To The Assertion of Individual Claims (Rule 23(b)(3)).**

11        Rule 23(b)(3)'s superiority test requires the court to determine whether

12  maintenance of the litigation as a class action is efficient and whether it is fair.

13  *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175-76 (9th Cir.

14  2010).  The numerous individual issues discussed in section V.B above demonstrate

15  that a class trial would be unwieldy and unmanageable and thus inferior.  Likewise,

16  the availability of statutory damages and attorney's fees incentivizes individual

17  actions, *Antoninetti v. Chipotle Mexican Grill, Inc.,* No. C 02-5849 PJH, 2012 U.S.

18  Dist. LEXIS 123102, *19-20 (S.D. Cal. Aug. 28, 2012), if there are any other than

19  Plaintiff's.  The fact that no other persons have come forward, particularly on Claim

20  III, where expenses are supposedly onerous for consumers, is telling and suggests

21  that classwide adjudication is not the means to address the claims raised by

22  Plaintiff.

23  **VI.**        **CONCLUSION**

24        Plaintiff's arguments cannot survive the rigorous analysis that Rule 23

25  requires, and therefore, this Court should deny Plaintiff's Motion.

26

27

28

1   Dated:    August 11, 2014           FARUKI IRELAND & COX P.L.L.

2

3                                        By: /s/ Ronald I. Raether
                                             Ronald I. Raether
4

5                                        FARUKI IRELAND & COX P.L.L.

6                                        Attorneys for Defendant
                                         CoreLogic SafeRent, LLC
7

8

9
    870719.1
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        30